1  LISA I. CARTEEN, Bar No. 204764
   BAKER & HOSTETLER LLP
2  12100 Wilshire Boulevard, 15th Floor
   Los Angeles, California  90025-7120
3  Telephone:    310.820.8800
   Facsimile:    310.820.8859
4  Email:    lcarteen@bakerlaw.com

5  MARK A. CYMROT, Bar No. 164673
   (Pro Hac Vice Pending)
6  BAKER & HOSTETLER LLP
   1050 Connecticut Avenue, NW, Suite 1100
7  Washington, DC  20036-5304
   Telephone:    202.861.1500
8  Facsimile:    202.861.1783
   Email:    mcymrot@bakerlaw.com
9
   Attorneys for Specially Appearing Defendants
10 OFFICE OF THE HIGH REPRESENTATIVE and
   MIROSLAV LAJCÁK, in his capacity as High
11 Representative of the International Community in
   Bosnia and Herzegovina
12

13              UNITED STATES DISTRICT COURT

14              NORTHERN DISTRICT OF CALIFORNIA

15

16 ANTHONY SARKIS,                    Case No.  C 08 01911 RMW

17              Plaintiff,            **SPECIALLY APPEARING DEFENDANTS'**
                                      **NOTICE OF MOTION AND MOTION TO**
18 v.                                 **DISMISS**

19 MIROSLAV LAJCAK; OFFICE OF THE     [Filed concurrently herewith Declaration of
   HIGH REPRESENTATIVE,               Mark A. Cymrot and [Proposed] Order in
20                                     Support Thereof]
                Defendants.
21                                     Date:      October 31, 2008
22                                     Time:      9:00 a.m.
                                       Judge:     Hon. Ronald M. Whyte
23                                     Ctrm.:     Courtroom 6

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **NOTICE OF MOTION AND MOTION**

2    **TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3    **PLEASE TAKE NOTICE** that on October 31, 2008, at 9:00 a.m. or as soon as the matter

4    may be heard before the Honorable Ronald M. Whyte of the United States District Court,

5    Northern District of California, San Jose Division, 280 South 1st Street, San Jose, California

6    95113-3099, in Courtroom 6, 4th Floor, Specially Appearing Defendants Office Of The High

7    Representative and Miroslav Lajčák, in his capacity as High Representative of the International

8    Community in Bosnia and Herzegovina, will and hereby do move the Court for an order

9    dismissing Plaintiff's Complaint.

10    This motion is brought pursuant to Rules 12(b)(1), (2) and (5) of the Federal Rules of

11    Civil Procedure on the following grounds:

12    (1)    the Court lacks subject matter jurisdiction over Defendants under Rule 12(b)(1)

13    because Defendants, as instrumentalities of a foreign state, are entitled to immunity from the

14    Court's jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 *et seq.*

15    ("FSIA");

16    (2)    the Court lacks personal jurisdiction over Defendants under Rule 12(b)(2); and

17    (3)    Plaintiff Anthony Sarkis failed to properly effect service on Defendants in

18    accordance with the FSIA.

19    This motion is based on this Notice, the attached Memorandum of Points and Authorities,

20    all pleadings and papers on file in this action, and upon such other documentary and oral evidence

21    as may be presented to the Court at the time of the hearing on this Motion.

22    Dated:  August 29, 2008                    BAKER & HOSTETLER LLP
                                                 LISA I. CARTEEN
23

24                                               /s/ Lisa I. Carteen
25                                               Lisa I. Carteen
                                                 Attorneys for Specially Appearing Defendants
                                                 OFFICE OF THE HIGH REPRESENTATIVE
26                                               an MIROSLAV LAJCÁK, in his capacity as
                                                 High Representative of the International
27                                               Community in Bosnia and Herzegovina

28

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.      INTRODUCTION ............................................................................................................1

II.     STATEMENT OF FACTS ...............................................................................................2

        A.      Allegations Of The Complaint ............................................................................2

        B.      OHR Background...................................................................................................5

        C.      OHR's Powers ......................................................................................................6

        D.      Mr. Sarkis' Diplomatic Role At OHR ...............................................................10

III.    ARGUMENT ..................................................................................................................10

        A.      OHR Is An Instrumentality Of Foreign States Entitled To Immunity.................11

        B.      The Complaint And Summons Were Not Properly Served .................................12

        C.      The Court Lacks Subject Matter Jurisdiction Because Defendants Have
                Immunity Under The Foreign Sovereign Immunities Act ...................................13

        D.      Ambassador Lajčák Is Immune From Suit Under The FSIA .............................14

        E.      The Court Lacks Personal Jurisdiction Over Defendants ...................................14

IV.     CONCLUSION ...............................................................................................................16

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Argentine Republic v. Amerada Hess Shipping Corp.*,
488 U.S. 428 (1989) .................................................................................15

*Butcher's Union Local No. 498, United Food and Commercial Workers v. SDC Inv., Inc.*,
788 F.2d 535 (9th Cir. 1986) ...................................................................14

*Chuidian v. Philippine Nat'l Bank*,
912 F.2d 1095 (9th Cir. 1990) .................................................................14

*EIE Guam Corp. v. The Long Term Credit Bank of Japan, Ltd.*,
322 F.3d 635 (9th Cir. 2003).....................................................................11

*In re Air Crash Disaster Near Roselawn*,
96 F.3d 932 (7th Cir. 1996) ......................................................................11

*LeDonne v. Gulf Air, Inc.*,
700 F. Supp. 1400 (E.D. Va. 1988) ..........................................................11

*Mangattu v. M/V Ibn Hayyan*,
35 F.3d 205 (5th Cir. 1994) ......................................................................11

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) ...................................................................14

*Phaneuf v. Republic of Indonesia*,
106 F.3d 302 (9th Cir. 1997) ............................................................13, 14

*Randolph v. Budget Rent-A-Car*,
97 F.3d 319 (9th Cir. 1996) ......................................................................13

*Thomas P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*,
614 F.2d 1247 (9th Cir. 1980) ..................................................................15

## STATUTES

28 U.S.C. § 1330(a) ..........................................................................................13

28 U.S.C. § 1330(b) ..........................................................................................14

28 U.S.C. § 1602................................................................................................1

28 U.S.C. § 1603(a) ..........................................................................................11

28 U.S.C. § 1603(b) ..........................................................................................11

28 U.S.C. § 1604..........................................................................................11, 13

28 U.S.C. § 1608(b) ..........................................................................................12

28 U.S.C. §§ 1605-1607....................................................................................14

## RULES

Federal Rules of Civil Procedure, Rules 12(b)(1), (2) and (5)..................................10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

### I.     INTRODUCTION

3      Specially Appearing Defendants the Office of the High Representative of Bosnia-

4 Herzegovina ("OHR") and Ambassador Miroslav Lajcák[1] (collectively "Defendants") move for

5 the Court to dismiss this suit because Plaintiff Anthony Sarkis improperly served them and the

6 Court lacks personal and subject matter jurisdiction over them.  Although aware of the Foreign

7 Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*. ("FSIA"), Mr. Sarkis chose not to follow its

8 requirements for service of process or to plead the necessary elements of a waiver of sovereign

9 immunity.  The Court, in fact, lacks jurisdiction over OHR and Ambassador Lajcák because they

10 are immune from the jurisdiction of United States courts.

11      Mr. Sarkis' Complaint is based on Defendants' alleged early termination of his

12 employment contract with OHR in Bosnia-Herzegovina ("Bosnia") in 2007.  OHR, however, is

13 an instrumentality of foreign states entitled to immunity from the jurisdiction of this Court.

14      OHR was established by the Dayton Peace Accords, a peace agreement brokered by the

15 United States and its European allies in 1995, which ended the war in Bosnia.  OHR monitors the

16 implementation of, and ensures full compliance with, the civilian aspects of the peace agreement

17 on behalf of the international community.  OHR is endorsed by several United Nations Security

18 Council resolutions.[2]  OHR is an instrumentality of the Peace Implementation Council ("PIC"), a

19 group of fifty-five foreign states and international organizations formed to support and oversee

20 the peace implementation process and the work of OHR.

21      As an instrumentality of foreign states, OHR is entitled to immunity unless one of the

22 exceptions to immunity under the FSIA applies.  Mr. Sarkis has not identified an exception

23 (which is his burden), and is unable to do so because none apply to foreign government officials

24 like Defendants who are performing governmental duties in a foreign state.

25 ──────────

[1]  Ambassador Lajcák is "double-hatted" serving also as the European Union Special Representative in
26 Bosnia and Herzegovina.  *See*, Council Joint Action 2007/87/CFSP adopted under Title V of the Treaty of
the European Union.  He is a career diplomat in the Slovak Ministry of Foreign Affairs.  Declaration of
27 Mark A. Cymrot ("Cymrot Decl.") ¶ 2 and Exhibit A attached thereto.

[2]  The North Atlantic Treaty Organization had primary responsibility for military aspects of the peace
28 agreement.

1    In addition, all of the FSIA exceptions require some nexus to the United States that

2    approximates the due process minimum contacts requirements.  OHR's headquarters is in

3    Sarajevo, Bosnia and OHR maintains a small office in Brussels, Belgium for contacts with

4    European Union institutions and the North Atlantic Treaty Organization.  OHR is only involved

5    in governmental functions; it acts only in Bosnia; and it has no presence in California or the

6    United States.

7    Mr. Sarkis was General Counsel of OHR – performing his duties in Bosnia – until he was

8    dismissed in April 2007.  He alleges breach of his employment agreement, wrongful termination

9    and libel among other claims.  None of his claims arise out of his recruitment in California in

10    2003; rather, they all involve acts allegedly committed four years later in Bosnia surrounding

11    Mr. Sarkis' termination from OHR.

12    As for Ambassador Lajčák's role in this lawsuit, he was not even the High Representative

13    until after Mr. Sarkis was terminated; he committed none of the acts alleged in the Complaint in

14    California or otherwise.

15    As instrumentalities of foreign states, OHR and Ambassador Lajčák are entitled to

16    immunity from the jurisdiction of this Court under the FSIA, and, therefore, this lawsuit should

17    be dismissed.

18    **II.    STATEMENT OF FACTS**

19    **A.    Allegations Of The Complaint**

20    Mr. Sarkis, a California resident, was employed in Bosnia by OHR first as Legal Counsel

21    and then as General Counsel.  Compl. ¶¶ 2, 55.  He alleges that in January 2003 he noted OHR's

22    advertisement for the vacant Legal Counsel position in the *Economist*, a weekly newsmagazine

23    with worldwide circulation.  Compl. ¶ 12.  He then alleges a series of contacts he had in

24    California through email or telephone that led to his employment in Sarajevo, Bosnia. Compl.

25    ¶¶ 14-25.  Mr. Sarkis signed his initial contract in California and faxed it to OHR in Bosnia.

26    Compl. ¶¶ 26, 27.  After negotiating additional details, Mr. Sarkis coordinated his travel plans

27    with OHR, which purchased the ticket for his flight to Bosnia where Mr. Sarkis began his

28    employment with OHR.  Compl. ¶¶ 28-36.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    Under what Mr. Sarkis characterizes as an "umbrella employment agreement," OHR

2  allegedly agreed to employ Mr. Sarkis for the duration of OHR's mandate, unless he was

3  terminated for cause. Compl. ¶ 2. Mr. Sarkis is apparently attempting to incorporate his

4  negotiations into the terms of his annual written contracts. He alleges that the "umbrella

5  agreement" was an express written contract as evidenced by an e-mail exchange (Count III); an

6  express oral contract (Count IV); and an implied-in-fact contract (Count V). According to

7  Mr. Sarkis, the "umbrella agreement" stipulated that it would be subsumed by a series of

8  consecutive annual contracts, the expiration of which would "absent cause, trigger OHR's

9  declared and assumed legal obligations to renew and extend the same for each succeeding

10 calendar year in the remaining balance" of Mr. Sarkis' employment, which was to end with

11 OHR's mandate. Compl. ¶ 3. These annual contracts, however, are the only written employment

12 contracts pertaining to this action.[3]

13    The annual contracts allegedly required cause for termination. Compl. ¶ 3. Each annual

14 employment contract, however, contained an early termination clause allowing either party to

15 terminate the agreement with two months notice. Compl. Exhibit D, p. 3, ¶ 5. After the first

16 annual contract, Mr. Sarkis executed his contracts in Bosnia where he resided and performed his

17 duties for OHR.

18    Mr. Sarkis was employed in Sarajevo, Bosnia until April 13, 2007, when OHR allegedly

19 dismissed him before the end of OHR's mandate and the end-date of the 2007 annual contract

20 without warning, a stated cause, or a disciplinary hearing, as required by the annual contract,

21 among other things. Compl. ¶¶ 3, 53. These actions allegedly breached the "umbrella

22 agreement" and the last of the annual contracts in 2007. Mr. Sarkis was expelled from OHR's

23 premises, "without justification," on the day he was terminated, although the termination did not

24

25 _____

26 [3] The final annual contract attached to the Complaint as Exhibit D demonstrates that Mr. Sarkis did not
    have guaranteed employment for the duration of OHR's mandate unless he was terminated for cause. The
    contract states: "[E]ither either party may terminate the appointment at any time with two months notice
27 signed by the party and in writing." Compl., Ex. D, p. 3, ¶ 5. Mr. Sarkis, an attorney, would certainly
    understand that this specific provision would override any oral or email statements made to him four years
28 earlier during negotiations for his earlier position as Legal Counsel.

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
                                                               MOTION AND MOTION TO DISMISS

take effect until two months later. He claims that his termination and expulsion from OHR's premises "were discriminatory and in retaliation for frank advice rendered by" him. Compl. ¶ 53.

He further alleges that on the day of his termination an OHR representative published a defamatory e-mail that was seen and read by OHR within its premises in Bosnia or wherever OHR members had access to their OHR e-mail accounts, and "may have been forwarded to third parties beyond OHR who also may have seen and read the same." Compl. ¶ 158.

Mr. Sarkis has brought twenty claims against Defendants. They are as follows:

- Breach of Contract (Count One, Compl. ¶¶ 61-70, Count Two, Compl. ¶¶ 71-80, Count Three, Compl. ¶¶ 81-91; Count Four, Compl. ¶¶ 92-102; Count Five, Compl. ¶¶ 103-111);

- Promissory Estoppel (Count Six, Compl. ¶¶ 112-121);

- Equitable Estoppel (Count Seven, Compl. ¶¶ 122-130);

- Wrongful Termination in Violation of Public Policy (Count Eight, Compl. ¶¶ 131-145);

- Retaliatory Termination in Violation of Public Policy (Count Nine, Compl. ¶¶ 146-155);

- Libel by Innuendo (Count Ten, Compl. ¶¶ 156-175);

- Defamation by Conduct (Count Eleven, Compl. ¶¶ 176-189);

- Violation of California Labor Code Section 970 (Count Twelve, Compl. ¶¶ 190-193);

- Violation of California Labor Code Section 2924 (Count Thirteen, Compl. ¶¶ 194-196);

- Promissory Fraud (Count Fourteen, Compl. ¶¶ 197-243);

- Misrepresentation (Count Fifteen, Compl. ¶¶ 244-288, Count Sixteen, Compl. ¶¶ 289-292);

- Suppression of Material Fact (Count Seventeen, Compl. ¶¶ 293-318, Count Eighteen, Compl. ¶¶ 319-322); and

- Infliction of Emotional Distress (Count Nineteen, Compl. ¶¶ 323-333, Count Twenty, Compl. ¶¶ 334-337).

Mr. Sarkis has allegedly brought these claims against Ambassador Lajcák in his official capacity as High Representative. Compl. ¶ 10. Ambassador Lajcák has served as the High

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1   Representative from July 2007 to present, and, therefore, was not the High Representative at the

2   time of the actions giving rise to Mr. Sarkis' claims, as Mr. Sarkis himself admits.  Compl. ¶ 10.[4]

3   **B.**  **OHR Background**

4   The United States played a leading role in negotiating the 1995 Dayton Peace Accords,

5   formally referred to as the General Framework Agreement for Peace ("GFAP"), which ended the

6   deadliest conflict in Europe since the Second World War.  The parties to the GFAP are each

7   foreign states: Republic of Bosnia and Herzegovina, Republic of Croatia and the Federal

8   Republic of Yugoslavia[5] (collectively "GFAP Parties").  The Peace Implementation Council

9   ("PIC") is made up of 55 foreign states and international organizations that support the peace

10  process in Bosnia.[6]  The United States is one of the founding members of the PIC and has been a

11  strong supporter of the GFAP and its implementation.  The PIC provides financial and other

12  material assistance to OHR, meets to review progress in the peace implementation process, and

13  appoints the High Representative.[7]  The PIC also has a Steering Board, which serves as the

14  executive of the PIC under the chairmanship of the High Representative, to whom it provides

15  political guidance.[8]  The United States is a member of the Steering Board, along with the

16  governments of Canada, France, Germany, Italy, Japan, Russia, United Kingdom, Presidency of

17  the European Union, European Commission and the Organization of the Islamic Conference,

18  which is represented by Turkey.[9]

19

20

21

22  [4]  OHR, "All HR's and Deputy HR's," http://www.ohr.int/ohr-info/hrs-dhrs/.  Cymrot Decl. ¶ 3 and
    Exhibit B attached thereto.

23  [5]  Now the Republic of Serbia.

24  [6]  OHR, The Peace Implementation Council and its Steering Board, available at http://www.ohr.int/ohr-
    info/gen-info/#6.  Cymrot Decl. ¶ 4 and Exhibit C attached thereto.

25  [7]  There have been six High Representatives since the end of the war, all from European countries.

26  [8]  OHR, The Peace Implementation Council and its Steering Board, available at http://www.ohr.int/ohr-
    info/gen-info/#6 (stating: "In Sarajevo, the High Representative chairs weekly meetings of the
    Ambassadors to [Bosnia] of the Steering Board members.  In addition, the Steering Board meets at the

27  level of political directors every three months.").  Cymrot Decl. ¶ 4 and Exhibit C attached thereto.

28  [9]  *Id.*

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
                                         MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

C.    **OHR's Powers**

OHR was created under the GFAP to oversee "the implementation of the civilian aspects of the Peace Agreement on behalf of the international community."[10]  OHR is the "chief civilian peace implementation agency in Bosnia and Herzegovina."[11]  OHR is a separate legal person from the GFAP parties.[12]  OHR consists of "diplomats seconded by the governments of the [Peace Implementation Council] countries," international experts, and national staff from Bosnia.[13]

The High Representative is "the final authority in theater regarding interpretation of [the GFAP, Annex 10] on the civilian implementation of the peace settlement."[14]  Under Annex 10 of the GFAP, OHR "has the status of a diplomatic mission to Bosnia and Herzegovina."[15]  The GFAP Parties have agreed to:

> "accord the High Representative and professional members of his or her staff and their families the same privileges and immunities as are enjoyed by diplomatic agents and their families under the Vienna Convention on Diplomatic Relations." [16]

Other members of OHR staff are to be accorded the same privileges and immunities afforded to administrative and technical staff under the Vienna Convention.[17]

---

[10]  OHR, Basic Information, General Information, available at http://www.ohr.int/ohr-info/gen-info/#1. Cymrot Decl. ¶ 4 and Exhibit C attached thereto.

[11]  *Id.*

[12]  *See* General Framework Agreement for Peace, Annex 10, Art. III, para. 3, Bosn. &Herz., Croat., Yugo., Dec. 14, 1995, 35 I.L.M. 75 [hereinafter GFAP], available at http://www.ohr.int/GFAP/default.asp?content_id=366.  ("The High Representative shall enjoy, under the laws of Bosnia and Herzegovina, such legal capacity as may be necessary for the exercise of his or her functions, including the capacity to contract and to acquire and dispose of real and personal property."). Cymrot Decl. ¶ 5 and Exhibit D attached thereto.

[13]  OHR, Basic Information, Status, Staff and Funding of the OHR, available at http://www.ohr.int/ohr-info/gen-info/#5.  Cymrot Decl. ¶ 4 and Exhibit C attached thereto.

[14]  GFAP, Annex 10, Art. V: Final Authority to Interpret.  Cymrot Decl. ¶ 5 and Exhibit D attached thereto.

[15]  OHR, Basic Information, Status, Staff and Funding of the OHR, available at http://www.ohr.int/ohr-info/gen-info/#5.  Cymrot Decl. ¶ 4 and Exhibit C attached thereto.

[16]  Annex 10, Agreement on Civilian Implementation, Article III (4)(b), available at http://www.ohr.int/GFAP/default.asp?content_id=366.  Cymrot Decl. ¶ 5 and Exhibit D attached thereto.

[17]  *Id.* at Article III (4)(c).  Cymrot Decl. ¶ 5 and Exhibit D attached thereto.

SPECIALLY APPEARING DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1       The United Nations Security Council has endorsed the High Representative and its work

2  numerous times.  In December 1995, the Security Council adopted Resolution 1031, which

3  welcomed the signing of the GFAP and "[e]ndorse[d] the establishment of a High Representative,

4  following the request of the parties, who, in accordance with Annex 10 on the civilian

5  implementation of the Peace Agreement, will monitor the implementation of the Peace

6  Agreement and mobilize and, as appropriate, give guidance to, and coordinate the activities of,

7  the civilian organizations and agencies involved...."[18]  The Security Council also has

8  "emphasize[d] its full support for the continued role of the High Representative in monitoring the

9  implementation of the Peace Agreement and giving guidance to and coordinating the activities of

10  the civilian organizations and agencies involved in assisting the parties to implement the Peace

11  Agreement."[19]  Since 1995, the Security Council has repeatedly adopted resolutions containing

12  similar language.[20]  As recently as June 29, 2007, the Security Council reaffirmed the High

13  Representative's final authority to interpret Annex 10.[21]

---

[18]  S.C. Res. 1031, ¶ 26, U.N. Doc. S/RES/1031 (Dec. 15, 1995).  Cymrot Decl. ¶ 6 and Exhibit E attached thereto.

[19]  *See* S.C. Res. 1174, ¶ 4, U.N. Doc. S/RES/1174 (June 15, 1998); S.C. Res. 1247, ¶ 4, U.N. Doc. S/RES/1247 (June 18, 1999); S.C. Res. 1305, ¶ 4, U.N. Doc. S/RES/1305 (June 21, 2000); S.C. Res. 1357, ¶ 4, U.N. Doc. S/RES/1357 (June 21, 2001); S.C. Res. 1423, ¶ 4, U.N. Doc. S/RES/1423 (July 12, 2002); S.C. Res. 1491, ¶ 4, U.N. Doc. S/RES/1491 (July 11, 2003); S.C. Res. 1551, ¶ 4, U.N. Doc. S/RES/1551 (July 9, 2004); S.C. Res. 1575, ¶ 4, U.N. Doc. S/RES/1575 (Nov. 22, 2004); S.C. Res. 1639, ¶ 4, U.N. Doc. S/RES/1639 (Nov. 21, 2005); and S.C. Res. 1722, ¶ 4, U.N. Doc. S/RES/1722 (November 21, 2006). *See also* S.C. Res. 1112, ¶ 3, U.N. Doc. S/RES/1112 (June 12, 1997) and S.C. Res. 1764, ¶¶ 3-4, U.N. Doc. S/RES/1764 (June 29, 2007) (reaffirming the importance the Security Council attaches to the High Representative's role).  Cymrot Decl. ¶¶ 7-18 and Exhibits F through Q attached thereto.

[20]  *See* S.C. Res. 1031, ¶¶ 26-27, U.N. Doc. S/RES/1031 (Dec. 15, 1995); S.C. Res. 1088, ¶ 14, U.N. Doc. S/RES/1088 (Dec, 12, 1996); S.C. Res. 1112, ¶ 3, U.N. Doc. S/RES/1112 (June 12, 1997);  S.C. Res. 1174, ¶ 4, U.N. Doc. S/RES/1174 (June 15, 1998); S.C. Res. 1247, ¶ 4, U.N. Doc. S/RES/1247 (June 18, 1999); S.C. Res. 1305, ¶ 4, U.N. Doc. S/RES/1305 (June 21, 2000); S.C. Res. 1357, ¶ 4, U.N. Doc. S/RES/1357 (June 21, 2001); S.C. Res. 1423, ¶ 4, U.N. Doc. S/RES/1423 (July 12, 2002); S.C. Res. 1491, ¶ 4, U.N. Doc. S/RES/1491 (July 11, 2003); S.C. Res. 1551, ¶ 4, U.N. Doc. S/RES/1551 (July 9, 2004); S.C. Res. 1575, ¶ 4, U.N. Doc. S/RES/1575 (Nov. 22, 2004); S.C. Res. 1639, ¶ 4, U.N. Doc. S/RES/1639 (Nov. 21, 2005); S.C. Res. 1722, ¶ 4, U.N. Doc. S/RES/1722 (November 21, 2006); S.C. Res. 1764, ¶¶ 3-4, U.N. Doc. S/RES/1764 (June 29, 2007).  Cymrot Decl. ¶¶ 6-19,  and Exhibits E through R attached thereto.

[21]  S.C. Res. 1764, ¶ 4, U.N. Doc. S/RES/1764 (June 29, 2007).  Cymrot Decl. ¶ 18 and Exhibit Q attached thereto.

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

The PIC, of which the United States is a founding member, has also endorsed the High Representative's powers. At its conference in Bonn in December 1997, the PIC endorsed the High Representative's:

> "use [of] his final authority in theatre regarding interpretation of the Agreement on the Civilian Implementation of the Peace Settlement in order to facilitate the resolution of difficulties by *making binding decisions, as he judges necessary, on … measures to ensure implementation of the [GFAP]* throughout Bosnia and Herzegovina and its Entities, as well as the smooth running of the common institutions. Such measures may include actions against persons holding public office or officials … who are found by the High Representative to be in violation of legal commitments made under the [GFAP] or the terms for its implementation."[22]

These powers are often referred to as the High Representative's Bonn Powers and have been endorsed by subsequent PIC Declarations and UN Security Council Resolutions.

Some of the Bonn Powers are similar to powers exercised by a sovereign. Within Bosnia, the High Representative can impose laws and appoint and remove government officials. Previous High Representatives have used their authority to remove elected officials from office, including presidents, when those officials have deliberately engaged in activities that undermine the peace process. Much of the legislation that created functioning, democratic state institutions was either drafted by staff of the OHR and imposed by the High Representative or was adopted by domestic authorities at the urging of the High Representative and with support from his office.

The United States has directly endorsed the GFAP and OHR and explicitly declared its work as important to U.S. national security and foreign policy. From 1995 to 2005, the United States provided more than $1.354 billion in bilateral assistance to support implementing the GFAP.[23] In Executive Order 13219, which was issued on June 27, 2001, President Bush determined that "the actions of persons engaged in, or assisting, sponsoring or supporting … acts obstructing the implementation of the Dayton Accords" threaten the United States' national

---

[22] PIC Bonn Conclusions, Dec. 10, 1997, XI.2, available at http://www.ohr.int/pic/default.asp?content_id=5182#11. Cymrot Decl. ¶ 20 and Exhibit S attached thereto.

[23] U.S. Assistance to Bosnia and Herzegovina - Fiscal Years 1995-2005, Bureau of European and Eurasian Affairs, available at http://www.state.gov/p/eur/rls/fs/57223.htm. Cymrot Decl. ¶ 21 and Exhibit T attached thereto.

SPECIALLY APPEARING DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

security and foreign policy.[24]   He declared a national emergency to deal with the threat and

ordered all property already in the United States or coming into the United States belonging to

people who have obstructed or pose a risk of obstructing the implementation of the GFAP be

blocked.[25]  On June 24, 2008, President Bush continued for one year the national emergency he

declared in Executive Order 13219.[26]

   The European Union ("EU") has a European Union Special Representative ("EUSR") in

Bosnia, a role currently held by Ambassador Lajcák.  The Council of the EU has stated that its

policy objectives in Bosnia "centre around continued progress in the implementation of the

General Framework Agreement for Peace (GFAP) in [Bosnia and Herzegovina], in accordance

with the Office of the High Representative's Mission Implementation Plan, and in the

Stabilisation and Association Process, with the aim of a stable, viable, peaceful and multienthnic

[Bosnia and Herzegovina], cooperating peacefully with its neighbours an irreversibly on track

toward EU membership."[27]

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

---

[24]  The Department of the Treasury, From the Office of Public Affairs, Operation Balkan Vice III: Treasury Designation of Thirteen Individuals Obstructing the Dayton Peace Accords in Bosnia (Feb. 9, 2004).  Cymrot Decl. ¶ 22 and Exhibit U attached thereto.  On May 29, 2003, President Bush issued Executive Order 13304, which modified Executive Order 13219.  Cymrot Decl. ¶ 23 and Exhibit V attached thereto.  The revised Executive Order expanded the types of individuals whose property should be blocked to include those who obstructed or posed a risk of obstructing the GFAP or "Conclusions of the Peace Implementation Conference held in London on December 8-9, 1995, including the decisions or conclusions of the High Representative, the Peace Implementation Council or its Steering Board, relating to Bosnia and Herzegovina."  The U.S. Treasury Department's Office of Foreign Assets Control has designated individuals under the Executive Orders so those individuals' assets in the United States could be blocked.

[25]  *Id.*  The 13 individuals were designated, in part, for obstructing, posing a risk of obstructing, or supporting the obstruction of the GFAP, including the decisions of the High Representative, or supporting individuals who were designated under the order.  Former High Representative Ashdown announced that ten of the individuals' assets were blocked in Bosnia in a parallel action.

[26]  Presidential Documents, Continuation of the National Emergency with Respect to the Western Balkans, 73 Fed. Reg. 123 (June 25, 2008).  Cymrot Decl. ¶ 24 and Exhibit W attached thereto.

[27]  *See*, Council Joint Action 2008/130/CFSP, p. L 35/35, Article II.  Cymrot Decl. ¶ 25 and Exhibit X attached thereto.  Article V also states "The role of the EUSR shall not in any way prejudice the mandate of the High Representative in [Bosnia and Herzegovina], including his coordinating role with regard to all activities of all civilian organization and agencies as set out in the GFAP and subsequent Peace Implementation Council (PIC) conclusions and declarations."  *Id.* at p. L 35/36.

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
                                                    MOTION AND MOTION TO DISMISS

1    **D.    Mr. Sarkis' Diplomatic Role At OHR**

2    Mr. Sarkis claims that he accepted OHR's offer of employment for the position of Legal

3    Counsel on March 3, 2003. Compl. ¶¶ 12, 26. He was elevated to the position of General

4    Counsel on June 1, 2005. Compl. ¶ 55. Mr. Sarkis alleges that "beginning in late 2003 and

5    extending to 2007, OHR tasked [Mr. Sarkis] to initiate and spearhead direct negotiations with

6    several foreign governments on highly sensitive issues." Compl. ¶ 58. He also alleges that OHR

7    asked him "to serve as one of only two senior international staff members in the residual 22-

8    person OHR Liquidation Team." Compl. ¶ 59. A letter from Lord Ashdown, then High

9    Representative, also indicates that Mr. Sarkis' work entailed contributing to "OHR's internal

10   governance rationalization, legal sustainability and transition capacity-building." Compl., Ex. B.

11   In addition, "within weeks of his arrival, he initiated a process which culminated in OHR's legal

12   interests being considerably advanced" and he helped Lord Ashdown ensure that "important legal

13   aspects" of Lord Ashdown's personal mandate were "put in order and made consistent with best

14   practice." Compl., Ex. B. He also assisted Lord Ashdown in resolving "sensitive political, public

15   relations and security issues." Compl., Ex. B. Dr. Schwarz-Schilling, the subsequent High

16   Representative, also has stated that Mr. Sarkis helped him "consolidate critical personal legal

17   aspects" of his and Lord Ashdown's mandates. Compl., Ex. C.

18   As a professional member of the High Representative's staff, Mr. Sarkis was granted by

19   the GFAP parties the same privileges and immunities enjoyed by diplomatic agents and their

20   families under the Vienna Convention.

21   **III.    ARGUMENT**

22   The Court must dismiss this action under Rules 12(b)(1), (2) and (5) of the Federal Rules

23   of Civil Procedure. OHR is an instrumentality of foreign states, and, therefore, the FSIA is the

24   sole basis of this Court's jurisdiction. The Complaint, thus, should be dismissed because

25   Mr. Sarkis did not properly serve Defendants under the FSIA. In addition, as an instrumentality

26   of foreign states, OHR is entitled to immunity, and the Court does not have subject matter or

27   personal jurisdiction to hear this dispute.

28

**A.    OHR Is An Instrumentality Of Foreign States Entitled To Immunity**

The FSIA provides foreign states and their instrumentalities with immunity from the jurisdiction of courts in the United States, unless one of the specified exceptions to immunity applies. *See* 28 U.S.C. § 1604. Under the FSIA, a foreign state is defined to include agencies and instrumentalities. *See* 28 U.S.C. § 1603(a). An agency or instrumentality of a foreign state is an entity:

> (1) which is a separate legal person, corporate or otherwise, and
>
> (2) which is an *organ of a foreign state* or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3) which is neither a citizen of a State of the United States as defined in section 1332 (c) and (d) of this title, nor created under the laws of any third country.

28 U.S.C. § 1603(b) (emphasis added).

OHR satisfies the three-prong test as an agency or instrumentality of the PIC and as such is entitled to immunity under the FSIA: (1) The GFAP, Annex 10, Art. III, p. 2, ¶ 3, grants OHR legal capacity within Bosnia and Herzegovina.[28] *See Cymrot Decl.* ¶ 5 and Exhibit D attached thereto; (2) OHR is an "organ" of the foreign states that make up the PIC. *See, e.g., EIE Guam Corp. v. The Long Term Credit Bank of Japan, Ltd.,* 322 F.3d 635, 641 (9th Cir. 2003) (a corporation formed "to carry out Japanese national policy" was an "organ" of the Japanese government); and (3) OHR is not "created under the laws of any third country;" it was created pursuant to international agreement among (and/or sponsored by) multiple sovereign nations. *See LeDonne v. Gulf Air, Inc.,* 700 F. Supp. 1400, 1406 (E.D. Va. 1988) (corporation established by treaty is not created under the laws of any third country); *see also Mangattu v. M/V Ibn Hayyan,* 35 F.3d 205, 209 (5th Cir. 1994) (same, *citing LeDonne*); *In re Air Crash Disaster Near Roselawn,* 96 F.3d 932, 938-939 (7th Cir. 1996) (joint venture between Italy and France was not created under the laws of a third country).

---

[28] *See also,* S.C. Res. 1031, ¶ 28, U.N. Doc. S/RES/1031 (Dec. 15, 1995), in which the U.N. Security Council "*Decides* that all States concerned, and in particular those where the High Representative establishes offices, shall ensure that the High Representative enjoys such legal capacity as may be necessary for the exercise of his functions, including the capacity to contract and to acquire and dispose of real and personal property...." *Cymrot Decl.* ¶ 6 and Exhibit E attached thereto.

SPECIALLY APPEARING DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    **B.    The Complaint And Summons Were Not Properly Served**

2         Mr. Sarkis served the Summons and Complaint by having a process server send them by

3    certified mail to OHR.  *See* Mr. Sarkis' Affidavits of Mailing, Docket Entries 11 and 12.  This

4    method of service does not satisfy any of the requirements of 28 U.S.C. § 1608(b), which governs

5    service under the FSIA.  That statute states:

6              (b) Service in the courts of the United States and of the States shall
               be made upon an agency or instrumentality of a foreign state:
7

8              (1) by delivery of a copy of the summons and complaint in
               accordance with any special arrangement for service between the
               plaintiff and the agency or instrumentality; or
9

10             (2) if no special arrangement exists, by delivery of a copy of the
               summons and complaint either to an officer, a managing or general
11             agent, or to any other agent authorized by appointment or by law to
               receive service of process in the United States; or in accordance
               with an applicable international convention on service of judicial
12             documents; or

13             (3) if service cannot be made under paragraphs (1) or (2), and if
               reasonably calculated to give actual notice, by delivery of a copy of
14             the summons and complaint, together with a translation of each into
               the official language of the foreign state—
15

16             (A) as directed by an authority of the foreign state or political
               subdivision in response to a letter rogatory or request or

17             (B) by any form of mail requiring a signed receipt, to be addressed
               and dispatched by the clerk of the court to the agency or
18             instrumentality to be served, or

19             (C) as directed by order of the court consistent with the law of the
               place where service is to be made.
20

21    28 U.S.C. § 1608(b).

22         The statute establishes a hierarchy of methods for serving the summons and complaint.

23    Mr. Sarkis and the Defendants did not have any special arrangement regarding service of the

24    summons and complaint, and therefore service under Section 1608(b)(1) does not apply.  There

25    exists no OHR agent in the United States to be served and there is no applicable international

26    convention on service of judicial documents, so Section 1608(b)(2) does not apply either.

27    Mr. Sarkis did not choose to make service under Section 1608(b)(3)(B), which requires the clerk

28    of the court to mail a copy of the summons and complaint, along with a translation of each into

Baker & Hostetler  LLP
Attorneys  At Law
Los Angeles

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

1    the official language of the foreign state, to the instrumentality by a method that requires a signed

2    receipt.

3        According to the Affidavit of Mailing by Process Server that Mr. Sarkis has filed, the

4    process server mailed the complaint and summons via DHL to OHR.  Thus, Mr. Sarkis did not

5    comply with the statute, which requires the clerk of the court to mail the summons and complaint

6    to the instrumentality.  Therefore, Mr. Sarkis did not properly serve Defendants and the Court

7    should dismiss the Complaint.

8    **C.    The Court Lacks Subject Matter Jurisdiction Because Defendants Have**
       **Immunity Under The Foreign Sovereign Immunities Act**

9

10       Defendants also move to dismiss the Complaint for lack of subject matter jurisdiction

11   under Rule 12(b)(1).  The Foreign Sovereign Immunities Act, 28 U.S.C. § 1330(a), states:

12          The district courts shall have original jurisdiction without regard to
            amount in controversy of any nonjury civil action against a foreign
13          state as defined in section 1603(a) of this title [28 USCS § 1603(a)]
            as to any claim for relief in personam with respect to which the
14          foreign state is not entitled to immunity either under sections 1605-
            1607 of this title [28 USCS §§ 1605-1607] or under any applicable
15          international agreement.

16   The FSIA provides the sole source for federal jurisdiction over an action involving an

17   instrumentality of a foreign state.  *Randolph v. Budget Rent-A-Car*, 97 F.3d 319, 323 (9th Cir.

18   1996) (citing *Export Group v. Reef Indus.*, 54 F.3d 1466, 1469 (9th Cir. 1995)).  Section 1604

19   provides that:

20          "[A] foreign state shall be immune from the jurisdiction of the
            courts of the United States and of the States except as provided in
21          sections 1605-1607 of this chapter."

22   28 U.S.C. § 1604.  The FSIA creates a presumption that a foreign sovereign is immune from suit

23   unless one of the exceptions to immunity contained in the statute applies.  *Budget Rent-A-Car*, 97

24   F.3d at 323.

25       Under this statute, once Defendants make a *prima facie* showing that they are an

26   instrumentality of a foreign state, they are entitled to a presumption of immunity.  *Phaneuf v.*

27   *Republic of Indonesia*, 106 F.3d 302, 306 (9th Cir. 1997).  "[W]hen considering a motion to

28   dismiss pursuant to Rule 12(b)(1) the district court is not restricted to the face of the pleadings,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

-13-                    SPECIALLY APPEARING DEFENDANTS' NOTICE OF
                       MOTION AND MOTION TO DISMISS

1    but may review any evidence, such as affidavits and testimony, to resolve factual disputes

2    concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir.

3    1988). The declaration of Mark A. Cymrot is submitted herewith, which supports Defendants'

4    *prima facie* showing. Then, "the burden of production shifts to the plaintiff to offer evidence that

5    an exception [to immunity] applies." *Phaneuf*, 106 F.3d at 307.

6    　　Since OHR is an instrumentality of foreign states, in particular the PIC countries, it is

7    entitled to immunity from the Court's jurisdiction under the FSIA, unless one of the exceptions

8    specified in the statute applies. 28 U.S.C. §§ 1605-1607. Mr. Sarkis, who was well aware of

9    these requirements, has not alleged that any of the FSIA exceptions apply. Since Mr. Sarkis

10    cannot meet his burden of showing an exception to immunity applies to his allegations, the

11    lawsuit must be dismissed for lack of subject matter jurisdiction.

12    　　**D.　　Ambassador Lajčák Is Immune From Suit Under The FSIA**

13    　　It is not clear why Ambassador Lajčák is a defendant; he is not alleged to have committed

14    any acts regarding Mr. Sarkis, in California, the United States or otherwise. The FSIA applies to

15    an individual acting in his or her official capacity as an employee of a foreign state. *Chuidian v.*

16    *Philippine Nat'l Bank*, 912 F.2d 1095, 1103 (9th Cir. 1990) (official of Philippine government

17    granted immunity as an instrumentality of the republic for acts he committed while acting in his

18    official capacity). Since OHR is entitled to immunity under the FSIA, Ambassador Lajčák also

19    must be granted immunity under the FSIA for an action against him as the High Representative.

20    　　**E.　　The Court Lacks Personal Jurisdiction Over Defendants**

21    　　Defendants also move to dismiss the complaint for lack of personal jurisdiction under

22    Rule 12(b)(2). "Once the defendant has challenged the exercise of personal jurisdiction, the

23    plaintiff bears the burden of showing that the court has jurisdiction." *Butcher's Union Local No.*

24    *498, United Food and Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986)

25    (citations omitted). The requirements for personal jurisdiction under the FSIA are set forth in 28

26    U.S.C. § 1330(b), which states:

27

28

Baker & Hostetler LLP
Attorneys At Law
Los Angeles

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

1
2
3

> "Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the districts courts have jurisdiction under subsection (a) where service has been made under section 1608 of this title."

4   Mr. Sarkis has not perfected service properly under Section 1608. *See* Mr. Sarkis' Affidavits of

5   Mailing, Docket Entries 11 and 12. In addition, personal jurisdiction over a foreign state exists

6   only when one of the exceptions to foreign sovereign immunity applies. *Argentine Republic v.*

7   *Amerada Hess Shipping Corp.*, 488 U.S. 428, 435 n.3 (1989). As explained above, Mr. Sarkis

8   has not met his burden to identify an applicable FSIA exception, and thus the Court does not have

9   personal jurisdiction over the Defendants.

10      Each of the exceptions have a nexus requirement to the United States that approximates

11   the minimum contacts requirements of due process. *Thomas P. Gonzalez Corp. v. Consejo*

12   *Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1255 (9th Cir. 1980) ("Personal

13   jurisdiction under the Act requires satisfaction of the traditional minimum contacts standard.").

14   Mr. Sarkis alleges that he was in California when he responded to a worldwide advertisement for

15   a position at OHR and affixed his signature, while in California, to a job offer made from

16   Sarajevo, Bosnia. Compl. ¶¶ 9, 12, 14, 26. But thereafter he worked in Bosnia, signed successive

17   annual written contracts in Bosnia, and was terminated in Bosnia. Compl. ¶¶ 39-43, 53. The

18   alleged offending statements were also made in Bosnia. Compl. ¶¶ 157-189. To satisfy these

19   requirements, Mr. Sarkis' claims must be based upon minimum contacts with the United States.

20   *Gonzalez Corp.,* 614 F.2d at 1255 n.5. His claims are not based upon his presence in California

21   when he accepted the original job offer but the acts that ended his employment, all of which

22   occurred in Bosnia more than four years later. Compl. ¶¶ 61-337.

23      In addition, Mr. Sarkis has not alleged that Ambassador Lajčák took any actions in the

24   United States that would subject him to personal jurisdiction in this Court. Indeed, Ambassador

25   Lajčák did not become the High Representative until after the actions at issue in this case were

26   complete. *See* Cymrot Decl. ¶ 3 and Exhibit B. Mr. Sarkis has alleged that he "is informed and

27   believes, and upon such information and belief alleges, [Gisbert] Bruns [a Deputy High

28   Representative and Director of the OHR Resources Department] and [Edouard] d'Aoust [Head of

-15-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    the Legal Department] recommended the Termination and Same-Day Expulsion to Dr. Schwarz-

2    Schilling and concurred in his decision to terminate and expel" Mr. Sarkis.[29] Compl. ¶ 53.

3    Ambassador Lajčák was not involved in these actions.[30]

4    **IV.    <u>CONCLUSION</u>**

5         Based on the foregoing, Defendants respectfully request the Court dismiss Mr. Sarkis'

6    Complaint.

7    Dated:  August 29, 2008                    BAKER & HOSTETLER LLP
                                                LISA I. CARTEEN
8

9                                               /s/ Lisa I. Carteen
10                                              Lisa I. Carteen
                                                Attorneys for Specially Appearing Defendants
11                                              OFFICE OF THE HIGH REPRESENTATIVE
                                                an MIROSLAV LAJCÁK, in his capacity as
                                                High Representative of the International
12                                              Community in Bosnia and Herzegovina

13

14

15

16    ───────────────────────

17    [29] Mr. Bruns is a citizen of the Federal Republic of Germany and Mr. d'Aoust is a citizen of the Kingdom
      of Belgium.

18    [30] Even if OHR were not an instrumentality of foreign states, the Court would not have personal
      jurisdiction over Defendants under California's long-arm statute.  The Ninth Circuit uses a two-part
19    analysis in determining whether courts have personal jurisdiction over non-resident defendants.  "First, the
      exercise of jurisdiction must satisfy the requirements of the applicable long-arm statute.  Second, the
20    exercise of jurisdiction must comport with federal due process." *Dow Chem. Co. v. Calderon*, 422 F.3d
      827, 830 (9th Cir. 2005) (citation omitted).  California's long-arm statute, Cal. Civ. Proc. Code § 410.10,
21    allows courts to "exercise jurisdiction to the limits of the Due Process Clause of the U.S. Constitution."
      *Dow Chem. Co.,* 422 F.2d at 831 (citation omitted).

22    Allowing this suit to proceed in this forum would not be consistent with due process.  In order to satisfy
      due process, the defendant must have "established 'minimum contacts' with the forum such that (1) 'the
23    defendant has purposefully directed his activities as residents of the forum,' (2) 'the litigation results from
      alleged injuries that arise out or relate to those activities,' and (3) the exercise of jurisdiction is
24    reasonable.'" *Id.* at 834 n.6 (citations omitted).  Mr. Sarkis cannot demonstrate that these criteria have
      been met; all of Mr. Sarkis' allegations arise from events in Bosnia; none in California.  The recruitment
25    of an employee from California does not give California courts jurisdiction over all subsequent actions
      regarding the employee.  *See Markey v. Kudelski S.A.*, 2007 U.S. Dist. LEXIS 24709 (S.D. Cal. April 3,
26    2007) (granting motion to dismiss for lack of personal jurisdiction where offer of employment in
      California, but meeting giving rise to plaintiff's employment termination occurred in Switzerland); *see
27    also Katerndahl v. Brindenberg Sec., A/S*, 1996 U.S. Dist. LEXIS 22024 (N.D. Cal. Dec. 9, 1996)
      (granting motion to dismiss and ruling that employment ads for employment outside of California do not
28    rise to the level of purposeful availment).

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
                                              MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 28, 2008, a true and accurate copy of **SPECIALLY APPEARING DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** was electronically filed with the Court to be served by operation of the Court's electronic filing system, upon the following:  Jeffrey M. Forster (jforstr@pacbell.net); Philip M. Musolino (pmusolino@musolinoanddessel.com).

Dated:  August 29, 2008                    BAKER & HOSTETLER LLP

/s/ Lisa I. Carteen
Lisa I. Carteen

Attorneys for Specially Appearing Defendants
OFFICE OF THE HIGH REPRESENTATIVE and
MIROSLAV LAJCÁK, in his capacity as High
Representative of the International Community in
Bosnia and Herzegovina

502028787.4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

SPECIALLY APPEARING DEFENDANTS' NOTICE OF
MOTION AND MOTION TO DISMISS

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SARKIS,<br><br>    Plaintiff,<br><br>v.<br><br>MIROSLAV LAJCAK; OFFICE OF THE<br>HIGH REPRESENTATIVE,<br><br>    Defendants. | Case No.  C 08 01911 RMW<br><br>**[PROPOSED] ORDER GRANTING<br>SPECIALLY APPEARING DEFENDANTS'<br>MOTION TO DISMISS**<br><br>Date:  October 31, 2008<br>Time:  9:00 a.m.<br>Judge:  Hon. Ronald M. Whyte<br>Ctrm.:  Courtroom 6 |

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

  The Motion of Specially Appearing Defendants Office Of The High Representative and

Miroslav Lajcák, in his capacity as High Representative of the International Community in

Bosnia and Herzegovina, to dismiss Plaintiff Anthony Sarkis' Complaint pursuant to

Rules 12(b)(1), (2) and (5) of the Federal Rules of Civil Procedure, on the grounds that Plaintiff

improperly served them and the Court lacks personal and subject matter jurisdiction over

Defendants, came on for hearing on October 31, 2008 at 9:00 a.m., before the Honorable

Ronald M. Whyte.  Defendants were represented by Bruce Baumgartner and Mark Cymrot and

Plaintiff was represented by Philip M. Musolino.

1    After full consideration of the evidence and points and authorities submitted by all parties,

2    upon hearing the oral arguments of counsel, and all other matters presented to the Court, for the

3    reasons given below, the Court grants Specially Appearing Defendants' Motion to Dismiss and

4    dismisses Plaintiff's Complaint with prejudice:

5    (1)    the Court lacks subject matter jurisdiction over Specially Appearing Defendants

6    Office Of The High Representative and Miroslav Lajcák, in his capacity as High Representative

7    of the International Community in Bosnia and Herzegovina, under Rule 12(b)(1) because

8    Defendants, as instrumentalities of a foreign state, are entitled to immunity from the Court's

9    jurisdiction under the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 *et seq.* ("FSIA");

10   (2)    the Court lacks personal jurisdiction over Defendants under Rule 12(b)(2); and

11   (3)    Plaintiff Anthony Sarkis failed to properly effect service on Defendants in

12   accordance with the FSIA.

13   Therefore, after consideration of the briefs and arguments of counsel and all other matters

14   presented to the Court, and good cause appearing therefore, IT IS HEREBY ORDERED that:

15   1.    Specially Appearing Defendants Office Of The High Representative's and

16   Miroslav Lajcák's Motion to Dismiss is granted; and

17   2.    This action is dismissed with prejudice.

18

19   DATED: _____    _____

20   RONALD M. WHYTE
     United States District Judge

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

1

## CERTIFICATE OF SERVICE

2

3        The undersigned hereby certifies that on August 29, 2008, a true and accurate copy of

4    **[PROPOSED] ORDER GRANTING SPECIALLY APPEARING DEFENDANTS'**

5    **MOTION TO DISMISS** was electronically filed with the Court to be served by operation of the

6    Court's electronic filing system, upon the following:  Jeffrey M. Forster (jforstr@pacbell.net);

7    Philip M. Musolino (pmusolino@musolinoanddessel.com).

8

9    Dated:  August 29, 2008               BAKER & HOSTETLER LLP

10
                                          /s/ Lisa I. Carteen
11                                         Lisa I. Carteen

12                                        Attorneys for Specially Appearing Defendants
                                          OFFICE OF THE HIGH REPRESENTATIVE and
13                                        MIROSLAV LAJČÁK, in his capacity as High
                                          Representative of the International Community in
14                                        Bosnia and Herzegovina

15   502028758.2

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER  LLP
ATTORNEYS  AT LAW
LOS ANGELES