LISA I. CARTEEN, Bar No. 204764
BAKER & HOSTETLER LLP
12100 Wilshire Boulevard, 15th Floor
Los Angeles, California  90025-7120
Telephone:    310.820.8800
Facsimile:    310.820.8859
Email:    lcarteen@bakerlaw.com

MARK A. CYMROT, Bar No. 164673
(Pro Hac Vice Pending)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, NW, Suite 1100
Washington, DC  20036-5304
Telephone:    202.861.1500
Facsimile:    202.861.1783
Email:    mcymrot@bakerlaw.com

Attorneys for Specially Appearing Defendants
OFFICE OF THE HIGH REPRESENTATIVE and
MIROSLAV LAJCÁK, in his capacity as High
Representative of the International Community in
Bosnia and Herzegovina

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY SARKIS,<br><br>           Plaintiff,<br><br>v.<br><br>MIROSLAV LAJCAK; OFFICE OF THE HIGH REPRESENTATIVE,<br><br>           Defendants. | Case No.  C 08 01911 RMW<br><br>**DECLARATION OF MARK A. CYMROT IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>[Filed concurrently herewith Defendants' Notice of Motion and Motion to Dismiss and [Proposed] Order in Support Thereof]<br><br>Date:      October 31, 2008<br>Time:      9:00 a.m.<br>Judge:     Hon. Ronald M. Whyte<br>Ctrm.:     Courtroom 6 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Baker & Hostetler LLP
Attorneys At Law
Los Angeles

1  ### DECLARATION OF MARK A. CYMROT

2  I, Mark A. Cymrot, declare as follows:

3       1.      I am an attorney duly licensed in the State of New York and the District of

4  Columbia and with an application for admission pro hac vice pending before this Court.  I am a

5  partner in the law firm Baker & Hostetler LLP, attorneys of record for Defendants the Office of

6  the High Representative of Bosnia-Herzegovina ("OHR") and Ambassador Miroslav Lajčák.

7  Defendants are hereby submitting true copies of the following exhibits in support of their motion

8  to dismiss brought pursuant to Rules 12(b)(1), (2) and (5) of the Federal Rules of Civil Procedure.

9       2.      Attached hereto as Exhibit A is a copy of the Official Journal of the European

10  Union, Council Joint Action 2007/87/CFSP.

11       3.      Attached hereto as Exhibit B is a copy of OHR's webpage regarding "All HR's

12  and Deputy HR's", available at http://www.ohr.int/ohr-info/hrs-dhrs/, and accessed on August 28,

13  2008.

14       4.      Attached hereto as Exhibit C is a copy of OHR's webpage regarding "General

15  Information," available at http://www.ohr.int/ohr-info/gen-info/, and accessed on August 28,

16  2008.

17       5.      Attached hereto as Exhibit D is a copy of the General Framework Agreement for

18  Peace, Annex 10, Bosn. & Herz., Croat., Yugo., Dec. 14, 1995, 35 I.L.M. 75, available at

19  http://www.ohr.int/GFAP/default.asp?content_id=366, and accessed on August 28, 2008.

20       6.      Attached hereto as Exhibit E is a copy of United Nations Security Resolution

21  1031, U.N. Doc. S/RES/1031 (Dec. 15, 1995).

22       7.      Attached hereto as Exhibit F is a copy of United Nations Security Resolution

23  1174, U.N. Doc. S/RES/1174 (June 15, 1998).

24       8.      Attached hereto as Exhibit G is a copy of United Nations Security Resolution

25  1247, U.N. Doc. S/RES/1247 (June 18, 1999).

26       9.      Attached hereto as Exhibit H is a copy of United Nations Security Resolution

27  1305, U.N. Doc. S/RES/1305 (June 21, 2000).

28

DECLARATION OF MARK A. CYMROT IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO DISMISS

1    10.    Attached hereto as Exhibit I is a copy of United Nations Security Resolution 1357,

2   U.N. Doc. S/RES/1357 (June 21, 2001).

3    11.    Attached hereto as Exhibit J is a copy of United Nations Security Resolution 1423,

4   U.N. Doc. S/RES/1423 (July 12, 2002).

5    12.    Attached hereto as Exhibit K is a copy of United Nations Security Resolution

6   1491, U.N. Doc. S/RES/1491 (July 11, 2003).

7    13.    Attached hereto as Exhibit L is a copy of United Nations Security Resolution

8   1551, U.N. Doc. S/RES/1551 (July 9, 2004).

9    14.    Attached hereto as Exhibit M is a copy of United Nations Security Resolution

10  1575, U.N. Doc. S/RES/1575 (Nov. 22, 2004).

11   15.    Attached hereto as Exhibit N is a copy of United Nations Security Resolution

12  1639, U.N. Doc. S/RES/1639 (Nov. 21, 2005).

13   16.    Attached hereto as Exhibit O is a copy of United Nations Security Resolution

14  1722, U.N. Doc. S/RES/1722 (November 21, 2006).

15   17.    Attached hereto as Exhibit P is a copy of United Nations Security Resolution

16  1112, U.N. Doc. S/RES/1112 (June 12, 1997).

17   18.    Attached hereto as Exhibit Q is a copy of United Nations Security Resolution

18  1764, U.N. Doc. S/RES/1764 (June 29, 2007).

19   19.    Attached hereto as Exhibit R is a copy of United Nations Security Resolution

20  1088, U.N. Doc. S/RES/1088 (Dec, 12, 1996).

21   20.    Attached hereto as Exhibit S is a copy of PIC Bonn Conclusions, Dec. 10, 1997,

22  available at http://www.ohr.int/pic/default.asp?content_id=5182#11, and accessed on August 28,

23  2008.

24   21.    Attached hereto as Exhibit T is a copy of U.S. Assistance to Bosnia and

25  Herzegovina – Fiscal Years 1995-2005, Bureau of European and Eurasian Affairs, available at

26  http://www.state.gov/p/eur/rls/fs/57223.htm, and accessed on August 28, 2008.

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

- 2 -

1    22.    Attached hereto as Exhibit U is a copy of The Department of the Treasury, From

2  the Office of Public Affairs, Operation Balkan Vice III: Treasury Designation of Thirteen

3  Individuals Obstructing the Dayton Peace Accords in Bosnia (Feb. 9, 2004).

4    23.    Attached hereto as Exhibit V is a copy of Presidential Documents, Executive

5  Order 13304, Termination of Emergencies With Respect to Yugoslavia and Modification of

6  Executive Order 13219 of June 26, 2001, 68 Fed. Reg. 103 (May 29, 2003).

7    24.    Attached hereto as Exhibit W is a copy of Presidential Documents, Continuation of

8  the National Emergency with Respect to the Western Balkans, 73 Fed. Reg. 123 (June 25, 2008).

9    25.    Attached hereto as Exhibit X is a copy of the Official Journal of the European

10  Union, Council Joint Action 2008/130/CFSP.

11    I declare under the penalty of perjury under the laws of the United States of America that

12  the foregoing is true and correct.

13    Executed this 29th day of August 2008, in Washington, D.C.

14

15

16    /s/ Mark A. Cymrot
    Mark A. Cymrot

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

DECLARATION OF MARK A. CYMROT IN SUPPORT
OF NOTICE OF MOTION AND MOTION TO DISMISS

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on August 29, 2008, a true and accurate copy of DECLARATION OF MARK A. CYMROT IN SUPPORT OF SPECIALLY APPEARING DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND EXHIBITS A–X THERETO was electronically filed with the Court to be served by operation of the Court's electronic filing system, upon the following:  Jeffrey M. Forster (jforstr@pacbell.net); Philip M. Musolino (pmusolino@musolinoanddessel.com).

Dated:  August 29, 2008          BAKER & HOSTETLER LLP

                                 /s/ Lisa I. Carteen
                                 Lisa I. Carteen

                                 Attorneys for Specially Appearing Defendants
                                 OFFICE OF THE HIGH REPRESENTATIVE and
                                 MIROSLAV LAJCÁK, in his capacity as High
                                 Representative of the International Community in
                                 Bosnia and Herzegovina

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# EXHIBIT A

8.2.2007          EN          Official Journal of the European Union          L 35/35

# COUNCIL JOINT ACTION 2007/87/CFSP

## of 7 February 2007

## amending and extending the mandate of the European Union Special Representative in Bosnia and Herzegovina

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty on the European Union, and in particular Articles 14, 18(5) and 23(2) thereof,

Whereas:

(1) On 30 January 2006, the Council adopted Joint Action 2006/49/CFSP [1] appointing Mr Christian Schwarz-Schilling as the European Union Special Representative (EUSR) in Bosnia and Herzegovina.

(2) On 25 July 2006, the Council adopted Joint Action 2006/523/CFSP [2] amending the mandate of the EUSR in Bosnia and Herzegovina.

(3) On 7 June 2006, the Council approved the policy of the European Union on the security of personnel deployed outside the European Union in an operational capacity under Title V of the Treaty.

(4) On the basis of a review of Joint Action 2006/49/CFSP, the mandate of the EUSR should be amended and extended for an additional four months until 30 June 2007.

(5) The EUSR's mandate should be implemented in coordination with the Commission in order to ensure consistency with other relevant activities falling within Community competence.

(6) The EUSR will implement his mandate in the context of a situation which may deteriorate and could harm the objectives of the Common Foreign and Security Policy as set out in Article 11 of the Treaty,

HAS ADOPTED THIS JOINT ACTION:

### Article 1

#### European Union Special Representative

The mandate of Mr Christian Schwarz-Schilling as the European Union Special Representative (EUSR) in Bosnia and Herzegovina (BiH) is hereby extended until 30 June 2007.

### Article 2

#### Policy objectives

The mandate of the EUSR shall be based on the policy objectives of the EU in BiH. These centre around continued progress in the implementation of the General Framework Agreement for Peace (GFAP) in BiH, in accordance with the Office of the High Representative's Mission Implementation Plan, and in the Stabilisation and Association Process, with the aim of a stable, viable, peaceful and multiethnic BiH, cooperating peacefully with its neighbours and irreversibly on track towards EU membership.

### Article 3

#### Mandate

In order to achieve the policy objectives of the EU in BiH, the mandate of the EUSR shall be to:

(a) offer the EU's advice and facilitation in the political process;

(b) promote overall EU political coordination in BiH;

(c) promote overall EU coordination of, and give local political direction to, EU efforts in tackling organised crime, without prejudice to the European Union Police Mission (EUPM)'s leading role in the coordination of policing aspects of these efforts and to the ALTHEA (EUFOR) military chain of command;

(d) provide the EU Force Commander with local political advice, including with respect to the Integrated Police Unit style capability, on which the EUSR may draw, in agreement with the said Commander, without prejudice to the chain of command;

[1] OJ L 26, 31.1.2006, p. 21.
[2] OJ L 205, 27.7.2006, p. 30.

L 35/36    EN    Official Journal of the European Union    8.2.2007

(e) contribute to reinforcement of internal EU coordination and coherence in BiH, including through briefings to EU Heads of Mission and through participation in, or representation at, their regular meetings, through chairing a coordination group composed of all EU actors present in the field with a view to coordinating the implementation aspects of the EU's action, and through providing them with guidance on relations with the BiH authorities;

(f) ensure consistency and coherence of EU action towards the public. The EUSR spokesperson shall be the main EU point of contact for BiH media on Common Foreign and Security Policy/European Security and Defence Policy (CFSP/ESDP) issues;

(g) maintain an overview of the whole range of activities in the field of the rule of law and in this context provide the Secretary-General/High Representative (SG/HR) and the Commission with advice as necessary;

(h) provide the Head of Mission of the EUPM with local political guidance as part of his wider responsibilities and his role in the chain of command for EUPM;

(i) as part of the international community's and the BiH authorities' broader approach to the rule of law, and drawing upon the EUPM's provision of technical policing expertise and assistance in this respect, support the preparation and implementation of police restructuring;

(j) provide support for a reinforced and more effective BiH criminal justice/police interface, in close liaison with EUPM;

(k) as far as activities under Title VI of the Treaty, including Europol, and related Community activities are concerned, provide the SG/HR and the Commission with advice as necessary, and take part in the required local coordination;

(l) with a view to coherence and possible synergies, continue to be consulted on priorities for Instrument of Pre-accession Assistance;

(m) support planning for a reinforced EUSR office in the context of the closure of the Office of the High Representative (OHR), including advice on public information aspects of the transition, in close coordination with the Commission;

(n) contribute to the development and consolidation of respect for human rights and fundamental freedoms in BiH, in accordance with EU human rights policy and EU Guidelines on Human Rights;

(o) engage with relevant BiH authorities on their full cooperation with the International Criminal Tribunal for the Former Yugoslavia (ICTY);

(p) provide political advice and facilitation in the process of constitutional reform.

*Article 4*

**Implementation of the mandate**

1. The EUSR shall be responsible for the implementation of the mandate acting under the authority and operational direction of the SG/HR. The EUSR shall be accountable to the Commission for all expenditure.

2. The Political and Security Committee (PSC) shall maintain a privileged link with the EUSR and shall be the primary point of contact with the Council. The PSC shall provide the EUSR with strategic guidance and political input within the framework of the mandate.

*Article 5*

**High Representative**

The role of the EUSR shall not in any way prejudice the mandate of the High Representative in BiH, including his coordinating role with regard to all activities of all civilian organisations and agencies as set out in GFAP and subsequent Peace Implementation Council conclusions and declarations.

*Article 6*

**Financing**

1. The financial reference amount intended to cover the expenditure related to the mandate of the EUSR in the period from 1 March to 30 June 2007 shall be EUR 770 000.

2.   The expenditure financed by the amount stipulated in paragraph 1 shall be managed in accordance with the procedures and rules applicable to the general budget of the European Union with the exception that any prefinancing shall not remain the property of the Community. Nationals of the host and neighbouring countries shall be allowed to tender for contracts.

3.   The management of the expenditure shall be subject to a contract between the EUSR and the Commission. The expenditure shall be eligible as from 1 March 2007.

4.   The Presidency, Commission, and/or Member States, as appropriate, shall provide logistical support in the region.

*Article 7*

**Constitution of the team**

1.   An EU dedicated staff projecting an EU identity shall be assigned to assist the EUSR to implement his mandate and contribute to the coherence, visibility and effectiveness of the overall EU action in BiH, in particular in political, politico-military and security affairs, and with regard to communication and media relations. Within the limits of his mandate and the corresponding financial means made available, the EUSR shall be responsible for constituting his team in consultation with the Presidency, assisted by the SG/HR, and in full association with the Commission. The EUSR shall inform the Presidency and the Commission of the final composition of his team.

2.   EU Member States and Institutions may propose the secondment of staff to work with the EUSR. The remuneration of staff who are seconded by an EU Member State or Institution to the EUSR shall be covered by the EU Member State or Institution concerned, respectively.

3.   All A-type posts, which are not covered by secondment, shall be advertised as appropriate by the General Secretariat of the Council and also notified to EU Member States and Institutions in order to recruit the best-qualified applicants.

4.   The privileges, immunities and further guarantees necessary for the completion and smooth functioning of the mission of the EUSR and the members of his staff shall be

defined with the parties. Member States and the Commission shall grant all necessary support to such effect.

*Article 8*

**Security**

1.   The EUSR and the members of his team shall respect security principles and minimum standards established by Council Decision 2001/264/EC of 19 March 2001 adopting the Council's Security Regulations ([1]), in particular when managing EU classified information.

2.   The EUSR shall, in accordance with the policy of the European Union on the security of personnel deployed outside the EU in an operational capacity under Title V of the Treaty, take all reasonably practicable measures, in conformity with his mandate and the security situation in his geographical area of responsibility, for the security of all personnel under his direct authority, notably by:

(i) establishing a mission-specific security plan based on Council Secretariat guidance, including mission-specific physical, organisational and procedural security measures, governing management of the secure movement of personnel to, and within, the mission area, the management of security incidents and a mission contingency and evacuation plan;

(ii) ensuring that all personnel deployed outside the EU are covered by high risk insurance as required by the conditions in the mission area;

(iii) ensuring that all members of his team to be deployed outside the European Union, including locally contracted personnel, have received appropriate security training before or upon arriving in the mission area, based on the risk ratings assigned to the mission area by the Council Secretariat;

(iv) ensuring that all agreed recommendations made following regular security assessments are implemented and providing the SG/HR, the Council and the Commission with written reports on their implementation and on other security issues within the framework of the mid-term and mandate implementation reports;

([1]) OJ L 101, 11.4.2001, p. 1. Decision as last amended by Decision 2005/952/EC (OJ L 346, 29.12.2005, p. 18).

L 35/38          EN          Official Journal of the European Union          8.2.2007

(v) ensuring, as necessary and within his responsibilities as part of the chain of command, that a coherent approach is taken with regard to the security of personnel across all EU elements present in a crisis management operation or operations in his geographical area of responsibility.

### Article 9

**Reporting**

As a rule, the EUSR shall report in person to the SG/HR and to the PSC and may report also to the relevant working group. Regular written reports shall be circulated to the SG/HR, the Council and the Commission. On the recommendation of the SG/HR and the PSC, the EUSR may report to the Council.

### Article 10

**Coordination**

1.   To ensure the consistency of the external action of the European Union, the activities of the EUSR shall be coordinated with those of the SG/HR, the Presidency and the Commission. The EUSR shall provide Member States' missions and Commission delegations with regular briefings. In the field, close liaison shall be maintained with the Presidency, the Commission and Heads of Mission who shall make best efforts to assist the EUSR in the implementation of the mandate. The EUSR shall also liaise with other international and regional actors in the field.

2.   In support of EU crisis management operations, the EUSR, with other EU actors present in the field, shall improve the dissemination and sharing of information by EU actors in theatre with a view to achieving a high degree of common situation awareness and assessment.

### Article 11

**Review**

The implementation of this Joint Action and its consistency with other contributions from the European Union to the region shall be kept under regular review. The EUSR shall present the SG/HR, the Council and the Commission with a comprehensive mandate implementation report by mid May 2007.

### Article 12

**Entry into force**

This Joint Action shall enter into force on the day of its adoption.

### Article 13

**Publication**

This Joint Action shall be published in the *Official Journal of the European Union*.

Done at Brussels, 7 February 2007.

*For the Council*
*The President*
F.-W. STEINMEIER

# EXHIBIT B

Bosanski  Hrvatski  Српски

General Information | OHR Mission Implementation Plan | Key Events since Dayton | Points of Contact |
All HR's and Deputy HR's | Photo Album | In Memoriam |

- Home
- » About OHR
- » Press & Public Info
- » Decisions
- » Archive
- » International Community in BiH
- » BiH in Focus

## High Representative

**Miroslav Lajčák**

July 2007 - present

**Christian Schwarz-Schilling**
Former HR
January 2006 - July 2007

your e-mail address

**Paddy Ashdown**
Former HR
May 2002 - January 2006

**Wolfgang Petritsch**
Former HR
August 1999 - May 2002

advanced search

**Carlos Westendorp**
Former HR
June 1997 - July 1999

**Carl Bildt**
Former HR
December 1995 - June 1997

## Principal Deputy High Representative

**Raffi Gregorian**

January 2007 - present

**Lawrence Butler**
Former PDHR
March 2005 - January 2007

**Donald S. Hays**
Former PDHR
July 2001 - March 2005

**Ralph Johnson**
Former PDHR
July 1999 - July 2001

**Jacques Paul Klein**
Former PDHR
July 1997 - July 1999

**Michael Steiner**
Former PDHR
January 1996 - July 1997

## Senior Deputy High Representative

**Peter Bas-Backer**
Former SDHR
February 2006 - July 2007

**Martin Ney**
Former SDHR
June 2005 - February 2006

**Werner Wnendt**
Former SDHR
August 2003 - May 2005

**Bernard Fassier**
Former SDHR
August 2002 - December 2004

**Gerhard Enver
Schrömbgens**
Former SDHR
July 2002 - August 2003

**Mattias Sonn**
Former SDHR
October 2000 - July 2002

**Matei Hoffmann**
Former SDHR
October 1999 - October 2000

**Hanns H. Schumacher**
Former SDHR
November 1997 - July 1999

**Gerd Wagner**
Former SDHR
July 1997 - Sept 1997

| Web Page Manager | Related Sites | Abbreviations | Sitemap |

# EXHIBIT C



General Information | OHR Mission Implementation Plan | Key Events since Dayton | Points of Contact | All HR's and Deputy HR's | Photo Album | In Memoriam |

Bosanski  Hrvatski  Српски

- Home
- About OHR
- Press & Public Info
- Decisions
- Archive
- International Community in BiH
- BiH in Focus

- General Information
- The Mandate of the OHR
- OHR Mission Implementation Plan
- OHR Organisational Chart
- OHR Offices and Departments
- Status, Staff and Funding of the OHR
- The Peace Implementation Council and its Steering Board
- The Board of Principals

your e-mail address

advanced search

## General Information

The Office of the High Representative (OHR) is the chief civilian peace implementation agency in Bosnia and Herzegovina. The 1995 Dayton Peace Agreement designated the High Representative to oversee the implementation of the civilian aspects of the Peace Agreement on behalf of the international community. He is also tasked with co-ordinating the activities of the civilian organisations and agencies operating in the Bosnia and Herzegovina.

The internationally brokered Dayton Peace Agreement was negotiated by representatives of the parties involved in the 1992-1995 war in Bosnia and Herzegovina, including the neighbouring Republic of Croatia and the Federal Republic of Yugoslavia, at US-led talks in Dayton, Ohio, in November 1995. On November 21, the parties successfully concluded the negotiations, and on December 14, they signed the Dayton Peace Agreement in Paris. The Agreement is formally referred to as the General Framework Agreement for Peace (GFAP).

The Peace Agreement established Bosnia and Herzegovina as a state comprising two Entities, each with a high degree of autonomy: the Republika Srpska (RS) and the Federation (FBiH). The Agreement includes the State Constitution (Annex 4) and other provisions designed to build a peaceful, stable country.

The mandate of the High Representative is set out in Annex 10. It declares the High Representative the final authority in theatre to interpret the agreement on the civilian implementation of the peace settlement. The Peace Implementation Council (PIC), a group of 55 countries and international organisations that sponsor and direct the peace implementation process, has subsequently elaborated on his mandate. The High Representative has no authority over the NATO-led military Stabilisation Force (SFOR).

The Steering Board of the PIC nominates the High Representative. The United Nations Security Council, which approved the Dayton Peace Agreement and the deployment of international troops in Bosnia and Herzegovina, then endorses the nomination.

The current High Representative is Miroslav Lajcák, he is the sixth High Representative of the International Community in Bosnia and Herzegovina. The first High Representative of the International Community in Bosnia and Herzegovina was the former Prime Minister of Sweden and the European Union's Special Negotiator at the end of the war in Bosnia and Herzegovina, Carl Bildt (December 1995 - June 1997). He was succeeded by the former Spanish Secretary of State for European Affairs and Minister of Foreign Affairs, Carlos Westendorp (June 1997 - July 1999). Carlos Westendorp was succeeded by the former EU Chief Negotiator at the Kosovo peace talks in Rambouillet, Wolfgang Petritsch (August 1999 - May 2002).Wolfgang Petritsch

was succeeded by the former Leader of the UK's Liberal Democrat Party, Paddy Ashdown (27 May 2002 - 31 January 2006). Christian Schwarz-Schilling (01 February 2006 - 31 June 2007) succeeded Paddy Ashdown.



Ambassador Miroslav Lajčák is a Slovak diplomat who was Director-General for Political Affairs in the Slovak Ministry of Foreign Affairs before becoming High Representative and EU Special Representative.

He has extensive experience in Southeastern Europe where, before his current appointment, he was best known for his role as mediator and personal representative of the EU High Representative for the Common Foreign and Security Policy, Javier Solana, in Montenegro in 2006. In this capacity, he oversaw the Montenegrin referendum.

Between 2001 and 2005, Ambassador Lajčák was based in Belgrade as Slovakia's Ambassador to the Federal Republic of Yugoslavia (later Serbia and Montenegro), Albania and the former Yugoslav Republic of Macedonia.

From 1998 to 2001, he was chef de cabinet of Slovakia's then Foreign Minister, Eduard Kukan. And between 1999 and 2001, concurrently, he was Special Assistant to Minister Kukan in his capacity as Special Envoy of the UN Secretary General for the Balkans.

Ambassador Lajčák was Slovakia's Ambassador in Japan between 1994 and 1998. And between 1993 and 1994, he was chef de cabinet of Slovakia's then Foreign Minister and later Prime Minister, Jozef Moravčík.

Between 1991 and 1993, Ambassador Lajčák was posted to Moscow where he worked initially in the Embassy of Czechoslovakia and then, from 1 January 1993, in the Embassy of Slovakia after the peaceful split of Czechoslovakia.

Ambassador Lajčák joined Czechoslovakia's Foreign Ministry in 1988.

Ambassador Lajčák is a law graduate from the Commenius University in Bratislava. He studied international relations at the State Institute of International Relations in Moscow and is also a graduate of the George C. Marshall European Center for Security Studies, Garmisch-Partenkirchen, Germany.

Ambassador Lajčák is fluent in Bosnian-Croatian-Serbian, Bulgarian, English, German and Russian.

Ambassador Lajčák is married with two daughters. He was born on 20 March 1963 in Poprad, Slovakia.



Prior to his appointment as Principal Deputy High Representative and Brcko Supervisor, Dr Raffi Gregorian , was the senior civilian in NATO Headquarters Sarajevo (NHQSa) responsible for defence reform and served as Political Advisor to the NATO Commander.

In 2005 he served as the NATO Co-Chairman of the Defence Reform Commission ( DRC ) of Bosnia and Herzegovina (BiH), a position to which he was appointed by High Representative Lord Paddy Ashdown in December 2004. In just six months the DRC developed and agreed on the blueprint for a NATO-compatible single military force, with all enabling legislation at BiH and entity levels being passed in the subsequent five months.

Prior to his service at NHQSa, Dr Gregorian directed the BiH section in the United States Department of State from November 2001 to December 2004. His extensive Balkans-related experience includes three years as Senior Adviser and Chief of Staff in the Office of the Special Adviser to the President and Secretary of State for Kosovo and Dayton Implementation and as acting director of the Kosovo Implementation office in 2001.

Prior to joining the State Department in 1999, Dr Gregorian was a Department of Defence senior adviser on the Interagency Task Force for Military Stabilization in the Balkans, where he worked on the Federation Army Train & Equip program. From 1990-1998 he worked for Science Applications International Corporation as a Senior Analyst on peace support operations and counterinsurgency training, doctrine, policy, strategy and resources, as well as arms control counterintelligence issues. From 1986 to 1988 he was an historian at the U.S. Army Centre for Military History in Washington , D.C. , where he worked on the Army's official history of the Vietnam War.

Dr. Gregorian earned his Ph.D. in International Relations and Strategic Studies from the Johns Hopkins University School of Advanced International Studies in 1998, an M.A. in War Studies from King's College, University of London in 1989, and a B.A. with Honours from the University of Pennsylvania in 1986. He is a commissioned officer in the U.S. Naval Reserve and has served on active duty in Kosovo, Bosnia and Herzegovina, and on the Joint Staff in the Pentagon. He is the author of numerous scholarly articles and government publications, has contributed chapters to various books, and is the author of The British Army, the Ghurkhas, and Cold War Strategy in the Far East 1947-54 ( London : Palgrave/Macmillan, 2002).

Dr Raffi Gregorian has received two individual and two group Superior Honour Awards from the State Department, Joint Service Commendation Medals for his military service in Kosovo and in BiH, and a Joint Service Achievement Medal for service on the Joint Staff. He is a member of the United States Senior Executive Service and is a resident of the Commonwealth of Virginia.

## The Mandate of the OHR

Article II of Annex 10 of the Dayton Peace Agreement directs the High Representative to:

- Monitor the implementation of the peace settlement;
- Maintain close contact with the parties to the Agreement, to promote their full compliance with all civilian aspects of the Agreement;
- Co-ordinate the activities of the civilian organisations and agencies in Bosnia and

Herzegovina to ensure the efficient implementation of the civilian aspects of the peace settlement. The High Representative shall respect their autonomy within their spheres of operation while as necessary giving general guidance to them about the impact of their activities on the implementation of the peace settlement;

- Facilitate, as the High Representative judges necessary, the resolution of any difficulties arising in connection with civilian implementation;
- Participate in meetings of donor organisations;
- Report periodically on progress to the United Nations, European Union, United States, Russian Federation and other interested governments, parties and organisations;
- Provide guidance to the United Nations International Police Task Force (IPTF).

The OHR's involvement in Bosnia and Herzegovina's political life has changed and developed according to its mandate and focus in line with the requirements of the PIC. At the beginning of the peace process, the High Representative chaired a number of joint bodies that brought together representatives of the war time parties and took care of the initial requirements of the peace process. The State and Entity Institutions envisaged in the Constitution were set up after the first post-Dayton elections in September 1996, but it took some time before they started meeting regularly. Now, one of the OHR's key tasks is to ensure that the institutions function effectively and in a responsible manner.

In the economic field, the reconstruction phase, financed under a $5.1 billion World Bank/European Commission program, has been largely completed; the emphasis now is on revitalising the economy through the market reforms that will create jobs and stabilise the BiH Economy. The OHR has also focussed on the establishment of the rule of law, which is the starting point, an essential requirement, for progress in all the other areas of reform.

Among the most important milestones in the peace implementation process was the PIC Conference in Bonn in December 1997. Elaborating on Annex 10 of the Dayton Peace Agreement, the PIC requested the High Representative to remove from office public officials who violate legal commitments and the Dayton Peace Agreement, and to impose laws as he sees fit if Bosnia and Herzegovina's legislative bodies fail to do so.

Nonetheless, the governing principle of the OHR's engagement in Bosnia and Herzegovina is the concept of domestic responsibility. This concept calls on the officials and citizens of Bosnia and Herzegovina to take responsibility for the peace process and the problems that their country faces.

In February 2002, the European Union's General Affairs Council (GAC) appointed the High Representative the EU's Special Representative in BiH. The High Representative maintains an overview of the whole range of activities in the field of the Rule of Law, including the EUPM, the IPTF follow on mission. In this context, the High Representative provides advice to the EU Secretary General/High Representative and the Commission itself.

## OHR Mission Implementation Plan

**The Mission Implementation Plan (MIP)** sets out the core tasks remaining for OHR. Introduced in 2003 to focus OHR efforts on outstanding priorities and is updated annually to reflect the progress made by the authorities in BiH.

The 2006/7 MIP was approved by the Peace Implementation Council (PIC) on March 15, 2006 in Vienna. Consistent with efforts to transfer responsibility for running the country to the BiH authorities, no new reforms have been added to the OHR MIP for 2006/7. However, the MIP has been and remains an important tool for OHR to assess the pace and effectiveness of progress in peace implementation.

A great deal of progress has been made in BiH since the MIP was first introduced. In the past year alone, BiH began its negotiations with the European Commission for a Stabilisation and Association Agreement (SAA) as a result of meeting the requirements of the EU's Feasibility Study including the introduction of VAT, legislation for a Public Broadcasting System, and

acceptance of European standards for policing, among others. OHR's MIP contains items on all these Feasibility Study requirements. The establishment of a State-level Ministry of Defence and BiH armed forces is also of great significance and represents a major step towards BiH's eventual membership of PfP/NATO.

In the next 12 months, presumably its last, OHR's task is to help BiH build upon the progress achieved thus far. It will increasingly be for BiH, its institutions, politicians, and citizens to take the lead.

The 2006 MIP is integrated as the first point into a wider work plan for the tenure of the High Representative, which consists of five areas:

1. **The MIP**;

2. **Support for SAp**: OHR will continue to provide support to the Stabilisation and Association process, as agreed with the European Commission. Many of the critical items are covered in the MIP, but some are not, such as banking supervision reform, regulation of state property, and the State Law on Higher Education;

3. **Coordinating the International Community and Ongoing Assistance**: The OHR has a key role to play as coordinator of civilian peace implementation. The IC is committed to working together to assist BiH in its efforts to progress towards Euro-Atlantic integration. This also refers to a number of areas in which legislation has been enacted and MIP items fulfilled, but where on-going assistance to the BiH authorities remains crucial, e.g. defence reform and refugee returns;

4. **Preparing for OHR/EUSR transition**;

5. **Promoting BiH**, in particular its economic potential.


**2006-2007 Mission Implementation Plan**

Thirty-one items from the 2005 MIP remain to be completed. These cover a wide range of issues: intelligence reform; police restructuring; key economic reforms including internal debt settlement, direct tax legislation and a state law on obligations; municipal reform; public administration reform; Brcko District and public broadcasting reform. The document that follows lists all of these, grouped according to three Core Tasks. It also lists the achievements of OHR in the past four years.

While no new issues have been added to the 2006-2007 MIP, a number of changes have been made to reflect progress made and/or different circumstances since the document was first drafted. The most notable proposed change to the MIP has been a revision of the items covering police restructuring, an ongoing process that will certainly extend through next year and into 2008, beyond the lifespan of OHR. It will be one of the most important issues for the EUSR Office, and others to tackle.

BiH has made great strides since the war, and is nearing the point where the international community can comfortably step back and change the way it assists the country to achieve full Euro-Atlantic integration.

Office of the High Representative
Sarajevo, Bosnia and Herzegovina
May 2006

## OHR Organisational Chart

## OHR/EUSR Organizational Chart 2008/2009



### OHR Offices and Departments

The OHR's headquarters are in Sarajevo. The High Representative, his Principal Deputy and their cabinets are all based here. In addition, the Sarajevo Office accommodates the Political, Economic, Legal, Rule of Law, Resources Departments/Units and the Press Office.

- Political Department
- Economic Transition Unit
- Public Security Sector Reform Unit
- Legal Department
- Resources Department
- Press Office

The OHR has 2 Regional offices, in Banja Luka and Mostar, Brcko Final Award Office and 1 field office in Bratunac. A representation office in Brussels liases with international organisations outside Bosnia and Herzegovina.

- Banja Luka OHR Office
- Mostar OHR Office
- Brcko OHR Office

### Status, Staff and Funding of the OHR

Under Annex 10 of the GFAP, the OHR has the status of a diplomatic mission to Bosnia and Herzegovina. It is made up of diplomats seconded by the governments of the PIC countries, international experts hired directly, and national staff from Bosnia and Herzegovina. Since January 2008, the OHR employes 38 internationals (12 seconded staff and 25 contractors) and 200.5 national contractors.

On 12 September 2002, the OHR announced an increase in the number of BiH citizens in its staff, including its senior staff. As of this date all advertised vacancies at the OHR are open to BiH citizens. Furthermore, where a BiH citizen and a foreign citizen applying for the same post are considered to be of equal merit, qualification and experience, the national applicant will be preferred.

This policy reflects the International Community's effort to streamline its operations and normalise the ratio of foreign and national staff in international organisations.

The OHR is funded by the PIC. Its budget in 2007/2008 is 10,7 million Euros. Contributions to the OHR budget break down as follows: EU 53 %, USA 22%, Japan 10%, Russia 4%, Canada 3.03 %, OIC 2.5%, others: 5.47%.

## The Peace Implementation Council and its Steering Board

Following the successful negotiation of the Dayton Peace Agreement in November 1995, a Peace Implementation Conference was held in London on December 8-9, 1995, to mobilise international support for the Agreement. The meeting resulted in the establishment of the Peace Implementation Council (PIC).

The PIC comprises 55 countries and agencies that support the peace process in many different ways - by assisting it financially, providing troops for SFOR, or directly running operations in Bosnia and Herzegovina. There is also a fluctuating number of observers.

Since the London Conference, the PIC has come together at the ministerial level another five times to review progress and define the goals of peace implementation for the coming period: in June 1996 in Florence; in December 1996 for a second time in London; in December 1997 in Bonn; in December 1998 in Madrid, and in May 2000 in Brussels.

PIC Members and Participants: Albania, Austria, Belgium, Bosnia and Herzegovina, Bulgaria, Canada, China (resigned in May 2000), Croatia, Czech Republic, Denmark, Egypt, Federal Republic of Yugoslavia, Finland, Former Yugoslav Republic of Macedonia, France, Germany, Greece, Hungary, Ireland, Italy, Japan, Jordan, Luxembourg, Malaysia, Morocco, Netherlands, Norway, Oman, Pakistan, Poland, Portugal, Romania, Russian Federation, Saudi Arabia, Slovak Republic, Slovenia, Spain, Sweden, Switzerland, Turkey, Ukraine, United Kingdom and United States of America; the High Representative, Brcko Arbitration Panel (dissolved in 1999 after the Final Award was issued), Council of Europe, European Bank for Reconstruction and Development (EBRD), European Commission, International Committee of the Red Cross (ICRC), International Criminal Tribunal for the former Yugoslavia (ICTY), International Monetary Fund (IMF), North Atlantic Treaty Organisation (NATO), Organisation for Security and Co-operation in Europe (OSCE), United Nations (UN), UN High Commissioner for Human Rights (UNHCHR), UN High Commissioner for Refugees (UNHCR), UN Transitional Administration of Eastern Slavonia (UNTAES; disbanded in January 1998) and the World Bank.

PIC Observers to date: Australia, Central Bank of Bosnia and Herzegovina, European Investment Bank (EIB), Estonia, Holy See, Human Rights Ombudsperson in Bosnia and Herzegovina, Iceland, International Federation of Red Cross and Red Crescent Societies (IFRC), International Mediator for Bosnia and Herzegovina, International Organisation for Migration (IOM), Latvia, Lithuania, New Zealand, Liechtenstein, South Africa and the Special Co-ordinator of the Stability Pact for South Eastern Europe.

The London Peace Implementation Conference also established the Steering Board of the PIC to work under the chairmanship of the High Representative as the executive arm of the PIC.

The Steering Board members are Canada, France, Germany, Italy, Japan, Russia, United Kingdom, United States, the Presidency of the European Union, the European Commission, and the Organisation of the Islamic Conference (OIC), which is represented by Turkey.

The Steering Board provides the High Representative with political guidance. In Sarajevo, the High Representative chairs weekly meetings of the Ambassadors to BiH of the Steering Board members. In addition, the Steering Board meets at the level of political directors every three months.

## The Board of Principals

Following an extensive study carried out by the Office of the High Representative at the request of the Peace Implementation Council the co-ordinating structure of the International Community in Bosnia and Herzegovina was "streamlined" in 2002 to eliminate overlapping effort and responsibilities and increase effectiveness. As part of this process a Board of Principals was established, under the chairmanship of the High Representative, to serve as the main co-ordinating body for International Community activity in BiH. The Board of Principals meets once a week in Sarajevo.

It is attended by: OHR, SFOR, OSCE, EUPM, UNHCR, European Commission, the World Bank, the IMF and the UNDP.

Web Page Manager    Related Sites    Abbreviations    Sitemap

# EXHIBIT D



Bosanski  Hrvatski  Српски

← Home
» About OHR
» Press & Public Info
» Decisions
» Archive
» International Community in BiH
» BiH in Focus

your e-mail address

advanced search

# The General Framework Agreement: Annex 10

14/12/1995

🖨 print document  |  ⬇ download document  |  ✉ send by e-mail

## ANNEX 10

# Agreement on Civilian Implementation

The Republic of Bosnia and Herzegovina, the Republic of Croatia, the Federal Republic of Yugoslavia, the Federation of Bosnia and Herzegovina, and the Republika Srpska (the "Parties") have agreed as follows:

## Article I: High Representative

1. The Parties agree that the implementation of the civilian aspects of the peace settlement will entail a wide range of activities including continuation of the humanitarian aid effort for as long as necessary; rehabilitation of infrastructure and economic reconstruction; the establishment of political and constitutional institutions in Bosnia and Herzegovina; promotion of respect for human rights and the return of displaced persons and refugees; and the holding of free and fair elections according to the timetable in Annex 3 to the General Framework Agreement. A considerable number of international organizations and agencies will be called upon to assist.
2. In view of the complexities facing them, the Parties request the designation of a High Representative, to be appointed consistent with relevant United Nations Security Council resolutions, to facilitate the Parties' own efforts and to mobilize and, as appropriate, coordinate the activities of the organizations and agencies involved in the civilian aspects of the peace settlement by carrying out, as entrusted by a U.N. Security Council resolution, the tasks set out below.

## Article II: Mandate and Methods of Coordination and Liaison

1. The High Representative shall:
   a. Monitor the implementation of the peace settlement;
   b. Maintain close contact with the Parties to promote their full compliance with all civilian aspects of the peace settlement and a high level of cooperation between them and the organizations and agencies participating in those aspects.
   c. Coordinate the activities of the civilian organizations and agencies in Bosnia and Herzegovina to ensure the efficient implementation of the civilian aspects of the peace settlement. The High Representative shall respect their autonomy within their spheres of operation while as necessary giving general guidance to them about the impact of their activities on the implementation of the peace settlement. The civilian organizations and agencies are requested to assist the High Representative in the execution of his or her responsibilities by providing all information relevant to their operations in Bosnia- Herzegovina.
   d. Facilitate, as the High Representative judges necessary, the resolution of any difficulties arising in connection with civilian implementation.
   e. Participate in meetings of donor organizations, particularly on issues of rehabilitation and reconstruction.

    f. Report periodically on progress in implementation of the peace agreement concerning the tasks set forth in this Agreement to the United Nations, European Union, United States, Russian Federation, and other interested governments, parties, and organizations.

    g. Provide guidance to, and receive reports from, the Commissioner of the International Police Task Force established in Annex 11 to the General Framework Agreement.

2. In pursuit of his or her mandate, the High Representative shall convene and chair a commission (the "Joint Civilian Commission") in Bosnia and Herzegovina. It will comprise senior political representatives of the Parties, the IFOR Commander or his representative, and representatives of those civilian organizations and agencies the High Representative deems necessary.

3. The High Representative shall, as necessary, establish subordinate Joint Civilian Commissions at local levels in Bosnia and Herzegovina.

4. A Joint Consultative Committee will meet from time to time or as agreed between the High Representative and the IFOR Commander.

5. The High Representative or his designated representative shall remain in close contact with the IFOR Commander or his designated representatives and establish appropriate liaison arrangements with the IFOR Commander to facilitate the discharge of their respective responsibilities.

6. The High Representative shall exchange information and maintain liaison on a regular basis with IFOR, as agreed with the IFOR Commander, and through the commissions described in this Article.

7. The High Representative shall attend or be represented at meetings of the Joint Military Commission and offer advice particularly on matters of a political-military nature. Representatives of the High Representative will also attend subordinate commissions of the Joint Military Commission as set out in Article VIII(8) of Annex 1A to the General Framework Agreement.

8. The High Representative may also establish other civilian commissions within or outside Bosnia and Herzegovina to facilitate the execution of his or her mandate.

9. The High Representative shall have no authority over the IFOR and shall not in any way interfere in the conduct of military operations or the IFOR chain of command.

## Article III: Staffing

1. The High Representative shall appoint staff, as he or she deems necessary, to provide assistance in carrying out the tasks herein.

2. The Parties shall facilitate the operations of the High Representative in Bosnia and Herzegovina, including by the provision of appropriate assistance as requested with regard to transportation, subsistence, accommodations, communications, and other facilities at rates equivalent to those provided for the IFOR under applicable agreements.

3. The High Representative shall enjoy, under the laws of Bosnia and Herzegovina, such legal capacity as may be necessary for the exercise of his or her functions, including the capacity to contract and to acquire and dispose of real and personal property.

4. Privileges and immunities shall be accorded as follows:

    a. The Parties shall accord the office of the High Representative and its premises, archives, and other property the same privileges and immunities as are enjoyed by a diplomatic mission and its premises, archives, and other property under the Vienna Convention on Diplomatic Relations.

    b. The Parties shall accord the High Representative and professional members of his or her staff and their families the same privileges and immunities as are enjoyed by diplomatic agents and their families under the Vienna Convention on Diplomatic Relations.

    c. The Parties shall accord other members of the High Representative staff and their families the same privileges and immunities as are enjoyed by members of the administrative and technical staff and their families under the Vienna Convention on Diplomatic Relations.

## Article IV: Cooperation

The Parties shall fully cooperate with the High Representative and his or her staff, as well as with the international organizations and agencies as provided for in Article IX of the General Framework Agreement.

## Article V: Final Authority to Interpret

The High Representative is the final authority in theater regarding interpretation of this Agreement on the civilian implementation of the peace settlement.

## Article VI: Entry into Force

This Agreement shall enter into force upon signature.

For the Republic of Bosnia and Herzegovina

For the Republic of Croatia

For the Federal Republic of Yugoslavia

For the Federation of Bosnia and Herzegovina

For the Republika Srpska

**Office of the High Representative**

Web Page Manager    Related Sites    Abbreviations    Sitemap

# EXHIBIT E

**UNITED
NATIONS**

**S**



# Security Council

Distr.
GENERAL

S/RES/1031 (1995)
15 December 1995

RESOLUTION 1031 (1995)

Adopted by the Security Council at its 3607th meeting,
on 15 December 1995

The Security Council,

Recalling all its previous relevant resolutions concerning the conflicts in the former Yugoslavia,

Reaffirming its commitment to a negotiated political settlement of the conflicts in the former Yugoslavia, preserving the territorial integrity of all States there within their internationally recognized borders,

Welcoming the signing on 14 December 1995 at the Paris Peace Conference of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex) by the Republic of Bosnia and Herzegovina, the Republic of Croatia and the Federal Republic of Yugoslavia and the other parties thereto,

Welcoming also the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex),

Welcoming further the conclusions of the Peace Implementation Conference held in London on 8 and 9 December 1995 (the London Conference) (S/1995/1029), and in particular its decision to establish a Peace Implementation Council and its Steering Board as referred to in those conclusions,

Paying tribute to the International Conference on the Former Yugoslavia (ICFY) for its efforts aimed at achieving a peace settlement and taking note of the decision of the London Conference that the Peace Implementation Council will subsume the ICFY,

Having considered the report of the Secretary-General of 13 December 1995 (S/1995/1031),

Determining that the situation in the region continues to constitute a threat to international peace and security,

95-40526 (E)

/...

S/RES/1031 (1995)
Page 2

<u>Determined</u> to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

<u>Acting</u> under Chapter VII of the Charter of the United Nations,

I

1.    <u>Welcomes and supports</u> the Peace Agreement and <u>calls upon</u> the parties to fulfil in good faith the commitments entered into in that Agreement;

2.    <u>Expresses</u> its intention to keep the implementation of the Peace Agreement under review;

3.    <u>Welcomes</u> the progress made towards mutual recognition among the successor States to the former Socialist Federal Republic of Yugoslavia, within their internationally recognized borders;

4.    <u>Reaffirms</u> its resolutions concerning compliance with international humanitarian law in the former Yugoslavia, <u>reaffirms</u> also that all States shall cooperate fully with the International Tribunal for the Former Yugoslavia and its organs in accordance with the provisions of resolution 827 (1993) of 25 May 1993 and the Statute of the International Tribunal, and shall comply with requests for assistance or orders issued by a Trial Chamber under article 29 of the Statute, and <u>calls upon</u> them to allow the establishment of offices of the Tribunal;

5.    <u>Recognizes</u> that the parties shall cooperate fully with all entities involved in implementation of the peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, and that the parties have in particular authorized the multinational force referred to in paragraph 14 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

6.    <u>Welcomes</u> the agreement by the Organization for Security and Cooperation in Europe (OSCE) to adopt and put in place a programme of elections for Bosnia and Herzegovina, at the request of the parties to Annex 3 of the Peace Agreement;

7.    <u>Welcomes also</u> the parties' commitment, as specified in the Peace Agreement, to securing to all persons within their jurisdiction the highest level of internationally recognized human rights and fundamental freedoms, stresses that compliance with this commitment is of vital importance in achieving a lasting peace, and <u>welcomes</u> the invitation by the parties to the United Nations Commission on Human Rights, the OSCE, the United Nations High Commissioner for Human Rights and other intergovernmental or regional human rights missions or organizations to monitor closely the human rights situation in Bosnia and Herzegovina;

8.    <u>Welcomes further</u> the parties' commitment to the right of all refugees and displaced persons freely to return to their homes of origin in safety, <u>notes</u> the leading humanitarian role which has been given by the Peace Agreement to the

/...

S/RES/1031 (1995)
Page 3

United Nations High Commissioner for Refugees, in coordination with other agencies involved and under the authority of the Secretary-General, in assisting with the repatriation and relief of refugees and displaced persons, and <u>stresses</u> the importance of repatriation being phased, gradual and orderly;

9.    <u>Emphasizes</u> the importance of the creation of conditions conducive to the reconstruction and development of Bosnia and Herzegovina and <u>encourages</u> Member States to provide assistance for the programme of reconstruction in that country;

10.   <u>Underlines</u> the relationship, as described in the conclusions of the London Conference, between the fulfilment by the parties of their commitments in the Peace Agreement and the readiness of the international community to commit financial resources for reconstruction and development;

11.   <u>Welcomes</u> the agreement of the parties to Annex 1-B of the Peace Agreement that establishment of progressive measures for regional stability and arms control is essential to creating a stable peace in the region, <u>emphasizes</u> the importance of all Member States supporting their efforts to this end, and <u>supports</u> the OSCE's commitment to assist the parties with the negotiation and implementation of such measures;

II

12.   <u>Welcomes</u> the willingness of the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to assist the parties to the Peace Agreement by deploying a multinational implementation force;

13.   <u>Notes</u> the invitation of the parties to the international community to send to the region for a period of approximately one year a multinational implementation force to assist in implementation of the territorial and other militarily related provisions of Annex 1-A of the Peace Agreement;

14.   <u>Authorizes</u> the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to establish a multinational implementation force (IFOR) under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement;

15.   <u>Authorizes</u> the Member States acting under paragraph 14 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, <u>stresses</u> that the parties shall be held equally responsible for compliance with that Annex, and shall be equally subject to such enforcement action by IFOR as may be necessary to ensure implementation of that Annex and the protection of IFOR, and <u>takes note</u> that the parties have consented to IFOR's taking such measures;

16.   <u>Authorizes</u> the Member States acting under paragraph 14 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures, to be established by the Commander of IFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

/...

S/RES/1031 (1995)
Page 4

17. <u>Authorizes</u> Member States to take all necessary measures, at the request of IFOR, either in defence of IFOR or to assist the force in carrying out its mission, and <u>recognizes</u> the right of the force to take all necessary measures to defend itself from attack or threat of attack;

18. <u>Demands</u> that the parties respect the security and freedom of movement of IFOR and other international personnel;

19. <u>Decides</u> that, with effect from the day on which the Secretary-General reports to the Council that the transfer of authority from the United Nations Protection Force (UNPROFOR) to IFOR has taken place, the authority to take certain measures conferred upon States by resolutions 770 (1992) of 13 August 1992, 781 (1992) of 9 October 1992, 816 (1993) of 31 March 1993, 836 (1993) of 4 June 1993, 844 (1993) of 18 June 1993 and 958 (1994) of 19 November 1994 shall be terminated, and that the provisions of resolution 824 (1993) of 6 May 1993 and subsequent resolutions regarding safe areas shall also be terminated from the same date;

20. <u>Requests</u> the Government of Bosnia and Herzegovina to cooperate with the IFOR Commander to ensure the effective management of the airports in Bosnia and Herzegovina, in the light of the responsibilities conferred on IFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

21. <u>Decides</u>, with a view to terminating the authorization granted in paragraphs 14 to 17 above one year after the transfer of authority from UNPROFOR to IFOR, to review by that date and to take a decision whether that authorization should continue, based upon the recommendations from the States participating in IFOR and from the High Representative through the Secretary-General;

22. <u>Decides also</u> that the embargo imposed by resolution 713 (1991) of 25 September 1991 shall not apply to weapons and military equipment destined for the sole use of the Member States acting under paragraph 14 above, or of international police forces;

23. <u>Invites</u> all States, in particular those in the region, to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 14 above;

24. <u>Welcomes</u> the conclusion of the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and <u>demands</u> that the parties comply fully with those agreements;

25. <u>Requests</u> the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to report to the Council, through the appropriate channels and at least at monthly intervals, the first such report be made not later than 10 days following the adoption of this resolution;

26. <u>Endorses</u> the establishment of a High Representative, following the request of the parties, who, in accordance with Annex 10 on the civilian implementation of the Peace Agreement, will monitor the implementation of the

/...

S/RES/1031 (1995)
Page 5

Peace Agreement and mobilize and, as appropriate, give guidance to, and coordinate the activities of, the civilian organizations and agencies involved, and agrees the designation of Mr. Carl Bildt as High Representative;

27. Confirms that the High Representative is the final authority in theatre regarding interpretation of Annex 10 on the civilian implementation of the Peace Agreement;

28. Decides that all States concerned, and in particular those where the High Representative establishes offices, shall ensure that the High Representative enjoys such legal capacity as may be necessary for the exercise of his functions, including the capacity to contract and to acquire and dispose of real and personal property;

29. Notes that close cooperation between IFOR, the High Representative and the agencies will be vital to ensure successful implementation;

30. Affirms the need for the implementation of the Peace Agreement in its entirety and, in this context, stresses the importance it attaches to the urgent implementation of Annex 11 of the Peace Agreement, decides to act expeditiously on the report of the Secretary-General recommending the establishment of a United Nations Civilian Police Force with the tasks set out in that Annex, together with a civilian office with the responsibilities described in the report of the Secretary-General, and further decides that in the interim civilian police, de-mining, civil affairs and other personnel that might be required to carry out the tasks described in that report shall continue in theatre, notwithstanding the provisions of paragraphs 33 and 34 below;

31. Stresses the need for early action in Sarajevo to create confidence between the communities and to this end requests the Secretary-General to ensure the early redeployment of elements of United Nations civilian police from the Republic of Croatia to Sarajevo;

32. Requests the Secretary-General to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the London Conference, on the implementation of the Peace Agreement;

III

33. Decides that the mandate of UNPROFOR shall terminate on the date on which the Secretary-General reports to the Council that the transfer of authority from UNPROFOR to IFOR has taken place;

34. Approves the arrangements set out in the report of the Secretary-General on the withdrawal of UNPROFOR and headquarters elements from the United Nations Peace Force (UNPF), including the arrangements for the command and control of UNPROFOR following the transfer of authority from it to IFOR;

35. Expresses its warmest appreciation to all UNPROFOR personnel, who have served the cause of peace in the former Yugoslavia, and pays tribute to those who have given their lives and those who have suffered serious injuries in that service;

/...

S/RES/1031 (1995)
Page 6

36. <u>Authorizes</u> the Member States acting under paragraph 14 above to use all necessary means to assist in the withdrawal of UNPROFOR;

37. <u>Calls upon</u> the parties to ensure the safety and security of UNPROFOR and <u>confirms</u> that UNPROFOR will continue to enjoy all existing privileges and immunities, including during the period of withdrawal;

38. <u>Requests</u> the Secretary-General to report to the Council when the withdrawal of UNPROFOR is complete;

IV

39. <u>Recognizes</u> the unique, extraordinary and complex character of the present situation in Bosnia and Herzegovina, requiring an exceptional response;

40. <u>Decides</u> to remain seized of the matter.

-----

# EXHIBIT F

**UNITED
NATIONS**

**S**



## Security Council

Distr.
GENERAL

S/RES/1174 (1998)
15 June 1998

---

RESOLUTION 1174 (1998)

<u>Adopted by the Security Council at its 3892nd meeting,
on 15 June 1998</u>

<u>The Security Council</u>,

<u>Recalling</u> all its previous relevant resolutions concerning the conflicts in
the former Yugoslavia, including resolutions 1031 (1995) of 15 December 1995,
1035 (1995) of 21 December 1995, 1088 (1996) of 12 December 1996, 1144 (1997) of
19 December 1997 and 1168 (1998) of 21 May 1998,

<u>Reaffirming</u> its commitment to the political settlement of the conflicts in
the former Yugoslavia, preserving the sovereignty and territorial integrity of
all States there within their internationally recognized borders,

<u>Underlining</u> its commitment to supporting implementation of the General
Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto
(collectively the Peace Agreement, S/1995/999, annex),

<u>Emphasizing</u> its appreciation to the High Representative, the Commander and
personnel of the multinational stabilization force (SFOR), the Special
Representative of the Secretary-General and the personnel of the United Nations
Mission in Bosnia and Herzegovina (UNMIBH) including the Commissioner and
personnel of the International Police Task Force (IPTF), and the personnel of
other international organizations and agencies in Bosnia and Herzegovina for
their contributions to the implementation of the Peace Agreement,

<u>Underlining</u> once again the important role for the Republic of Croatia and
the Federal Republic of Yugoslavia to play in the successful development of the
peace process in Bosnia and Herzegovina,

<u>Stressing</u> that a comprehensive and coordinated return of refugees and
displaced persons throughout the region is crucial to lasting peace,

<u>Taking note</u> of the declaration of the Peace Implementation Council Steering
Board in Luxembourg on 9 June 1998 (S/1998/498, annex) and the conclusions of
its previous meetings,

98-16758 (E)

/...

S/RES/1174 (1998)
Page 2

Having considered the report of the Secretary-General of 10 June 1998 (S/1998/491),

Noting the report of the High Representative of 9 April 1998 (S/1998/314),

Determining that the situation in the region continues to constitute a threat to international peace and security,

Determined to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

Acting under Chapter VII of the Charter of the United Nations,

I

1.  Reaffirms once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), calls upon the parties to comply strictly with their obligations under those Agreements, and expresses its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina under review;

2.  Reiterates that the primary responsibility for the further successful implementation of the peace process lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions and in facilitating returns of refugees and displaced persons;

3.  Reminds the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and underlines that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.  Emphasizes its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and reaffirms that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as

/...

elaborated by the Peace Implementation Council in Bonn on 9 and
10 December 1997;

    5.   Expresses its support for the declaration of the Luxembourg Peace
Implementation Council Steering Board;

    6.   Recognizes that the parties have authorized the multinational force
referred to in paragraph 10 below to take such actions as required, including
the use of necessary force, to ensure compliance with Annex 1-A of the Peace
Agreement;

    7.   Reaffirms its intention to keep the situation in Bosnia and
Herzegovina under close review, taking into account the reports submitted
pursuant to paragraphs 18 and 25 below, and any recommendations those reports
might include, and its readiness to consider the imposition of measures if any
party fails significantly to meet its obligations under the Peace Agreement;

II

    8.   Pays tribute to those Member States who participated in the
multinational stabilization force established in accordance with its resolution
1088 (1996) and welcomes their willingness to assist the parties to the Peace
Agreement by continuing to deploy a multinational stabilization force;

    9.   Notes the support of the parties to the Peace Agreement for the
continuation of SFOR set out in the declaration of the Luxembourg Peace
Implementation Council Steering Board;

    10.  Authorizes the Member States acting through or in cooperation with the
organization referred to in Annex 1-A of the Peace Agreement to continue for a
further planned period of 12 months the multinational stabilization force (SFOR)
as established in accordance with its resolution 1088 (1996) under unified
command and control in order to fulfil the role specified in Annex 1-A and
Annex 2 of the Peace Agreement and expresses its intention to review the
situation with a view to extending this authorization further as necessary in
the light of developments in the implementation of the Peace Agreement and the
situation in Bosnia and Herzegovina;

    11.  Authorizes the Member States acting under paragraph 10 above to take
all necessary measures to effect the implementation of and to ensure compliance
with Annex 1-A of the Peace Agreement, stresses that the parties shall continue
to be held equally responsible for compliance with that Annex and shall be
equally subject to such enforcement action by SFOR as may be necessary to ensure
implementation of that Annex and the protection of SFOR, and takes note that the
parties have consented to SFOR's taking such measures;

    12.  Authorizes Member States to take all necessary measures, at the
request of SFOR, either in defence of SFOR or to assist the force in carrying
out its mission, and recognizes the right of the force to take all necessary
measures to defend itself from attack or threat of attack;

/...

S/RES/1174 (1998)
Page 4

13. <u>Authorizes</u> the Member States acting under paragraph 10 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

14. <u>Requests</u> the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

15. <u>Demands</u> that the parties respect the security and freedom of movement of SFOR and other international personnel;

16. <u>Invites</u> all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 10 above;

17. <u>Recalls</u> all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and <u>reminds</u> the parties of their obligation to continue to comply therewith;

18. <u>Requests</u> the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

*   *   *

<u>Reaffirming</u> the legal basis in the Charter of the United Nations on which the IPTF was given its mandate in resolution 1035 (1995),

III

19. <u>Decides</u> to extend the mandate of UNMIBH, which includes the IPTF, for an additional period terminating on 21 June 1999, and also <u>decides</u> that the IPTF shall continue to be entrusted with the tasks set out in Annex 11 of the Peace Agreement, including the tasks referred to in the Conclusions of the London, Bonn and Luxembourg Conferences and agreed by the authorities in Bosnia and Herzegovina;

20. <u>Requests</u> the Secretary-General to keep the Council regularly informed on the work of the IPTF and its progress in assisting the restructuring of law enforcement agencies, and to report every three months on the implementation of the mandate of UNMIBH as a whole;

21. <u>Reiterates</u> that the successful implementation of the tasks of the IPTF rests on the quality, experience and professional skills of its personnel, and once again <u>urges</u> Member States, with the support of the Secretary-General, to ensure the provision of such qualified personnel;

/...

S/RES/1174 (1998)
Page 5

22.  <u>Reaffirms</u> the responsibility of the parties to cooperate fully with, and instruct their respective responsible officials and authorities to provide their full support to, the IPTF on all relevant matters;

23.  <u>Reiterates</u> its call upon all concerned to ensure the closest possible coordination between the High Representative, SFOR, UNMIBH and the relevant civilian organizations and agencies so as to ensure the successful implementation of the Peace Agreement and of the priority objectives of the civilian consolidation plan, as well as the security of IPTF personnel;

24.  <u>Urges</u> Member States, in response to demonstrable progress by the parties in restructuring their law enforcement institutions, to intensify their efforts to provide, on a voluntary-funded basis and in coordination with the IPTF, training, equipment and related assistance for local police forces in Bosnia and Herzegovina;

25.  <u>Also requests</u> the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

26.  <u>Decides</u> to remain seized of the matter.

-----

# EXHIBIT G



**UNITED
NATIONS**

**S**

**Security Council**

Distr.
GENERAL

S/RES/1247 (1999)
18 June 1999

---

RESOLUTION 1247 (1999)

<u>Adopted by the Security Council at its 4014th meeting,
on 18 June 1999</u>

<u>The Security Council</u>,

<u>Recalling</u> all its previous relevant resolutions concerning the conflicts in the former Yugoslavia, including resolutions 1031 (1995) of 15 December 1995, 1035 (1995) of 21 December 1995, 1088 (1996) of 12 December 1996, 1144 (1997) of 19 December 1997, 1168 (1998) of 21 May 1998, 1174 (1998) of 15 June 1998, and 1184 (1998) of 16 July 1998,

<u>Reaffirming</u> its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

<u>Underlining</u> its commitment to supporting implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex),

<u>Emphasizing</u> its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Special Representative of the Secretary-General and the personnel of the United Nations Mission in Bosnia and Herzegovina (UNMIBH), including the Commissioner and personnel of the International Police Task Force (IPTF), and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

<u>Noting</u> that the States in the region must play a constructive role in the successful development of the peace process in Bosnia and Herzegovina, and noting especially the obligations of the Republic of Croatia and the Federal Republic of Yugoslavia in this regard as signatories to the Peace Agreement,

<u>Emphasizing</u> that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

S/RES/1247 (1999)
Page 2

Taking note of the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998 (S/1999/139, annex) and the conclusions of its previous meetings,

Noting the reports of the High Representative, including his latest report of 5 May 1999 (S/1999/524),

Having considered the report of the Secretary-General of 11 June 1999 (S/1999/670),

Determining that the situation in the region continues to constitute a threat to international peace and security,

Determined to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

Acting under Chapter VII of the Charter of the United Nations,

I

1. Reaffirms once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), calls upon the parties to comply strictly with their obligations under those Agreements, and expresses its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina, under review;

2. Reiterates that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions and in facilitating returns of refugees and displaced persons;

3. Reminds the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and underlines that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4. Emphasizes its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations

/...

and agencies involved in assisting the parties to implement the Peace Agreement, and underline that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

    5.   _Expresses_ its support for the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998;

    6.   _Recognizes_ that the parties have authorized the multinational force referred to in paragraph 10 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

    7.   _Reaffirms_ its intention to keep the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 25 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

II

    8.   _Pays tribute_ to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and _welcomes_ their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational stabilization force;

    9.   _Notes_ the support of the parties to the Peace Agreement for the continuation of the multinational stabilization force, set out in the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid;

    10.   _Authorizes_ the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue for a further planned period of 12 months the multinational stabilization force (SFOR) as established in accordance with its resolution 1088 (1996) under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement, and _expresses_ its intention to review the situation with a view to extending this authorization further as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

    11.   _Authorizes_ the Member States acting under paragraph 10 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, _stresses_ that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure implementation of that Annex and the protection of SFOR, and _takes note_ that the parties have consented to SFOR's taking such measures;

/...

12. _Authorizes_ Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and _recognizes_ the right of the force to take all necessary measures to defend itself from attack or threat of attack;

13. _Authorizes_ the Member States acting under paragraph 10 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

14. _Requests_ the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

15. _Demands_ that the parties respect the security and freedom of movement of SFOR and other international personnel;

16. _Invites_ all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 10 above;

17. _Recalls_ all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and _reminds_ the parties of their obligation to continue to comply therewith;

18. _Requests_ the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

\* \* \*

_Reaffirming_ the legal basis in the Charter of the United Nations on which the IPTF was given its mandate in resolution 1035 (1995),

III

19. _Decides_ to extend the mandate of UNMIBH, which includes the IPTF, for an additional period terminating on 21 June 2000, and _also decides_ that the IPTF shall continue to be entrusted with the tasks set out in Annex 11 of the Peace Agreement, including the tasks referred to in the Conclusions of the London, Bonn, Luxembourg, and Madrid Conferences and agreed by the authorities in Bosnia and Herzegovina;

20. _Requests_ the Secretary-General to keep the Council regularly informed on the work of the IPTF and its progress in assisting the restructuring of law enforcement agencies and UNMIBH's progress in monitoring and assessing the court system, and to report every three months on the implementation of the mandate of UNMIBH as a whole;

21.  Reiterates that the successful implementation of the tasks of the IPTF rests on the quality, experience and professional skills of its personnel, and once again urges Member States, with the support of the Secretary-General, to ensure the provision of such qualified personnel;

22.  Reaffirms the responsibility of the parties to cooperate fully with, and to instruct their respective responsible officials and authorities to provide their full support to, the IPTF on all relevant matters;

23.  Reiterates its call upon all concerned to ensure the closest possible coordination between the High Representative, SFOR, UNMIBH and the relevant civilian organizations and agencies so as to ensure the successful implementation of the Peace Agreement and of the priority objectives of the civilian consolidation plan, as well as the security of IPTF personnel;

24.  Urges Member States, in response to demonstrable progress by the parties in restructuring their law enforcement institutions, to intensify their efforts to provide, on a voluntary-funded basis and in coordination with the IPTF, training, equipment and related assistance for local police forces in Bosnia and Herzegovina;

25.  Also requests the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

26.  Decides to remain seized of the matter.

-----

# EXHIBIT H

United Nations


**Security Council**

S/RES/1305 (2000)

Distr.: General
21 June 2000

## Resolution 1305 (2000)

### Adopted by the Security Council at its 4162nd meeting, on 21 June 2000

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia, including resolutions 1031 (1995) of 15 December 1995, 1035 (1995) of 21 December 1995, 1088 (1996) of 12 December 1996, 1144 (1997) of 19 December 1997, 1168 (1998) of 21 May 1998, 1174 (1998) of 15 June 1998, 1184 (1998) of 16 July 1998, and 1247 (1999) of 18 June 1999,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Underlining* its commitment to supporting implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex),

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Special Representative of the Secretary-General and the personnel of the United Nations Mission in Bosnia and Herzegovina (UNMIBH), including the Commissioner and personnel of the International Police Task Force (IPTF), the Organization for Security and Cooperation in Europe (OSCE), and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Noting* that the States in the region must play a constructive role in the successful development of the peace process in Bosnia and Herzegovina, and *noting* especially the obligations of the Republic of Croatia and the Federal Republic of Yugoslavia in this regard as signatories to the Peace Agreement,

*Welcoming*, in this regard, the recent positive steps taken by the Republic of Croatia to strengthen its bilateral relations with Bosnia and Herzegovina, as well as its increasing cooperation with all relevant international organizations in implementing the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

*Taking note* of the declaration of the Ministerial meeting of the Peace Implementation Conference in Brussels on 23 and 24 May 2000 (S/2000/586, annex) and the conclusions of its previous meetings,

*Noting* the reports of the High Representative, including his latest report of 4 May 2000 (S/2000/376),

*Having considered* the report of the Secretary-General of 2 June 2000 (S/2000/529), and *noting* that the UNMIBH judicial system assessment programme will be concluded by December 2000,

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President of 10 February 2000 (S/PRST/2000/4),

*Welcoming* and *encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Acting* under Chapter VII of the Charter of the United Nations,

# I

1.    *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), *calls upon* the parties to comply strictly with their obligations under those Agreements, and *expresses* its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina, under review;

2.    *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions and in facilitating returns of refugees and displaced persons;

3.    *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, *inter*

S/RES/1305 (2000)

*alia*, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4. *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5. *Expresses* its support for the declaration of the Ministerial meeting of the Peace Implementation Conference in Brussels on 23 and 24 May 2000;

6. *Recognizes* that the parties have authorized the multinational force referred to in paragraph 10 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

7. *Reaffirms* its intention to keep the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 25 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

## II

8. *Pays tribute* to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and *welcomes* their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational stabilization force;

9. *Notes* the support of the parties to the Peace Agreement for the continuation of the multinational stabilization force, set out in the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998 (S/1999/139, annex);

10. *Authorizes* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue for a further planned period of 12 months the multinational stabilization force (SFOR) as established in accordance with its resolution 1088 (1996) under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement, and *expresses* its intention to review the situation with a view to extending this authorization further as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

11. *Authorizes* the Member States acting under paragraph 10 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure

implementation of that Annex and the protection of SFOR, and *takes note* that the parties have consented to SFOR's taking such measures;

12.     *Authorizes* Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and *recognizes* the right of the force to take all necessary measures to defend itself from attack or threat of attack;

13.     *Authorizes* the Member States acting under paragraph 10 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

14.     *Requests* the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

15.     *Demands* that the parties respect the security and freedom of movement of SFOR and other international personnel;

16.     *Invites* all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 10 above;

17.     *Recalls* all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and *reminds* the parties of their obligation to continue to comply therewith;

18.     *Requests* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

*  *  *

*Reaffirming* the legal basis in the Charter of the United Nations on which the IPTF was given its mandate in resolution 1035 (1995),

## III

19.     *Decides* to extend the mandate of UNMIBH, which includes the IPTF, for an additional period terminating on 21 June 2001, and *also decides* that the IPTF shall continue to be entrusted with the tasks set out in Annex 11 of the Peace Agreement, including the tasks referred to in the Conclusions of the London, Bonn, Luxembourg, Madrid and Brussels Conferences and agreed by the authorities in Bosnia and Herzegovina;

20.     *Requests* the Secretary-General to keep the Council regularly informed and to report at least every six months on the implementation of the mandate of UNMIBH as a whole;

21.     *Reiterates* that the successful implementation of the tasks of the IPTF rests on the quality, experience and professional skills of its personnel, and once

again *urges* Member States, with the support of the Secretary-General, to ensure the provision of such qualified personnel;

22.  *Reaffirms* the responsibility of the parties to cooperate fully with, and to instruct their respective responsible officials and authorities to provide their full support to, the IPTF on all relevant matters;

23.  *Reiterates* its call upon all concerned to ensure the closest possible coordination between the High Representative, SFOR, UNMIBH and the relevant civilian organizations and agencies so as to ensure the successful implementation of the Peace Agreement and of the priority objectives of the civilian consolidation plan, as well as the security of IPTF personnel;

24.  *Urges* Member States, in response to demonstrable progress by the parties in restructuring their law enforcement institutions, to intensify their efforts to provide, on a voluntary-funded basis and in coordination with the IPTF, training, equipment and related assistance for local police forces in Bosnia and Herzegovina;

25.  *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

26.  *Decides* to remain seized of the matter.

# EXHIBIT I

United Nations

S/RES/1357 (2001)



# Security Council

Distr.: General
21 June 2001

## Resolution 1357 (2001)

### Adopted by the Security Council at its 4333rd meeting, on 21 June 2001

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia, including resolutions 1031 (1995) of 15 December 1995, 1035 (1995) of 21 December 1995, 1088 (1996) of 12 December 1996, 1144 (1997) of 19 December 1997, 1168 (1998) of 21 May 1998, 1174 (1998) of 15 June 1998, 1184 (1998) of 16 July 1998, 1247 (1999) of 18 June 1999, and 1305 (2000) of 21 June 2000,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Underlining* its commitment to supporting implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex),

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Special Representative of the Secretary-General and the personnel of the United Nations Mission in Bosnia and Herzegovina (UNMIBH), including the Commissioner and personnel of the International Police Task Force (IPTF), the Organization for Security and Cooperation in Europe (OSCE), and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Noting* that the States in the region must play a constructive role in the successful development of the peace process in Bosnia and Herzegovina, and *noting* especially the obligations of the Republic of Croatia and the Federal Republic of Yugoslavia in this regard as signatories to the Peace Agreement,

*Welcoming*, in this regard, the positive steps taken by the Governments of the Republic of Croatia and the Federal Republic of Yugoslavia to strengthen their bilateral relations with Bosnia and Herzegovina, as well as their increasing cooperation with all relevant international organizations in implementing the Peace Agreement,

01-42028 (E)



S/RES/1357 (2001)

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

*Noting* the reports of the High Representative, including his latest report of 13 March 2001 (S/2001/219),

*Having considered* the report of the Secretary-General of 7 June 2001 (S/2001/571), and *welcoming* the UNMIBH Mandate Implementation Plan,

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President of 10 February 2000 (S/PRST/2000/4),

*Welcoming* and *encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Acting* under Chapter VII of the Charter of the United Nations,

## I

1.    *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), *calls upon* the parties to comply strictly with their obligations under those Agreements, and *expresses* its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina, under review;

2.    *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions and in facilitating returns of refugees and displaced persons;

3.    *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia,

the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.    *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.    *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.    *Recognizes* that the parties have authorized the multinational force referred to in paragraph 10 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

7.    *Reaffirms* its intention to keep the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 25 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

## II

8.    *Pays tribute* to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and *welcomes* their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational stabilization force;

9.    *Notes* the support of the parties to the Peace Agreement for the continuation of the multinational stabilization force, set out in the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998 (S/1999/139, annex);

10.    *Authorizes* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue for a further planned period of 12 months the multinational stabilization force (SFOR) as established in accordance with its resolution 1088 (1996) under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement, and *expresses* its intention to review the situation with a view to extending this authorization further as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

11.    *Authorizes* the Member States acting under paragraph 10 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure

implementation of that Annex and the protection of SFOR, and *takes note* that the parties have consented to SFOR's taking such measures;

12.    *Authorizes* Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and *recognizes* the right of the force to take all necessary measures to defend itself from attack or threat of attack;

13.    *Authorizes* the Member States acting under paragraph 10 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

14.    *Requests* the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

15.    *Demands* that the parties respect the security and freedom of movement of SFOR and other international personnel;

16.    *Invites* all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 10 above;

17.    *Recalls* all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and *reminds* the parties of their obligation to continue to comply therewith;

18.    *Requests* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

\* \* \*

*Reaffirming* the legal basis in the Charter of the United Nations on which the IPTF was given its mandate in resolution 1035 (1995),

**III**

19.    *Decides* to extend the mandate of UNMIBH, which includes the IPTF, for an additional period terminating on 21 June 2002, and *also decides* that the IPTF shall continue to be entrusted with the tasks set out in Annex 11 of the Peace Agreement, including the tasks referred to in the Conclusions of the London, Bonn, Luxembourg, Madrid and Brussels Conferences and agreed by the authorities in Bosnia and Herzegovina;

20.    *Requests* the Secretary-General to keep the Council regularly informed and to report at least every six months on the implementation of the mandate of UNMIBH as a whole;

21.    *Reiterates* that the successful implementation of the tasks of the IPTF rests on the quality, experience and professional skills of its personnel, and once

again *urges* Member States, with the support of the Secretary-General, to ensure the provision of such qualified personnel;

22.   *Reaffirms* the responsibility of the parties to cooperate fully with, and to instruct their respective responsible officials and authorities to provide their full support to, the IPTF on all relevant matters;

23.   *Reiterates* its call upon all concerned to ensure the closest possible coordination between the High Representative, SFOR, UNMIBH and the relevant civilian organizations and agencies so as to ensure the successful implementation of the Peace Agreement and of the priority objectives of the civilian consolidation plan, as well as the security of IPTF personnel;

24.   *Urges* Member States, in response to demonstrable progress by the parties in restructuring their law enforcement institutions, to intensify their efforts to provide, on a voluntary-funded basis and in coordination with the IPTF, training, equipment and related assistance for local police forces in Bosnia and Herzegovina;

25.   *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

26.   *Decides* to remain seized of the matter.

---

# EXHIBIT J

United Nations

S/RES/1423 (2002)



# Security Council

Distr.: General
12 July 2002

## Resolution 1423 (2002)

### Adopted by the Security Council at its 4573rd meeting, on 12 July 2002

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia, including resolutions 1031 (1995) of 15 December 1995, 1035 (1995) of 21 December 1995, 1088 (1996) of 12 December 1996, 1144 (1997) of 19 December 1997, 1168 (1998) of 21 May 1998, 1174 (1998) of 15 June 1998, 1184 (1998) of 16 July 1998, 1247 (1999) of 18 June 1999, 1305 (2000) of 21 June 2000, 1357 (2001) of 21 June 2001, and 1396 (2002) of 5 March 2002,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Welcoming* the arrival in Bosnia and Herzegovina on 27 May 2002 of the new High Representative, looking forward to working closely with him, and emphasizing its full support for the High Representative's continued role,

*Underlining* its commitment to support the implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex), as well as the relevant decisions of the Peace Implementation Council (PIC),

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Special Representative of the Secretary-General and the personnel of the United Nations Mission in Bosnia and Herzegovina (UNMIBH), including the Commissioner and personnel of the International Police Task Force (IPTF), the Organization for Security and Cooperation in Europe (OSCE), and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Welcoming* the decision by the Council of Europe inviting Bosnia and Herzegovina to become a member and *expressing* its understanding that Bosnia and Herzegovina will commit itself to make progress towards fully meeting the standards of a modern democracy as a multi-ethnic, multicultural and united society,

02-47785 (E)

*0247785*

*Welcoming* recent progress in effecting the decision of the Constitutional Court and calling upon all to support swift implementation of constitutional amendments in both entities of Bosnia and Herzegovina, which is critical to the establishment of stable democratic and multi-ethnic political and administrative institutions necessary for the implementation of the Peace Agreement,

*Welcoming* the positive steps of the Governments of the Republic of Croatia and the Federal Republic of Yugoslavia towards fulfilling their continuing obligations as signatories of the Peace Agreement, strengthening their bilateral relations with Bosnia and Herzegovina and their increasing cooperation with all relevant international organizations in implementing the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

*Noting* the reports of the High Representative, including his latest report of 13 May 2002 (S/2002/547),

*Having considered* the report of the Secretary-General of 5 June 2002 (S/2002/618) and *welcoming* the UNMIBH Mandate Implementation Plan,

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President of 10 February 2000 (S/PRST/2000/4),

*Welcoming and encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Acting* under Chapter VII of the Charter of the United Nations,

**I**

1.    *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), *calls upon* the parties to comply strictly with their obligations under those Agreements, and *expresses* its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina, under review;

2.    *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in

full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions, which foster the building of a fully functioning self-sustaining state, able to integrate itself into the European structures and in facilitating returns of refugees and displaced persons;

3.   *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.   *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.   *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.   *Recognizes* that the parties have authorized the multinational force referred to in paragraph 10 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

7.   *Reaffirms* its intention to keep the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 25 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

**II**

8.   *Pays tribute* to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and *welcomes* their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational stabilization force;

9.   *Notes* the support of the parties to the Peace Agreement for the continuation of the multinational stabilization force, set out in the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998 (S/1999/139, annex);

10.   *Authorizes* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue for a further planned period of 12 months the multinational stabilization force (SFOR) as established in accordance with its resolution 1088 (1996) under unified command

S/RES/1423 (2002)

and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement, and *expresses* its intention to review the situation with a view to extending this authorization further as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

11.   *Authorizes* the Member States acting under paragraph 10 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure implementation of that Annex and the protection of SFOR, and *takes note* that the parties have consented to SFOR's taking such measures;

12.   *Authorizes* Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and *recognizes* the right of the force to take all necessary measures to defend itself from attack or threat of attack;

13.   *Authorizes* the Member States acting under paragraph 10 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

14.   *Requests* the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

15.   *Demands* that the parties respect the security and freedom of movement of SFOR and other international personnel;

16.   *Invites* all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 10 above;

17.   *Recalls* all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and *reminds* the parties of their obligation to continue to comply therewith;

18.   *Requests* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

* * *

*Reaffirming* the legal basis in the Charter of the United Nations on which the IPTF was given its mandate in resolution 1035 (1995),

**III**

19.   *Decides* to extend the mandate of UNMIBH, which includes the IPTF, for an additional period terminating on 31 December 2002, and *also decides* that, during that period, the IPTF shall continue to be entrusted with the tasks set out in Annex 11 of the Peace Agreement, including the tasks referred to in the Conclusions

S/RES/1423 (2002)

of the London, Bonn, Luxembourg, Madrid and Brussels Conferences and agreed by the authorities in Bosnia and Herzegovina;

20.    *Welcomes* the decision of the European Union (EU) to send a Police Mission (EUPM) to Bosnia and Herzegovina from 1 January 2003 as well as the close coordination between the European Union, UNMIBH and the High Representative to ensure a seamless transition and the invitation of the EU to non-EU member States to participate in the EUPM;

21.    *Requests* the Secretary-General to keep the Council regularly informed and to report in six months on the implementation of the mandate of UNMIBH as a whole;

22.    *Reiterates* that the successful implementation of the tasks of the IPTF rests on the quality, experience and professional skills of its personnel, and once again *urges* Member States, with the support of the Secretary-General, to ensure the provision of such qualified personnel;

23.    *Reaffirms* the responsibility of the parties to cooperate fully with, and to instruct their respective responsible officials and authorities to provide their full support to, the IPTF on all relevant matters;

24.    *Reiterates* its call upon all concerned to ensure the closest possible coordination between the High Representative, SFOR, UNMIBH and the relevant civilian organizations and agencies so as to ensure the successful implementation of the Peace Agreement and of the priority objectives of the civilian consolidation plan, as well as the security of IPTF personnel;

25.    *Urges* Member States, in response to demonstrable progress by the parties in restructuring their law enforcement institutions, to intensify their efforts to provide, on a voluntary-funded basis and in coordination with the IPTF, training, equipment and related assistance for local police forces in Bosnia and Herzegovina;

26.    *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

27.    *Decides* to remain seized of the matter.

# EXHIBIT K



United Nations

S/RES/1491 (2003)

# Security Council

Distr.: General
11 July 2003

## Resolution 1491 (2003)

### Adopted by the Security Council at its 4786th meeting, on 11 July 2003

*The Security Council*,

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia and relevant statements of its President, including resolutions 1031 (1995) of 15 December 1995, 1088 (1996) of 12 December 1996 and 1423 (2002) of 12 July 2002,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Emphasizing* its full support for the High Representative's continued role in Bosnia and Herzegovina,

*Underlining* its commitment to support the implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex), as well as the relevant decisions of the Peace Implementation Council (PIC),

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Organization for Security and Cooperation in Europe (OSCE), and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

*Noting* the reports of the High Representative, including his latest report of 21 October 2002 (S/2002/1176),

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

03-42500 (E)



*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President of 10 February 2000 (S/PRST/2000/4),

*Welcoming and encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Acting* under Chapter VII of the Charter of the United Nations,

**I**

1.   *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), *calls upon* the parties to comply strictly with their obligations under those Agreements, and *expresses* its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina, under review;

2.   *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions, which foster the building of a fully functioning self-sustaining state, able to integrate itself into the European structures and in facilitating returns of refugees and displaced persons;

3.   *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.   *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.   *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.    *Recognizes* that the parties have authorized the multinational force referred to in paragraph 10 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

7.    *Reaffirms* its intention to keep the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 20 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

**II**

8.    *Pays tribute* to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and *welcomes* their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational stabilization force;

9.    *Notes* the support of the parties to the Peace Agreement for the continuation of the multinational stabilization force, set out in the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998 (S/1999/139, annex);

10.    *Authorizes* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue for a further planned period of 12 months the multinational stabilization force (SFOR) as established in accordance with its resolution 1088 (1996) under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement, and *expresses* its intention to review the situation with a view to extending this authorization further as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

11.    *Authorizes* the Member States acting under paragraph 10 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure implementation of that Annex and the protection of SFOR, and *takes note* that the parties have consented to SFOR's taking such measures;

12.    *Authorizes* Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and *recognizes* the right of the force to take all necessary measures to defend itself from attack or threat of attack;

13.    *Authorizes* the Member States acting under paragraph 10 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

14.    *Requests* the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia

3

and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

15. *Demands* that the parties respect the security and freedom of movement of SFOR and other international personnel;

16. *Invites* all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 10 above;

17. *Recalls* all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and *reminds* the parties of their obligation to continue to comply therewith;

18. *Requests* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

* * *

19. *Welcomes* the deployment by the European Union (EU) of its Police Mission (EUPM) to Bosnia and Herzegovina since 1 January 2003;

20. *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

21. *Decides* to remain seized of the matter.

# EXHIBIT L

United Nations

$S$/RES/1551 (2004)

 **Security Council**

Distr.: General
9 July 2004

## Resolution 1551 (2004)

### Adopted by the Security Council at its 5001st meeting, on 9 July 2004

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia and relevant statements of its President, including resolutions 1031 (1995) of 15 December 1995, 1088 (1996) of 12 December 1996, 1423 (2002) of 12 July 2002 and 1491 (2003) of 11 July 2003,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Emphasizing* its full support for the High Representative's continued role in Bosnia and Herzegovina,

*Underlining* its commitment to support the implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex), as well as the relevant decisions of the Peace Implementation Council (PIC),

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Organization for Security and Cooperation in Europe (OSCE), the European Union (EU), and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

*Noting* the reports of the High Representative, including his latest report of 18 February 2004 (S/2004/126),

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

S/RES/1551 (2004)

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President on 10 February 2000 (S/PRST/2000/4),

*Welcoming and encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Taking note* of the decisions set out in paragraph 8 of the communiqué of the NATO Istanbul Summit of 28 June 2004, which refers to NATO's intention to conclude its SFOR operation in Bosnia and Herzegovina by the end of 2004,

*Taking note also* of the European Union's intention to launch an EU mission to Bosnia and Herzegovina, including a military component, from December 2004, under the terms set out in the letter of 29 June 2004 from the Minister of Foreign Affairs of Ireland and President of the Council of the European Union to the President of the Security Council (S/2004/522*/Annex),

*Acting* under Chapter VII of the Charter of the United Nations,

**I**

1.    *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), *calls upon* the parties to comply strictly with their obligations under those Agreements, and *expresses* its intention to keep the implementation of the Peace Agreement, and the situation in Bosnia and Herzegovina, under review;

2.    *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions, which foster the building of a fully functioning self-sustaining state, able to integrate itself into the European structures and in facilitating returns of refugees and displaced persons;

3.    *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.    *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies

S/RES/1551 (2004)

involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that under Annex 10 of the Peace Agreement the High Representative is the final authority in theatre regarding the interpretation of civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.    *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.    *Recognizes* that the parties have authorized the multinational force referred to in paragraph 11 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

7.    *Reaffirms* its intention to keep the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 19 and 23 below, and any recommendations those report might include, and its readiness to consider the imposition of measures if any party fails significantly to meets its obligations under the Peace Agreement;

**II**

8.    *Pays tribute* to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and *welcomes* their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational stabilization force;

9.    *Notes* the support of the parties to the Peace Agreement for the continuation of the multinational stabilization force, set out in the declaration of the Ministerial meeting of the Peace Implementation Conference in Madrid on 16 December 1998 (S/1999/139, annex);

10.    *Welcomes* the decision of NATO to conclude its current SFOR operation in Bosnia and Herzegovina by the end of 2004. *Further welcomes* the EU's intention to launch an EU mission to Bosnia and Herzegovina, including a military component, from December 2004;

11.    *Authorizes* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue for a further planned period of 6 months the multinational stabilization force (SFOR) as established in accordance with its resolution 1088 (1996) under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement;

12.    *Expresses* its intention to consider the terms of further authorization as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

13.    *Authorizes* the Member States acting under paragraph 11 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure

S/RES/1551 (2004)

implementation of that Annex and the protection of SFOR, and *takes note* that the parties have consented to SFOR's taking such measures;

14.  *Authorizes* Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and *recognizes* the right of the force to take all necessary measures to defend itself from attack or threat of attack;

15.  *Authorizes* the Member States acting under paragraph 11 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

16.  *Requests* the authorities in Bosnia and Herzegovina to cooperate with the Commander of the SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

17.  *Demands* that the parties respect the security and freedom of movement of SFOR and other international personnel;

18.  *Recalls* all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and *reminds* the parties of their obligation to continue to comply therewith;

19.  *Requests* the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to continue to report to the Council, through the appropriate channels and at least at monthly intervals;

20.  *Decides* that the status of forces agreements currently contained in Appendix B to Annex 1-A of the Peace Agreement shall apply provisionally in respect to the proposed EU mission and its forces, including from the point of their build-up in Bosnia and Herzegovina, in anticipation of the concurrence of the parties to those agreements to that effect;

21.  *Invites* all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraphs 11 and 20 above;

\* \* \*

22.  *Welcomes* the deployment by the European Union (EU) of its Police Mission (EUPM) to Bosnia and Herzegovina since 1 January 2003;

23.  *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

24.  *Decides* to remain seized of the matter.

_____

# EXHIBIT M

United Nations

S/RES/1575 (2004)



# Security Council

Distr.: General
22 November 2004

## Resolution 1575 (2004)

### Adopted by the Security Council at its 5085th meeting, on 22 November 2004

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia and relevant statements of its President, including resolutions 1031 (1995) of 15 December 1995, 1088 (1996) of 12 December 1996, 1423 (2002) of 12 July 2002, 1491 (2003) of 11 July 2003 and 1551 (2004) of 9 July 2004,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Emphasizing* its full support for the High Representative's continued role in Bosnia and Herzegovina,

*Underlining* its commitment to support the implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex), as well as the relevant decisions of the Peace Implementation Council (PIC),

*Recalling* all the agreements concerning the status of forces referred to in Appendix B to Annex 1-A of the Peace Agreement, and reminding the parties of their obligation to continue to comply therewith,

*Further recalling* the provisions of its resolution 1551 (2004) concerning the provisional application of the status of forces agreements contained in Appendix B to Annex 1-A of the Peace Agreement,

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (SFOR), the Organization for Security and Cooperation in Europe (OSCE), the European Union (EU) and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

04-61922 (E)

*0461922*

S/RES/1575 (2004)

*Noting* the reports of the High Representative, including his latest report of 6 October 2004 (S/2004/807),

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President of 10 February 2000 (S/PRST/2000/4),

*Welcoming and encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Recalling* the decisions set out in paragraph 8 of the communiqué of the NATO Istanbul Summit of 28 June 2004, which refers to NATO's intention to conclude the SFOR operation in Bosnia and Herzegovina by the end of 2004 and to establish a NATO Headquarters in Sarajevo that will constitute NATO's residual military presence,

*Recalling further* that resolution 1551 (2004) took note of the European Union's intention to launch an EU mission to Bosnia and Herzegovina, including a military component, from December 2004, under the terms set out in the letter of 29 June 2004 from the Minister of Foreign Affairs of Ireland and President of the Council of the European Union to the President of the Security Council (S/2004/522*/Annex),

*Taking note* of the letters between the European Union and NATO sent to the Security Council on 19 November 2004 on how those organizations will cooperate together in Bosnia and Herzegovina in which both organizations recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement (S/2004/916; S/2004/915),

*Further taking note* of the confirmation by the Presidency of Bosnia and Herzegovina, on behalf of Bosnia and Herzegovina, including its constituent entities, of the arrangements for EUFOR and the NATO Headquarters presence (S/2004/917),

*Welcoming* in the light of the forthcoming EU Mission the European Union's increasing engagement in Bosnia and Herzegovina,

*Further welcoming* tangible signs of Bosnia and Herzegovina's progress towards European integration,

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Acting* under Chapter VII of the Charter of the United Nations,

**I**

1.    *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex) and *calls upon* the parties to comply strictly with their obligations under those Agreements;

2.    *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and

Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions, which foster the building of a fully functioning self-sustaining state, able to integrate itself into the European structures and in facilitating returns of refugees and displaced persons;

3.  *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.  *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that under Annex 10 of the Peace Agreement the High Representative is the final authority in theatre regarding the interpretation of civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.  *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.  *Reaffirms* its intention to keep implementation of the Peace Agreement and the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 21 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

**II**

7.  *Acknowledges* the support of the authorities of Bosnia and Herzegovina for the EU force and the continued NATO presence and their confirmation that both are the legal successors to SFOR for the fulfilment of their missions for the purposes of the Peace Agreement, its Annexes and Appendices and relevant United Nations Security Council resolutions and can take such actions as are required, including the use of force, to ensure compliance with Annexes 1-A and 2 of the Peace Agreement and relevant United Nations Security Council resolutions;

8.  *Pays tribute* to those Member States which participated in the multinational stabilization force established in accordance with its resolution 1088 (1996), and expresses its appreciation of their efforts and achievements in Bosnia and Herzegovina;

9.    *Welcomes* the EU's intention to launch an EU military operation to Bosnia and Herzegovina from December 2004;

10.    *Authorizes* the Member States acting through or in cooperation with the EU to establish for an initial planned period of 12 months a multinational stabilization force (EUFOR) as a legal successor to SFOR under unified command and control, which will fulfil its missions in relation to the implementation of Annex 1-A and Annex 2 of the Peace Agreement in cooperation with the NATO HQ presence in accordance with the arrangements agreed between NATO and the EU as communicated to the Security Council in their letters of 19 November 2004, which recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement;

11.    *Welcomes* the decision of NATO to conclude the SFOR operation in Bosnia and Herzegovina by the end of 2004 and to maintain a presence in Bosnia and Herzegovina through the establishment of a NATO Headquarters in order to continue to assist in implementing the Peace Agreement in conjunction with EUFOR and *authorizes* the Member States acting through or in cooperation with NATO to establish a NATO Headquarters as a legal successor to SFOR under unified command and control, which will fulfil its missions in relation to the implementation of Annex 1-A and Annex 2 of the Peace Agreement in cooperation with EUFOR in accordance with the arrangements agreed between NATO and the EU as communicated to the Security Council in their letters of 19 November 2004, which recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement;

12.    *Recognizes* that the Peace Agreement and the provisions of its previous relevant resolutions shall apply to and in respect of both EUFOR and the NATO presence as they have applied to and in respect of SFOR and that therefore references in the Peace Agreement, in particular in Annex 1-A and its appendices, and relevant resolutions to IFOR and/or SFOR, NATO and the NAC shall henceforth be read as applying, as appropriate, to the NATO presence, EUFOR, the European Union and the Political and Security Committee and Council of the European Union respectively;

13.    *Expresses* its intention to consider the terms of further authorization as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

14.    *Authorizes* the Member States acting under paragraphs 10 and 11 above to take all necessary measures to effect the implementation of and to ensure compliance with Annexes 1-A and 2 of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by EUFOR and the NATO presence as may be necessary to ensure implementation of those Annexes and the protection of EUFOR and the NATO presence;

15.    *Authorizes* Member States to take all necessary measures, at the request of either EUFOR or the NATO Headquarters, in defence of EUFOR or NATO presence respectively, and to assist both organizations in carrying out their missions, and *recognizes* the right of both EUFOR and the NATO presence to take all necessary measures to defend themselves from attack or threat of attack;

S/RES/1575 (2004)

16.    *Authorizes* the Member States acting under paragraphs 10 and 11 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

17.    *Demands* that the parties respect the security and freedom of movement of EUFOR, the NATO presence, and other international personnel;

18.    *Requests* the Member States acting through or in cooperation with the EU and the Member States acting through or in cooperation with NATO to report to the Council on the activity of EUFOR and NATO HQ presence respectively, through the appropriate channels and at least at three-monthly intervals;

19.    *Invites* all States, in particular those in the region, to continue to *provide* appropriate support and facilities, including transit facilities, for the Member States acting under paragraphs 10 and 11 above;

20.    *Reiterates its appreciation for* the deployment by the EU of its Police Mission (EUPM) to Bosnia and Herzegovina since 1 January 2003;

21.    *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

22.    *Decides* to remain seized of the matter.

# EXHIBIT N

United Nations

S/RES/1639 (2005)



# Security Council

Distr.: General
21 November 2005

## Resolution 1639 (2005)

### Adopted by the Security Council at its 5307th meeting, on 21 November 2005

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia and relevant statements of its President, including resolutions 1031 (1995) of 15 December 1995, 1088 (1996) of 12 December 1996, 1423 (2002) of 12 July 2002, 1491 (2003) of 11 July 2003, 1551 (2004) of 9 July 2004 and 1575 (2004) of 22 November 2004,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Emphasizing* its full support for the High Representative's continued role in Bosnia and Herzegovina,

*Underlining* its commitment to support the implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex), as well as the relevant decisions of the Peace Implementation Council (PIC),

*Recalling* all the agreements concerning the status of forces referred to in Appendix B to Annex 1-A of the Peace Agreement, and reminding the parties of their obligation to continue to comply therewith,

*Further recalling* the provisions of its resolution 1551 (2004) concerning the provisional application of the status of forces agreements contained in Appendix B to Annex 1-A of the Peace Agreement,

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (EUFOR), the Senior Military Representative and personnel of the NATO Headquarters Sarajevo, the Organization for Security and Cooperation in Europe (OSCE), the European Union (EU) and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

05-61329 (E)

*0561329*

S/RES/1639 (2005)

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

*Recognizing* that full implementation of the Peace Agreement is not yet complete, while *paying tribute* to the achievements of the authorities at State and entity level in Bosnia and Herzegovina and of the international community in the ten years since the signing of the Peace Agreement,

*Emphasizing* the importance of Bosnia and Herzegovina's progress towards Euro-Atlantic integration on the basis of the Peace Agreement, while *recognizing* the importance of Bosnia and Herzegovina's transition to a functional, reform-oriented, modern and democratic European country,

*Noting* the reports of the High Representative, including his latest report of 14 October 2005 (S/2005/698, annex),

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President on 10 February 2000 (S/PRST/2000/4),

*Welcoming and encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Taking note* of the conclusions of EU Foreign Ministers at their meeting of 13 June, which refer to the requirement for EUFOR to remain in Bosnia and Herzegovina beyond 2005, and confirm the EU's intention to take the steps necessary to that end,

*Recalling* the letters between the European Union and NATO sent to the Security Council on 19 November 2004 on how those organizations will cooperate together in Bosnia and Herzegovina in which both organizations recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement (S/2004/916; S/2004/915),

*Further recalling* the confirmation by the Presidency of Bosnia and Herzegovina, on behalf of Bosnia and Herzegovina, including its constituent entities, of the arrangements for EUFOR and the NATO Headquarters presence (S/2004/917),

*Welcoming* the European Union's increased engagement in Bosnia and Herzegovina and the continued engagement of NATO,

*Further welcoming* tangible signs of Bosnia and Herzegovina's progress towards the European Union, and, in particular, the decision by the EU to open negotiations with Bosnia and Herzegovina on a Stabilization and Association Agreement, and *calling* on the authorities in Bosnia and Herzegovina to implement in full their undertakings, including on police reform, as part of that process,

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Acting* under Chapter VII of the Charter of the United Nations,

2

1.   *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Paris Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex) and *calls upon* the parties to comply strictly with their obligations under those Agreements;

2.   *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions, which foster the building of a fully functioning self-sustaining State, able to integrate itself into the European structures and in facilitating returns of refugees and displaced persons;

3.   *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial or apprehension of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.   *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that under Annex 10 of the Peace Agreement the High Representative is the final authority in theatre regarding the interpretation of civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.   *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.   *Reaffirms* its intention to keep implementation of the Peace Agreement and the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 21 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

7.   *Recalls* the support of the authorities of Bosnia and Herzegovina for the EU force and the continued NATO presence and their confirmation that both are the legal successors to SFOR for the fulfilment of their missions for the purposes of the Peace Agreement, its Annexes and Appendices and relevant United Nations Security Council resolutions and can take such actions as are required, including the use of

force, to ensure compliance with Annexes 1-A and 2 of the Peace Agreement and relevant United Nations Security Council resolutions;

8.    *Pays tribute* to those Member States which participated in the multinational stabilization force (EUFOR), and in the continued NATO presence, established in accordance with its resolution 1575 (2004), and welcomes their willingness to assist the Parties to the Peace Agreement by continuing to deploy a multinational stabilization force (EUFOR) and by maintaining a continued NATO presence;

9.    *Welcomes* the EU's intention to maintain an EU military operation to Bosnia and Herzegovina from November 2005;

10.    *Authorizes* the Member States acting through or in cooperation with the EU to establish for a further period of 12 months, starting from the date of the adoption of this resolution, a multinational stabilization force (EUFOR) as a legal successor to SFOR under unified command and control, which will fulfil its missions in relation to the implementation of Annex 1-A and Annex 2 of the Peace Agreement in cooperation with the NATO Headquarters presence in accordance with the arrangements agreed between NATO and the EU as communicated to the Security Council in their letters of 19 November 2004, which recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement;

11.    *Welcomes* the decision of NATO to continue to maintain a presence in Bosnia and Herzegovina in the form of a NATO Headquarters in order to continue to assist in implementing the Peace Agreement in conjunction with EUFOR and *authorizes* the Member States acting through or in cooperation with NATO to continue to maintain a NATO Headquarters as a legal successor to SFOR under unified command and control, which will fulfil its missions in relation to the implementation of Annex 1-A and Annex 2 of the Peace Agreement in cooperation with EUFOR in accordance with the arrangements agreed between NATO and the EU as communicated to the Security Council in their letters of 19 November 2004, which recognize that EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement;

12.    *Reaffirms* that the Peace Agreement and the provisions of its previous relevant resolutions shall apply to and in respect of both EUFOR and the NATO presence as they have applied to and in respect of SFOR and that therefore references in the Peace Agreement, in particular in Annex 1-A and its appendices, and relevant resolutions to IFOR and/or SFOR, NATO and the NAC shall be read as applying, as appropriate, to the NATO presence, EUFOR, the European Union and the Political and Security Committee and Council of the European Union respectively;

13.    *Expresses* its intention to consider the terms of further authorization as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

14.    *Authorizes* the Member States acting under paragraphs 10 and 11 above to take all necessary measures to effect the implementation of and to ensure compliance with Annexes 1-A and 2 of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for the compliance with that Annex and shall be equally subject to such enforcement action by EUFOR and the

NATO presence as may be necessary to ensure implementation of those Annexes and the protection of EUFOR and the NATO presence;

15.    *Authorizes* Member States to take all necessary measures, at the request of either EUFOR or the NATO Headquarters, in defence of the EUFOR or NATO presence respectively, and to assist both organizations in carrying out their missions, and *recognizes* the right of both EUFOR and the NATO presence to take all necessary measures to defend themselves from attack or threat of attack;

16.    *Authorizes* the Member States acting under paragraphs 10 and 11 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

17.    *Demands* that the parties respect the security and freedom of movement of EUFOR, the NATO presence, and other international personnel;

18.    *Requests* the Member States acting through or in cooperation with the EU and the Member States acting through or in cooperation with NATO to report to the Council on the activity of EUFOR and NATO Headquarters presence respectively, through the appropriate channels and at least at three-monthly intervals;

19.    *Invites* all States, in particular those in the region, to continue to *provide* appropriate support and facilities, including transit facilities, for the Member States acting under paragraphs 10 and 11 above;

20.    *Reiterates its appreciation for* the deployment by the EU of its Police Mission (EUPM) to Bosnia and Herzegovina since 1 January 2003;

21.    *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

22.    *Decides* to remain seized of the matter.

---

# EXHIBIT O

United Nations

S/RES/1722 (2006)

 **Security Council**

Distr.: General
21 November 2006

---

## Resolution 1722 (2006)

### Adopted by the Security Council at its 5567th meeting, on 21 November 2006

*The Security Council,*

*Recalling* all its previous relevant resolutions concerning the conflicts in the former Yugoslavia and relevant statements of its President, including resolutions 1031 (1995) of 15 December 1995, 1088 (1996) of 12 December 1996, 1423 (2002) of 12 July 2002, 1491 (2003) of 11 July 2003, 1551 (2004) of 9 July 2004, 1575 (2004) of 22 November 2004 and 1639 (2005) of 21 November 2005,

*Reaffirming* its commitment to the political settlement of the conflicts in the former Yugoslavia, preserving the sovereignty and territorial integrity of all States there within their internationally recognized borders,

*Emphasizing* its full support for the High Representative's continued role in Bosnia and Herzegovina,

*Underlining* its commitment to support the implementation of the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex), as well as the relevant decisions of the Peace Implementation Council (PIC),

*Recalling* all the agreements concerning the status of forces referred to in Appendix B to Annex 1-A of the Peace Agreement, and reminding the parties of their obligation to continue to comply therewith,

*Further recalling* the provisions of its resolution 1551 (2004) concerning the provisional application of the status of forces agreements contained in Appendix B to Annex 1-A of the Peace Agreement,

*Emphasizing* its appreciation to the High Representative, the Commander and personnel of the multinational stabilization force (EUFOR), the Senior Military Representative and personnel of the NATO Headquarters Sarajevo, the Organization for Security and Cooperation in Europe (OSCE), the European Union (EU) and the personnel of other international organizations and agencies in Bosnia and Herzegovina for their contributions to the implementation of the Peace Agreement,

*Emphasizing* that a comprehensive and coordinated return of refugees and displaced persons throughout the region continues to be crucial to lasting peace,

06-62429 (E)   211106

*Recalling* the declarations of the Ministerial meetings of the Peace Implementation Conference,

*Recognizing* that full implementation of the Peace Agreement is not yet complete, while *paying tribute* to the achievements of the authorities at State and entity level in Bosnia and Herzegovina and of the international community in the eleven years since the signing of the Peace Agreement,

*Emphasizing* the importance of Bosnia and Herzegovina's progress towards Euro-Atlantic integration on the basis of the Peace Agreement, while *recognizing* the importance of Bosnia and Herzegovina's transition to a functional, reform-oriented, modern and democratic European country,

*Noting* the reports of the High Representative, including his latest report of 6 October 2006 (S/2006/810, annex),

*Determined* to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

*Recalling* the relevant principles contained in the Convention on the Safety of United Nations and Associated Personnel adopted on 9 December 1994 and the statement of its President on 10 February 2000 (S/PRST/2000/4),

*Welcoming and encouraging* efforts by the United Nations to sensitize peacekeeping personnel in the prevention and control of HIV/AIDS and other communicable diseases in all its peacekeeping operations,

*Taking note* of the conclusions of EU Foreign Ministers at their meeting of 12 June 2006, which refer to the requirement for EUFOR to remain in Bosnia and Herzegovina beyond 2006, and confirm the EU's intention to take the steps necessary to that end,

*Recalling* the letters between the European Union and NATO sent to the Security Council on 19 November 2004 on how those organizations will cooperate together in Bosnia and Herzegovina in which both organizations recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement (S/2004/916; S/2004/915),

*Further recalling* the confirmation by the Presidency of Bosnia and Herzegovina, on behalf of Bosnia and Herzegovina, including its constituent entities, of the arrangements for EUFOR and the NATO Headquarters presence (S/2004/917),

*Welcoming* the European Union's increased engagement in Bosnia and Herzegovina and the continued engagement of NATO,

*Further welcoming* tangible signs of Bosnia and Herzegovina's progress towards the European Union, and, in particular, the progress made in the negotiations of Bosnia and Herzegovina with the EU on a Stabilization and Association Agreement, and *calling* on the authorities in Bosnia and Herzegovina to implement in full their undertakings, including on police reform, as part of that process,

*Determining* that the situation in the region continues to constitute a threat to international peace and security,

*Acting* under Chapter VII of the Charter of the United Nations,

1.     *Reaffirms* once again its support for the Peace Agreement, as well as for the Dayton Paris Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex) and *calls upon* the parties to comply strictly with their obligations under those Agreements;

2.     *Reiterates* that the primary responsibility for the further successful implementation of the Peace Agreement lies with the authorities in Bosnia and Herzegovina themselves and that the continued willingness of the international community and major donors to assume the political, military and economic burden of implementation and reconstruction efforts will be determined by the compliance and active participation by all the authorities in Bosnia and Herzegovina in implementing the Peace Agreement and rebuilding a civil society, in particular in full cooperation with the International Tribunal for the Former Yugoslavia, in strengthening joint institutions, which foster the building of a fully functioning self-sustaining State, able to integrate itself into the European structures and in facilitating returns of refugees and displaced persons;

3.     *Reminds* the parties once again that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and *underlines* that full cooperation by States and entities with the International Tribunal includes, inter alia, the surrender for trial or apprehension of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

4.     *Emphasizes* its full support for the continued role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and *reaffirms* that under Annex 10 of the Peace Agreement the High Representative is the final authority in theatre regarding the interpretation of civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make recommendations, and make binding decisions as he judges necessary on issues as elaborated by the Peace Implementation Council in Bonn on 9 and 10 December 1997;

5.     *Expresses* its support for the declarations of the Ministerial meetings of the Peace Implementation Conference;

6.     *Reaffirms* its intention to keep implementation of the Peace Agreement and the situation in Bosnia and Herzegovina under close review, taking into account the reports submitted pursuant to paragraphs 18 and 21 below, and any recommendations those reports might include, and its readiness to consider the imposition of measures if any party fails significantly to meet its obligations under the Peace Agreement;

7.     *Recalls* the support of the authorities of Bosnia and Herzegovina for the EU force and the continued NATO presence and their confirmation that both are the legal successors to SFOR for the fulfilment of their missions for the purposes of the Peace Agreement, its Annexes and Appendices and relevant United Nations Security Council resolutions and can take such actions as are required, including the use of

force, to ensure compliance with Annexes 1-A and 2 of the Peace Agreement and relevant United Nations Security Council resolutions;

8. *Pays tribute* to those Member States which participated in the multinational stabilization force (EUFOR), and in the continued NATO presence, established in accordance with its resolution 1575 (2004) and extended with its resolution 1639 (2005) of 21 November 2005, and welcomes their willingness to assist the Parties to the Peace Agreement by continuing to deploy a multinational stabilization force (EUFOR) and by maintaining a continued NATO presence;

9. *Welcomes* the EU's intention to maintain an EU military operation to Bosnia and Herzegovina from November 2006;

10. *Authorizes* the Member States acting through or in cooperation with the EU to establish for a further period of 12 months, starting from the date of the adoption of this resolution, a multinational stabilization force (EUFOR) as a legal successor to SFOR under unified command and control, which will fulfil its missions in relation to the implementation of Annex 1-A and Annex 2 of the Peace Agreement in cooperation with the NATO Headquarters presence in accordance with the arrangements agreed between NATO and the EU as communicated to the Security Council in their letters of 19 November 2004, which recognize that the EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement;

11. *Welcomes* the decision of NATO to continue to maintain a presence in Bosnia and Herzegovina in the form of a NATO Headquarters in order to continue to assist in implementing the Peace Agreement in conjunction with EUFOR and *authorizes* the Member States acting through or in cooperation with NATO to continue to maintain a NATO Headquarters as a legal successor to SFOR under unified command and control, which will fulfil its missions in relation to the implementation of Annex 1-A and Annex 2 of the Peace Agreement in cooperation with EUFOR in accordance with the arrangements agreed between NATO and the EU as communicated to the Security Council in their letters of 19 November 2004, which recognize that EUFOR will have the main peace stabilization role under the military aspects of the Peace Agreement;

12. *Reaffirms* that the Peace Agreement and the provisions of its previous relevant resolutions shall apply to and in respect of both EUFOR and the NATO presence as they have applied to and in respect of SFOR and that therefore references in the Peace Agreement, in particular in Annex 1-A and its appendices, and relevant resolutions to IFOR and/or SFOR, NATO and the NAC shall be read as applying, as appropriate, to the NATO presence, EUFOR, the European Union and the Political and Security Committee and Council of the European Union respectively;

13. *Expresses* its intention to consider the terms of further authorization as necessary in the light of developments in the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina;

14. *Authorizes* the Member States acting under paragraphs 10 and 11 above to take all necessary measures to effect the implementation of and to ensure compliance with Annexes 1-A and 2 of the Peace Agreement, *stresses* that the parties shall continue to be held equally responsible for the compliance with that Annex and shall be equally subject to such enforcement action by EUFOR and the

NATO presence as may be necessary to ensure implementation of those Annexes and the protection of EUFOR and the NATO presence;

15.    *Authorizes* Member States to take all necessary measures, at the request of either EUFOR or the NATO Headquarters, in defence of the EUFOR or NATO presence respectively, and to assist both organizations in carrying out their missions, and *recognizes* the right of both EUFOR and the NATO presence to take all necessary measures to defend themselves from attack or threat of attack;

16.    *Authorizes* the Member States acting under paragraphs 10 and 11 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

17.    *Demands* that the parties respect the security and freedom of movement of EUFOR, the NATO presence, and other international personnel;

18.    *Requests* the Member States acting through or in cooperation with the EU and the Member States acting through or in cooperation with NATO to report to the Council on the activity of EUFOR and NATO Headquarters presence respectively, through the appropriate channels and at least at three-monthly intervals;

19.    *Invites* all States, in particular those in the region, to continue to *provide* appropriate support and facilities, including transit facilities, for the Member States acting under paragraphs 10 and 11 above;

20.    *Reiterates its appreciation* for the deployment by the EU of its Police Mission (EUPM) to Bosnia and Herzegovina since 1 January 2003;

21.    *Also requests* the Secretary-General to continue to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the Peace Implementation Conference held in London on 4 and 5 December 1996 (S/1996/1012), and later Peace Implementation Conferences, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

22.    *Decides* to remain seized of the matter.

———————

# EXHIBIT P

**UNITED
NATIONS**



**S**



## Security Council

Distr.
GENERAL

S/RES/1112 (1997)*
12 June 1997

RESOLUTION 1112 (1997)

Adopted by the Security Council at its 3787th meeting,
on 12 June 1997

The Security Council,

Recalling its resolutions 1031 (1995) of 15 December 1995 and 1088 (1996) of 12 December 1996,

Recalling also the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, annex),

1. Welcomes the conclusions of the Ministerial meeting of the Steering Board of the Peace Implementation Council held in Sintra, Portugal on 30 May 1997 (S/1997/434, annex) and agrees the designation of Mr. Carlos Westendorp as High Representative in succession to Mr. Carl Bildt;

2. Expresses its warmest appreciation to Mr. Carl Bildt for his work as High Representative;

3. Reaffirms the importance it attaches to the role of the High Representative in monitoring the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement, and also reaffirms that the High Representative is the final authority in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement and that in case of dispute he may give his interpretation and make his recommendations, including to the authorities of Bosnia and Herzegovina or its Entities, and make them known publicly.

-----

---

\* Reissued for technical reasons.

97-16104 (E)

# EXHIBIT Q

United Nations



## Security Council

S/RES/1764 (2007)

Distr.: General
29 June 2007

## Resolution 1764 (2007)

### Adopted by the Security Council at its 5713th meeting, on 29 June 2007

*The Security Council,*

*Recalling* all its previous relevant resolutions,

*Recalling also* the General Framework Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto (collectively the Peace Agreement, S/1995/999, Annex), and the conclusions of the Peace Implementation Conferences held in Bonn on 9 and 10 December 1997 (S/1997/979, Annex), Madrid on 16 and 17 December 1998 (S/1999/139, appendix) and Brussels on 23 and 24 May 2000 (S/2000/586, Annex) as well as the Declaration by the Steering Board of the Peace Implementation Council on 19 June 2007,

1.    *Welcomes* and agrees to the designation by the Steering Board of the Peace Implementation Council on 19 June 2007 of Mr. Miroslav Lajčák as High Representative in succession to Mr. Christian Schwarz-Schilling;

2.    *Pays tribute* to the efforts of Mr. Christian Schwarz-Schilling in his work as High Representative;

3.    *Reaffirms* the importance it attaches to the role of the High Representative in pursuing the implementation of the Peace Agreement and giving guidance to and coordinating the activities of the civilian organizations and agencies involved in assisting the parties to implement the Peace Agreement;

4.    *Reaffirms also* the final authority of the High Representative in theatre regarding the interpretation of Annex 10 on civilian implementation of the Peace Agreement;

5.    *Takes note* of the decision of the Steering Board of the Peace Implementation Council on 19 June 2007 that the Office of the High Representative will remain in place and continue to carry out its mandate and that the aim is closure of the Office of the High Representative by 30 June 2008;

6.    *Decides* to remain seized of the matter.

_____

07-40593 (E)



# EXHIBIT R

**UNITED
NATIONS**

**S**

 **Security Council**

Distr.
GENERAL

S/RES/1088 (1996)*
12 December 1996

---

RESOLUTION 1088 (1996)

<u>Adopted by the Security Council at its 3723rd meeting,
on 12 December 1996</u>

<u>The Security Council</u>,

<u>Recalling</u> all its previous relevant resolutions concerning the conflicts in
the former Yugoslavia, including resolutions 1031 (1995) of 15 December 1995 and
1035 (1995) of 21 December 1995,

<u>Reaffirming</u> its commitment to the political settlement of the conflicts in
the former Yugoslavia, preserving the sovereignty and territorial integrity of
all States there within their internationally recognized borders,

<u>Welcoming</u> the conclusions of the Ministerial Steering Board and of the
Presidency of Bosnia and Herzegovina held in Paris (the Paris Conference) on
14 November 1996 (S/1996/968), and the guiding principles of the two-year
civilian consolidation plan of the peace process referred to in those
conclusions,

<u>Welcoming also</u> the conclusions of the Peace Implementation Conference held
in London on 4 and 5 December 1996 (the London Conference) (S/1996/1012), which,
following the conclusions of the Paris Conference, approved an Action Plan for
the first twelve-month period of the civilian consolidation plan of the peace
process,

<u>Welcoming</u> the progress in the implementation of the General Framework
Agreement for Peace in Bosnia and Herzegovina and the Annexes thereto
(collectively the Peace Agreement, S/1995/999, annex), and <u>expressing its
appreciation</u> to the High Representative, the Commander and personnel of the
multinational implementation force (IFOR), and the personnel of other
international organizations and agencies in Bosnia and Herzegovina for their
contributions to the implementation of the Peace Agreement,

---

\* Reissued for technical reasons.

97-02619 (E)    290197    /...

S/RES/1088 (1996)
Page 2

Noting with satisfaction the holding of the elections called for in Annex 3 of the Peace Agreement, and welcoming the progress in establishing the common institutions in accordance with the provisions of the Constitution of Bosnia and Herzegovina,

Underlining also the important role for the Republic of Croatia and the Federal Republic of Yugoslavia to play in the successful development of the peace process in Bosnia and Herzegovina,

Having considered the report of the Secretary-General of 9 December 1996 (S/1996/1017),

Noting the report of the High Representative of 9 December 1996 (S/1996/1024, annex),

Determining that the situation in the region continues to constitute a threat to international peace and security,

Determined to promote the peaceful resolution of the conflicts in accordance with the purposes and principles of the Charter of the United Nations,

Acting under Chapter VII of the Charter of the United Nations,

I

1.    Reaffirms its support for the Peace Agreement, as well as for the Dayton Agreement on implementing the Federation of Bosnia and Herzegovina of 10 November 1995 (S/1995/1021, annex), calls upon the parties to comply strictly with their obligations under those Agreements, and expresses its intention to keep the implementation of the Peace Agreement and the situation in Bosnia and Herzegovina under review;

2.    Expresses its support for the conclusions of the Paris and London Conferences;

3.    Underlines that the primary responsibility for the further successful implementation of the peace process lies with the authorities in Bosnia and Herzegovina themselves, which during the next two years should assume increasingly a greater responsibility for the functions now undertaken or coordinated by the international community, and stresses that without compliance and active participation by all the authorities in Bosnia and Herzegovina in rebuilding a civil society they cannot expect the international community and major donors to continue shouldering the political, military and economic burden of the implementation and reconstruction efforts;

4.    Underlines the link, as agreed by the Presidency of Bosnia and Herzegovina in the conclusions of the Paris Conference, between the availability of international financial assistance and the degree to which all the authorities in Bosnia and Herzegovina implement the Peace Agreement, including cooperation with the International Tribunal for the Former Yugoslavia and

/...

cooperation with the Action Plan which has been approved by the London Conference;

    5.  <u>Welcomes</u> the mutual recognition among all the successor States to the former Socialist Federal Republic of Yugoslavia within their internationally recognized borders, and <u>stresses the importance</u> of full normalization of relations, including the immediate establishment of diplomatic relations, among those States;

    6.  <u>Welcomes</u> the reaffirmation by the Presidency of Bosnia and Herzegovina in the conclusions of the Paris Conference of its commitment to fully pursuing, in the name of the three constituent peoples of Bosnia and Herzegovina, the peace process, in accordance with the Peace Agreement and the sovereignty and territorial integrity of the country, including the development of a Bosnian State based on the principles of democracy and consisting of the two Entities, the Federation of Bosnia and Herzegovina and the Republika Srpska, and <u>underlines</u> in this respect the importance of establishing the remaining common institutions provided for in the Constitution of Bosnia and Herzegovina without delay, as well as the importance of the commitment by the authorities in Bosnia and Herzegovina to cooperate in the working of these institutions at all levels;

    7.  <u>Reminds</u> the parties that, in accordance with the Peace Agreement, they have committed themselves to cooperate fully with all entities involved in the implementation of this peace settlement, as described in the Peace Agreement, or which are otherwise authorized by the Security Council, including the International Tribunal for the Former Yugoslavia, as it carries out its responsibilities for dispensing justice impartially, and <u>underlines</u> that full cooperation by States and entities with the International Tribunal includes, <u>inter alia</u>, the surrender for trial of all persons indicted by the Tribunal and provision of information to assist in Tribunal investigations;

    8.  <u>Recognizes</u> that the parties have authorized the multinational force referred to in paragraph 18 below to take such actions as required, including the use of necessary force, to ensure compliance with Annex 1-A of the Peace Agreement;

    9.  <u>Welcomes</u> the agreement of the authorities in Bosnia and Herzegovina to supervision by the Organization for Security and Cooperation in Europe (OSCE) of the preparation and conduct of the municipal elections to be held in 1997, and <u>also welcomes</u> the decision of the OSCE to extend the mandate of its mission in Bosnia and Herzegovina to take forward its work on elections, as well as that on human rights and regional stabilization;

    10.  <u>Underlines</u> the obligation of the parties under the Peace Agreement to secure to all persons within their jurisdiction the highest level of internationally recognized human rights and fundamental freedoms, <u>calls upon</u> them to cooperate fully with the work of the Human Rights Ombudsman and the Human Rights Chamber and to implement their conclusions and decisions, and <u>calls upon</u> the authorities in Bosnia and Herzegovina to cooperate fully with the United Nations Commission on Human Rights, the OSCE, the United Nations High Commissioner for Human Rights and other intergovernmental or regional human

/...

S/RES/1088 (1996)
Page 4

rights missions or organizations to monitor closely the human rights situation
in Bosnia and Herzegovina;

  11. Welcomes the commitment of the parties to the right of all refugees
and displaced persons freely to return to their homes of origin or to other
places of their choice in Bosnia and Herzegovina in safety, notes the leading
humanitarian role which has been given by the Peace Agreement to the United
Nations High Commissioner for Refugees, in coordination with other agencies
involved and under the authority of the Secretary-General, in assisting with the
repatriation and relief of refugees and displaced persons, and stresses the
importance of facilitating the return or resettlement of refugees and displaced
persons which should be gradual and orderly and carried out through progressive,
coordinated programmes that address the need for local security, housing and
jobs, while ensuring full compliance with Annex 7 of the Peace Agreement as well
as other established procedures;

  12. Emphasizes the importance of the creation of conditions conducive to
the reconstruction and development of Bosnia and Herzegovina, encourages Member
States to provide assistance for the programme of reconstruction in that
country, and welcomes in this respect the important contribution already made by
the European Union, the World Bank and bilateral donors;

  13. Underlines the importance of control of armaments in the region at the
lowest possible level of weapons, calls upon the Bosnian parties to implement
fully and without further delay the agreements signed in Vienna on
26 January 1996 and in Florence on 14 June 1996 and, following satisfactory
progress in the implementation of the Article II and Article IV Agreements,
calls for efforts to continue to promote the implementation of Article V of
Annex 1-B on regional arms control of the Peace Agreement;

  14. Stresses the importance it attaches to the continuation on a
reinforced basis as agreed at the Paris and London Conferences of the role of
the High Representative in monitoring the implementation of the Peace Agreement
and giving guidance to and coordinating the activities of the civilian
organizations and agencies involved in assisting the parties to implement the
Peace Agreement, and reaffirms that the High Representative is the final
authority in theatre regarding the interpretation of Annex 10 on civilian
implementation of the Peace Agreement and that in case of dispute he may give
his interpretation and make his recommendations, including to the authorities of
Bosnia and Herzegovina or its Entities, and make them known publicly;

  15. Reaffirms its intention to keep the situation in Bosnia and
Herzegovina under close review, taking into account the reports submitted
pursuant to paragraphs 26 and 34 below, and any recommendations those reports
might include, and its readiness to consider the imposition of measures if any
party fails significantly to meet its obligations under the Peace Agreement;

S/RES/1088 (1996)
Page 5

II

16. _Pays tribute_ to those Member States who participated in the multinational force established in accordance with its resolution 1031 (1995), and _welcomes_ their willingness to assist the parties to the Peace Agreement by continuing to deploy a multinational implementation force;

17. _Notes_ the confirmations by the Presidency of Bosnia and Herzegovina, on behalf of Bosnia and Herzegovina, including its constituent Entities, and by the Republic of Croatia and the Federal Republic of Yugoslavia of the understandings set out in the letters dated 29 November 1996 from the Secretary-General of the organization referred to in Annex 1-A of the Peace Agreement (S/1996/1025);

18. _Authorizes_ the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to establish for a planned period of 18 months a multinational stabilization force (SFOR) as the legal successor to IFOR under unified command and control in order to fulfil the role specified in Annex 1-A and Annex 2 of the Peace Agreement;

19. _Authorizes_ the Member States acting under paragraph 18 above to take all necessary measures to effect the implementation of and to ensure compliance with Annex 1-A of the Peace Agreement, _stresses_ that the parties shall continue to be held equally responsible for compliance with that Annex and shall be equally subject to such enforcement action by SFOR as may be necessary to ensure implementation of that Annex and the protection of SFOR, and _takes note_ that the parties have consented to SFOR's taking such measures;

20. _Authorizes_ Member States to take all necessary measures, at the request of SFOR, either in defence of SFOR or to assist the force in carrying out its mission, and _recognizes_ the right of the force to take all necessary measures to defend itself from attack or threat of attack;

21. _Authorizes_ the Member States acting under paragraph 18 above, in accordance with Annex 1-A of the Peace Agreement, to take all necessary measures to ensure compliance with the rules and procedures, to be established by the Commander of SFOR, governing command and control of airspace over Bosnia and Herzegovina with respect to all civilian and military air traffic;

22. _Requests_ the authorities in Bosnia and Herzegovina to cooperate with the Commander of SFOR to ensure the effective management of the airports of Bosnia and Herzegovina, in the light of the responsibilities conferred on SFOR by Annex 1-A of the Peace Agreement with regard to the airspace of Bosnia and Herzegovina;

23. _Demands_ that the parties respect the security and freedom of movement of SFOR and other international personnel;

24. _Invites_ all States, in particular those in the region, to continue to provide appropriate support and facilities, including transit facilities, for the Member States acting under paragraph 18 above;

/...

S/RES/1088 (1996)
Page 6

25. Recalls all the agreements concerning the status of forces as referred to in Appendix B to Annex 1-A of the Peace Agreement, and reminds the parties of their obligation to continue to comply therewith;

26. Requests the Member States acting through or in cooperation with the organization referred to in Annex 1-A of the Peace Agreement to report to the Council, through the appropriate channels and at least at monthly intervals;

* * *

Noting the request of the authorities in Bosnia and Herzegovina that the mandate of the United Nations civilian police force known as the International Police Task Force (IPTF), which is a part of the United Nations Mission in Bosnia and Herzegovina (UNMIBH), be renewed,

Reaffirming the legal basis in the Charter of the United Nations on which the IPTF was given its mandate in resolution 1035 (1995),

Expressing its appreciation to the personnel of UNMIBH for their contribution to the implementation of the Peace Agreement,

III

27. Decides to extend the mandate of UNMIBH, which includes the IPTF, for an additional period terminating on 21 December 1997, and also decides that the IPTF shall continue to be entrusted with the tasks set out in Annex 11 of the Peace Agreement, including the tasks referred to in the Conclusions of the London Conference and agreed by the authorities in Bosnia and Herzegovina;

28. Requests the Secretary-General to keep the Council regularly informed on the work of the IPTF and its progress in assisting the restructuring of law enforcement agencies, and to report every three months on the implementation of the mandate of UNMIBH as a whole, and, in this context, also requests the Secretary-General to report to the Council by 16 June 1997 on the IPTF, in particular its work in assisting the restructuring of law enforcement agencies, coordinating assistance in training and providing equipment, advising law enforcement agencies on guidelines on democratic policing principles with full support for human rights, and investigating or assisting with investigations into human rights abuses by law enforcement personnel, as well as to report on progress by the authorities in Bosnia and Herzegovina in regard to such issues, in particular their compliance with IPTF-prescribed guidelines including their taking prompt and effective action, which could include dismissal where appropriate, in respect of any officer notified to them by the IPTF Commissioner as failing to cooperate with the IPTF or adhere to democratic policing principles;

29. Stresses that the successful implementation of the tasks of the IPTF rests on the quality, experience and professional skills of its personnel, and urges Member States, with the support of the Secretary-General, to ensure the provision of such qualified personnel;

/...

S/RES/1088 (1996)
Page 7

30.  <u>Reaffirms</u> the responsibility of the parties to cooperate fully with, and instruct their respective responsible officials and authorities to provide their full support to, the IPTF on all relevant matters;

31.  <u>Expresses appreciation</u> for the efforts under way to enhance and strengthen the logistical and support capabilities of UNMIBH by the Secretary-General, and <u>urges</u> that those efforts be increased;

32.  <u>Calls upon</u> all concerned to ensure the closest possible coordination between the High Representative, SFOR, UNMIBH and the relevant civilian organizations and agencies so as to ensure the successful implementation of the Peace Agreement and of the priority objectives of the civilian consolidation plan, as well as the security of IPTF personnel;

33.  <u>Encourages</u> Member States, in response to demonstrable progress by the parties in restructuring their law enforcement institutions, to assist the parties, through the IPTF, in following up the United Nations programme of assistance for the local police forces;

34.  <u>Also requests</u> the Secretary-General to submit to the Council reports from the High Representative, in accordance with Annex 10 of the Peace Agreement and the conclusions of the London Conference, on the implementation of the Peace Agreement and in particular on compliance by the parties with their commitments under that Agreement;

35.  <u>Decides</u> to remain seized of the matter.

-----

# EXHIBIT S

Bosanski  Hrvatski  Српски

‹ Home
» About OHR
» Press & Public Info
» Decisions
» Archive
» International Community in BiH
» BiH in Focus

# PIC Bonn Conclusions

BONN
PIC MAIN MEETING | 10/12/1997

print document    ⭳ download document    @ send by e-mail

your e-mail address

advanced search

### Bosnia and Herzegovina 1998: Self-sustaining Structures

## Conclusions

- Summary of Conclusions

I.   Human Rights, Legal Reform and War Crimes
II.  Constitutional and Legal Matters
III. Refugees and Displaced Persons
IV.  Public ORDER and Police Issues
V.   Media
VI.  Elections
VII. Economic Reconstruction and Reform
VIII. Brcko
IX.  Security AND ARMS CONTROL
X.   Regional Aspects
XI.  High Representative

- Brcko Annex
- Federation Annex
- Annex on Citizenship and Travel Documents

## I.Human Rights, Legal Reform and War Crimes

Despite gradual improvements such as greater freedom of movement, fewer arbitrary arrests, and a more responsible attitude on the part of the authorities, the Council deplores the fact that the protection of human rights in Bosnia and Herzegovina is still inadequate. The Council reiterates that the extensive list of human rights obligations, which form part of the Constitution of Bosnia and Herzegovina and the Peace Agreement, must be respected and that current laws must be reviewed to determine their compatibility with international standards of human rights. Few steps have been taken to ensure that the direct application of the rights and freedoms set forth in the European Convention on Human Rights is effectively implemented in Bosnia and Herzegovina and underlying structural problems have yet to be addressed. Until those problems are resolved, human rights violations threaten to remain endemic.

The Council takes note of the High Representative's recent report to the Council of Europe on the situation of human rights in Bosnia and Herzegovina. The High Representative will regularly report to the Steering Board on progress in this field in connection with the application of Bosnia and Herzegovina for membership in the Council of Europe.

1. Human Rights Issues
   a. The Council is deeply concerned that the Federation and Republika Srpska have not amended their property and housing legislation to make full implementation of

Annex 7 of the Peace Agreement possible. These laws continue to block the return of hundreds of thousands of refugees and displaced persons to their pre-war homes. This situation will not be condoned. Changes to the laws of both Entities must be adopted immediately. The Federation will be held to its commitment, made at the Federation Forum on 12 November 1997, to adopt the three draft laws submitted by the High Representative, or otherwise the High Representative will recommend appropriate measures to the Steering Board. Republika Srpska is urgently asked to amend its property and housing legislation within 60 days of the new Government taking office. Non-compliance measures will be applied according to the recommendations of the High Representative.

b.  The Council expects the authorities in Bosnia and Herzegovina to co-operate fully with the Commission on Human Rights and the Commission for Real Property Claims (CRPC). In particular, the authorities of both Entities must ensure that the decisions of the Human Rights Chamber and the CRPC are respected, and must respond appropriately to reports of the Ombudsperson. To that end, Bosnia and Herzegovina and the Entities should adopt legislation for the CRPC, in accordance with the draft proposed by the High Representative, as soon as possible.

c.  It is essential that the Commission on Human Rights and the CRPC receive adequate and stable funding to carry out the tasks envisaged by the Peace Agreement. The Presidency of Bosnia and Herzegovina has recognised this obligation, and made a nominal contribution to each institution from the 1997 budget of Bosnia and Herzegovina. The authorities must commit themselves to incremental increases in funding, with a view to assuming full responsibility as soon as possible and at the very latest at the end of the five-year transition period. In the interim, the Council remains committed to ensuring that funding constraints do not impede the work of the Commissions. To that end, the Council commits itself to addressing any funding gaps.

d.  The Council emphasises that education must promote understanding and reconciliation among the ethnic, religious and cultural groups in Bosnia and Herzegovina, while recognising the right of parents to choose the nature of the education that their children receive. The Council notes with concern that educational policy and programmes in the Federation and Republika Srpska do not comply with these basic principles. The Council urges the competent authorities to work together to ensure that all persons are educated according to their needs and in a manner which also contributes to tolerance and stability within a multi-ethnic Bosnia and Herzegovina, and to develop without delay an education programme consistent with these principles, in co-operation with the High Representative, UNESCO, the Council of Europe, the European Commission, the OSCE, UNICEF, the World Bank and other relevant organisations.

e.  The Council recognises that non-governmental organisations are vital to pluralism and democracy and it supports the strengthening of civil society as a whole. It notes that the current legislative framework in Bosnia and Herzegovina hinders these objectives and urges the competent authorities to establish a proper legal environment for civil society organisations. It calls upon the OSCE to continue its human rights and democratisation programmes.

f.  The Council calls upon the authorities in Bosnia and Herzegovina to collaborate closely with national and international organisations monitoring the human rights situation in Bosnia and Herzegovina. The Council emphasises the need for these organisations to co-ordinate their efforts through the Human Rights Co-ordination Centre Steering Board.

2.  Legal Reform

a.  The Council recognises that an impartial and independent judiciary is essential to the rule of law and reconciliation within Bosnia and Herzegovina. The judicial appointment process must be reformed to ensure that selection is based on merit rather than political or ethnic criteria, and a facility for judicial training must be established. The Council stresses that monitoring of the judicial system is an essential element of this process, and calls for the necessary resources to be devoted to that task.

b. The Council supports the ongoing criminal justice reform effort within the Federation, and calls on the authorities, as a first step, to implement the recommendations of the expert team regarding the criminal procedure code by 31 January 1998.

The Council welcomes the request by Republika Srpska to the Council of Europe to assist in the harmonisation of its criminal and criminal procedure codes with European standards. The Council underlines, however, that the expert teams set up by Republika Srpska for this purpose should include representatives not only of the Council of Europe, but also of the High Representative, UNMIBH and other relevant institutions.

c. The Council states that consistency and co-operation between the two Entities in the area of legal reform is essential. To that end, it calls for the establishment of a Commission for Inter-Entity Judicial Co-operation, in accordance with the recommendation made by the High Representative, to be operational no later than 31 January 1998. It also notes the need to harmonise Federation and cantonal laws, and calls for co-operation by the cantons. The Council endorses the High Representative's co-ordination of the various judicial and legal reform programmes within a coherent and focused programme including the harmonisation of the criminal codes and criminal procedures of both Entities with the Constitution of Bosnia and Herzegovina and undertakes to provide further assistance to the organisations involved in the fulfilment of this mission. The Council welcomes the High Representative's invitation to the Council of Europe, the OSCE and UNMIBH to cooperate in a programme of judicial and legal reform. Specifically, the Council welcomes the High Representative's request to the UN, in accordance with Annex 11 of the Peace Agreement, to set up a Task Force within UNMIBH to focus on the assessment and monitoring of the court system, the development and training of legal professionals and the restructuring of institutions within the judicial system, and invites the UN to consider allocating any necessary resources.

3. Missing Persons and Exhumations

The Council welcomes the efforts of the various international agencies, including the ICRC, the High Representative, the ICMP and the International Criminal Tribunal for the Former Yugoslavia (ICTY), to resolve the issue of persons unaccounted for, but expresses dissatisfaction with the authorities in Bosnia and Herzegovina for not meeting their responsibilities. It demands specifically that the authorities:

a. provide immediate and full information or assistance upon the request of the international agencies to assist with the tracing process;
b. ensure that the agreement to allow one another immediate access to potential burial and mass grave sites for the process of exhumation and retrieval of remains is implemented in full;
c. cease immediately body-for-body exchanges and participate in the exhumation process introduced by the High Representative.

4. Reconciliation, War Crimes and Co-operation with the International Criminal Tribunal for the Former Yugoslavia (ICTY)
a. The Council is convinced that until all persons indicted for war crimes are brought before the ICTY, there will be no normalisation, no reconciliation, and the rule of law in Bosnia and Herzegovina will remain seriously impaired. In this regard, the Council recalls the Sintra Declaration, where the continued influence of Radovan Karadzic over the political life of Republika Srpska was deemed unacceptable. The Council therefore reminds all competent authorities that war crimes suspects must be brought before the ICTY and that cooperation with ICTY is a key part of the process of peace implementation. The Council remains committed to applying economic levers and other measures to ensure full co-operation with ICTY, including making recommendations to Council members with regard to the Federal

Republic of Yugoslavia. The Council welcomes the transfers of war crimes indictees to the ICTY in the course of 1997. The Council recalls Security Council resolution 1034. The Council demands that the competent authorities take immediate steps to execute arrest warrants for all indicted persons under their jurisdiction and to surrender them to the ICTY. This demand is made with particular reference to Republika Srpska and the Federal Republic of Yugoslavia. The Council recalls that domestic law prohibiting the surrender of indictees to the ICTY is incompatible with mandatory United Nations Security Council resolutions adopted under Chapter VII of the Charter of the United Nations and Article IX of the General Framework Agreement for Peace in Bosnia and Herzegovina.

   b.  The Council notes the importance of compliance with the Rules of the Road agreed at Rome in February 1996. It criticises local authorities in both Entities who continue to refer to "lists of war crimes suspects" in an attempt to discourage return of refugees and displaced persons, harass citizens and deter elected municipal councillors from taking office. The authorities must ensure that this ceases immediately. The Council notes that municipalities that persist in this risk being named as obstructionist by the High Representative and consequently risk losing international assistance. Furthermore, the Council calls for adequate resources to be made available to the Prosecutor of the ICTY for the Rules of the Road.

   c.  The Council requests that the High Representative, the ICTY and other relevant organisations identify those persons who are aiding and abetting individuals named in the arrest warrants and calls on member States to take immediate measures against such persons, as may be recommended by the High Representative.

## II. Constitutional and Legal Matters

The Council expresses its concern that the authorities in Bosnia and Herzegovina have not made better progress in implementing key aspects of the Constitution of Bosnia and Herzegovina and in passing important legislation vital to the welfare of the people of the country.

The Council strongly urges all Bosnian leaders to adopt a more co-operative attitude in addressing the important issues of creating the structures and laws of their country. Regarding the Presidency, the Council recalls that repeated, intentional absences constitute lasting incapacity to perform the duties of the Presidency. Wilful absences reflect an intention to avoid the obligations of office and violate the duty to attend all meetings of the Presidency.

The Council calls on the authorities in Bosnia and Herzegovina, in particular in the Entities, to make use of the instrument of international mediation in order to resolve disputes concerning the implementation of the Peace Agreement. It commends the work already undertaken in this field by the current Federation Mediator.

The Council welcomes, following the Sintra Declaration, the agreement on the distribution of ambassadorial posts, the establishment of a Department of Civil Aviation, and the opening of the northern border with the Republic of Croatia.

   1.  Sintra Issues

The Council expresses its concern that many of the Sintra commitments still have not been complied with.

   a.  The Council deplores the failure of the Bosnia and Herzegovina authorities to adopt the Draft Citizenship and Travel Document Laws in accordance with their Sintra obligations. The Council demands that the Draft Laws, including the language in the Annex on Citizenship and Travel Documents regarding Article 38(2) of the Draft Citizenship Law and Article 6 of the Draft Travel Documents Law, are adopted by 15 December 1997 as endorsed by the Presidency in Bonn. Appropriate measures will be taken by the High Representative in case of non-compliance. The Council calls on the Parliamentary Assembly of Bosnia and Herzegovina to adopt a statement on the possibility of concluding bilateral agreements on dual citizenship

in accordance with the Constitution.

The Council urges all Member States as of 1 June 1998 only to recognise travel documents of citizens of Bosnia and Herzegovina issued under the new Law. Citizens of Bosnia and Herzegovina resident abroad will have until the end of 1998 to acquire the new travel documents. However, refugees living abroad will be entitled to use their old passports for their return to Bosnia and Herzegovina. The charge for passports must take into account the average income in Bosnia and Herzegovina, and should not exceed the nominal costs of issuing the passports.

b.  The Council concludes that insufficient action has been taken to establish a uniform system of vehicle registration and an obligatory third-party liability car insurance throughout Bosnia and Herzegovina. In this context, it urges the Council of Ministers and the Entity Governments to agree to the Memorandum of Understanding and the Council of Ministers Regulation immediately. The Council welcomes the High Representative's intention, after 31 January 1998, to implement the uniform licensing system on the basis of the Memorandum of Understanding in cooperation with IPTF and SFOR.

c.  The Council welcomes the opening of two additional border crossings between Bosnia and Herzegovina and the Republic of Croatia and the establishment of the Joint Border Commission to deal with practical arrangements and infrastructural issues along the border. The Council urges the authorities of the Republic of Croatia and Bosnia and Herzegovina to conclude a new non-discriminatory visa regime and remove other barriers to free travel by 1 March 1998.

The Council calls for normal and non-discriminatory customs and other border formalities to be established at all border crossing points by 1 March 1998.

d.  The Council deplores the failure of Bosnia and Herzegovina and the Federal Republic of Yugoslavia to establish unconditional diplomatic relations. The Council once again calls upon Bosnia and Herzegovina and the Federal Republic of Yugoslavia to treat the opening of embassies in Belgrade and Sarajevo as a priority.

e.  The Council invites the High Representative to establish a process leading to a decision on a new flag and symbols if the parties cannot agree on their own by 31 December 1997.

f.  The Council reiterates that remaining parallel and para-constitutional structures in the territory of the Federation ("Croat Republic of Herceg Bosna", "Republic of Bosnia and Herzegovina") are illegal and must be dissolved immediately. The authorities in the Federation should publicly announce that all these former institutions have stopped functioning. The bank accounts of such structures must be closed. Remaining seals must be destroyed. The Council invites the High Representative to report to the Steering Board on progress on this issue by 1 March 1998.

g.  The Council recalls that agreements establishing special parallel relationships must be consistent with the sovereignty and territorial integrity of Bosnia and Herzegovina. The Council further recalls that the Peace Agreement has primacy over previous Agreements between the Parties.

The Council regrets that despite the fact that the Republic of Croatia and the Federation had engaged positively in a process to align the Agreement on the Establishment of the Joint Co-operation Council with the Constitution of Bosnia and Herzegovina, the Republic of Croatia has recently presented a proposal for a special parallel relationship with the Federation which is inconsistent with the Peace Agreement. The Council demands that the parties proceed immediately with the alignment of the Agreement with the Peace Agreement.

The Federal Republic of Yugoslavia has not complied with the request from the Steering Board rapidly to align the Agreement establishing a Special Parallel Relationship between the Federal Republic of Yugoslavia and Republika Srpska

with the Peace Agreement. The alignment of this Agreement must proceed immediately.

In this context, the Council emphasises that provisions for establishment of a special arrangement on the port of Ploce and on transit through Neum must be consistent with the Constitution of Bosnia and Herzegovina. The Council notes that negotiations on such an arrangement do not depend on the conclusion of the Agreement on the Co-operation Council. The Council invites the High Representative to support the negotiations in co-ordination with the chair of the negotiations.

The Council invites the High Representative to report to the Steering Board by 1 March 1998 on progress on these issues.

h. The Council welcomes the formation of the Bosnia and Herzegovina Department of Civil Aviation (DCA) following Sintra. The Council welcomes the opening of the airport of Banja Luka and calls for further progress in Mostar and Tuzla.

The Council acknowledges the request of the local authorities for continued international support in the form of personnel and resources for a small international secretariat, to be established on 1 January 1998 for one year. Funding of the secretariat will be required if progress is to be maintained in the field of civil aviation.

2. Common Institutions

   a. The Council deplores the failure of the Bosnia and Herzegovina authorities to adopt the Law on the Council of Ministers. It demands that the Draft Law is adopted by 15 December 1997. Appropriate measures will be taken by the High Representative in case of non-compliance. The Council of Ministers must immediately proceed with the full establishment of the ministries. Until such time as the ministries are operating effectively, the ministers and deputy ministers should meet regularly with core staff to ensure the implementation of their workload. Further, the Presidency and the Council of Ministers should meet at least once a week, and the Parliamentary Assembly as necessary. The Council invites the High Representative to take the appropriate steps where necessary.

   b. The Council insists that the common institutions take immediate steps to establish permanent facilities for themselves and the ministries, as well as hiring permanent staff and arranging for the proper financing of the ministries. The Council considers it unacceptable that the burden of secretarial and technical support for the common institutions rests with the High Representative. Limited support will continue on a decreasing basis.

   c. The Council welcomes the willingness of the European Commission, USAID and other relevant organisations to step up the assistance to the development of a civil service in Bosnia and Herzegovina, making use of their expertise, and that of interested countries and organisations.

   d. The Council welcomes the efficient work of the Constitutional Court and the high level of co-operation and professionalism demonstrated by all the judges in performing their duties. It is, however, concerned that despite the full responsibility of Bosnia and Herzegovina for financing the Court, no resources have been put at the Court's disposal; nor does the 1997 Budget provide for the necessary amount. Consequently, the administrative structure cannot be established. The Council demands that the authorities of Bosnia and Herzegovina provide full funding for the Court.

3. Other Issues The Council expresses concern that representation of Bosnia and Herzegovina in international organisations does not represent all the peoples of Bosnia and Herzegovina. The Council urges the authorities in Bosnia and Herzegovina, in co-operation with the High Representative, to establish which international representations need to be restructured and to proceed accordingly by 1 May 1998.

The Council expects the sports organisations in the Entities to form teams together representing Bosnia and Herzegovina under one flag as one country in international sports events, notably at the upcoming Winter Olympics in Nagano, Japan.

Should the authorities, and the other relevant bodies, fail in this respect, the Council welcomes the High Representative's intention to report to the Steering Board on whether to recommend that the representatives of Bosnia and Herzegovina in international organisations should be no longer recognised.

4. Entity Issues
   a. The Council emphasises the necessity for the Constitutions and the other laws of the Entities to be consistent with the Constitution of Bosnia and Herzegovina and invites the High Representative to identify the areas in which new or amended Entity legislation is needed.

   In particular, the Council

   - underlines that the Citizenship Laws of the Entities must be harmonised with the future Law on Citizenship of Bosnia and Herzegovina, under the guidance of the High Representative in co-operation with the Council of Europe;
   - requests the authorities in Republika Srpska to align immediately the Law on Internal Affairs of Republika Srpska with the Constitution of Bosnia and Herzegovina, based on the recommendations of the Council of Europe;
   - emphasises that any provisions of the Entity Constitutions that discriminate against the members of an ethnic group are incompatible with the Constitution of Bosnia and Herzegovina.

   b. The Council requests the authorities in the Federation rapidly to resolve the issues set out in the Federation Annex.

## III. Refugees and Displaced Persons

1. Return Issues
   a. The Council welcomes the return of more than 400,000 refugees and displaced persons since the signing of the Peace Agreement, among them more than 110,000 refugees from abroad in 1997. The Council notes, however, that over 600,000 Bosnian refugees remain abroad and over 800,000 Bosnians remain displaced internally. The Council acknowledges that large-scale repatriation in 1998 is contingent on successful minority return movements, in particular to Sarajevo and Republika Srpska.
   b. The Council recalls the obligation of the Parties under Annex 7 of the Peace Agreement to co-operate with the UNHCR and to create suitable conditions for return. Despite some improvements in freedom of movement and respect for human rights, the overall conditions for return have not significantly improved.
   c. The Council finds it unacceptable that because of continued obstruction, large numbers of returning refugees and displaced persons are being relocated against their will in places other than their original homes. Return to the place of origin is an essential part of the return process.
   d. The Council demands that the authorities in Bosnia and Herzegovina act resolutely to remove all barriers to return. Such barriers include: lack of adequate security; refusal to facilitate the return of property; levying of so-called war taxes; failure to establish a system of access to personal documents; existing registration processes; uncertainty concerning applicable customs regulations and tariffs; deficiencies in the allocation of temporary housing; and the low capacity of administrative organs. It invites the High Representative to transmit to the Steering Board a regularly updated list of barriers and the measures necessary to ensure their removal.
   e. The Council acknowledges a change in attitude and limited progress in the Federation and some parts of Republika Srpska in allowing the return of minorities. It welcomes the active support given by the President and Vice-President of the Federation to the implementation of a Central Bosnia Canton return programme, as

laid out in the conclusions of the Federation meeting on refugee return of 2 December 1997. The Council expects that the return process should expand from the Central Bosnia Canton to the Herzegovina Neretva Canton and to other cantons. The municipal government of Stolac is expected to enable the completion of the pilot project for return by 20 December 1997.

f.  The Council urges the Entity Governments to instruct cantonal and municipal authorities to elaborate appropriate phased return plans, starting with the identification of areas where returns or preparations for returns to empty housing space could happen immediately. Elaboration of such plans should be made in co-operation with UNHCR, with the Return and Reconstruction Task Force (RRTF) and international organisations, and associations of displaced persons and refugees, and be completed by the end of February 1998.

g.  Ensuring a multi-ethnic Sarajevo is central to the implementation of the Peace Agreement. The Council expresses disappointment at the failure of the authorities in Sarajevo to encourage and facilitate the safe return of former inhabitants. The Council takes note of recent commitments made by the Sarajevo authorities to encourage and facilitate the safe return of former inhabitants. These commitments are long overdue and must translate into action immediately. So long as Sarajevo remains largely mono-ethnic, its position as the capital of Bosnia and Herzegovina will remain impaired. The Council endorses the efforts of the High Representative and UNHCR to develop a Sarajevo return strategy. It calls on the competent authorities to agree on that strategy prior to the conference on return to Sarajevo proposed by the High Representative, which should be held in early 1998. In particular the Council calls for a review of implementation to date and a timetable for full implementation of the February 1996 Rome Statement on Sarajevo and the October 1996 Sarajevo Protocol, particularly regarding minority rights and multi-ethnic participation in governance.

h.  The Council notes some progress in the implementation of the "Open Cities" Project launched by UNHCR. The Council calls on all municipalities and the Sarajevo Canton to join the "Open Cities" project or act in accordance with the criteria established by UNHCR in the context of these projects. Entity and cantonal authorities may not obstruct the decision by a municipal authority to welcome organised and phased return. The Council welcomes the positive examples of the Open Cities of Konjic, Busovaca, Vogosca, Bihac, Gorazde and Kakanj and expects other municipalities, among them Vares, Jajce, Bugojno, Drvar and Banja Luka immediately to fulfil the requirements to meet the Open Cities commitment.

i.  The Council calls upon the authorities in Republika Srpska to begin implementation of the decisions of the International Housing Commission on approval of persons eligible to return to the Zone of Separation by 31 March 1998.

2.  Return and Reconstruction Task Force (RRTF)

The Council acknowledges the solid achievements of the RRTF in 1997. The Council recognises that further measures are urgently required if the RRTF is to fulfil its mandate in 1998. It notes that:

i.  the High Representative has appointed a Deputy with exclusive responsibility for RRTF matters;

ii. the RRTF, under the chair of the High Representative, will be provided with a secretariat whose expertise reflects the multi-sector task of return and reconstruction;

iii. RRTF members and all donors are encouraged to provide reserves for the RRTF in their 1998 programmes to support brokered breakthroughs in minority return movements at local level;

iv. all concerned governments are urged to second appropriate staff to the regional offices of the High Representative as well as to other RRTF members, thereby addressing the weak capacity of the RRTF in the field.

The Council supports RRTF proposals and recommendations on resource targeting and

management, including those concerned with the allocation of donor-financed housing, implementation of the principle of conditionality and the proposal for a return related donors meeting in early 1998, chaired by the European Commission and the World Bank.

## IV. Public Order and Police Issues

1. The Council expresses its appreciation for the achievements of the United Nations International Police Task Force (IPTF), most notably in promoting freedom of movement, in reforming policing principles and practices, in ensuring that police forces are not used as paramilitary forces, and in addressing human rights abuses by the police. It welcomes the close co-operation with SFOR in this regard. The Council underlines that progress in many areas of peace implementation, including refugees and displaced person returns, freedom of movement, and economic reconstruction, are directly tied to improvements in public security.

2. The Council insists that the Entity and cantonal authorities ensure full compliance with the recommendations of the IPTF Commissioner, including recommendations to carry out official investigations and to suspend law enforcement officers from duty pending the outcome of these investigations.

3. The Council, recognising the important role that the IPTF plays in promoting confidence in public order mechanisms and the critical impact such confidence has on other aspects of civilian implementation, recommends that the IPTF operational structure be modified to provide maximum IPTF support for the most pressing civilian implementation needs. In particular, it recommends the creation of specialised IPTF units to train Bosnian police to address more effectively key public security issues, such as refugee returns; organised crime, drugs, corruption and terrorism; and public security crisis management (including crowd control).

4. The Council commends IPTF for the progress with the Police Development Programme, and demands that authorities in both Entities ensure its full and prompt implementation. To reflect the importance of training expertise within the IPTF to accelerate progress on reform, the Council invites contributing countries to provide a significant number of certified trainers, or police officers with specialised qualifications to be set by IPTF, in their contingents and the UN to provide these personnel with the appropriate logistics support. Noting that further progress on the Police Development Programme is compromised by the shortage of resources available to the IPTF, the Council calls upon member states to respond positively to IPTF's appeal for funds and equipment.

5. The Council welcomes the request of the authorities in Bosnia and Herzegovina that the United Nations Security Council extend the length of the mandate of the IPTF to continue to carry out the tasks set out in Annex 11 of the Peace Agreement. It welcomes the decision by the authorities in Bosnia and Herzegovina to request IPTF, in accordance with its mandate, to train the Entities' police forces in the detection of financial crime, smuggling and corruption, in co-operation with those international organisations involved in customs training.

6. The Council expresses concern that regulations applied to the entry and exit of persons, goods and vehicles to and from Bosnia and Herzegovina differ at the various border points. It invites the High Representative and the IPTF to assist the authorities in Bosnia and Herzegovina with drafting and adopting legislation regarding the mission and competencies of border police by 30 June 1998.

## V. Media

1. The Council reiterates its firm commitment to establish free and pluralistic media throughout Bosnia and Herzegovina. It supports the High Representative's overall media and telecommunications strategy. It recognises the importance of the role of objective media in the run-up to the 1998 elections and calls for PIC members and the High Representative to ensure funding and finalise work plans for media assistance for this timeframe.

2. The authorities in Bosnia and Herzegovina must adopt and fully implement new media and telecommunications laws and establish through legislation a permanent public body to enforce internationally-recognised standards of journalism and to allocate media

frequencies.

a.  In the meantime the media will be subject to regulation by a newly formed, interim Independent Media Standards and Licensing Commission (IMSLC) that will include a regulatory and disciplinary body that will refer the most serious breaches of media standards to the Media Support and Advisory Group (MSAG). Also, the Media Experts Commission will continue to operate in its supervisory role as established by the Provisional Election Commission until the IMSLC is fully functional. The Council invites the High Representative to report to the next Steering Board on the above-mentioned institutional arrangements.

The Council will consider adequately funding the IMSLC subject to detailed budget proposals by the High Representative.

b.  The Council calls for continued donor support, including by donation of programmes, for pluralistic and independent media in Bosnia and Herzegovina. Support will be conditional on strict compliance with the standards set by the IMSLC. The Council calls upon those responsible for the development of the OBN to remain committed - through contributions of money and other resources in 1998 - to creating an independent cross-Entity television network under Bosnian management. The Council also supports the continuation of the Free Elections Radio Network (FERN) by OSCE, which has thus far been funded by the Swiss Government.

## VI. Elections

1.  The Council welcomes the successful conduct of the 1997 municipal elections. It notes with concern problems in implementing the election results in certain municipalities. It insists on full implementation and underlines that the electoral process will not be complete until all elected officials have been installed in office and councils are functioning democratically. The Council recalls the 31 December 1997 deadline for meeting the requirements for final certification. Cases where the requirements of final certification are not fulfilled will be submitted to the OSCE Head of Mission and the High Representative for final and binding arbitration before 28 February 1998, the arbitration award to be immediately implemented. However, the authority of the Head of the OSCE Mission in his position as chair of the Provisional Election Commission and the High Representative to take measures, as laid down in the Rules and Regulations of the Provisional Election Commission, will extend beyond that date.

2.  The Council welcomes the effective conduct of the Republika Srpska Assembly elections and commends the OSCE for its important contribution to the electoral process. It insists that the newly elected Assembly convene within the constitutional timeframe and urges all parties in Republika Srpska to work together to establish a new government that will work in the best interests of all citizens of Republika Srpska and co-operate effectively in creating the necessary conditions for sustainable peace and economic growth.

3.  The Council urges the authorities in Bosnia and Herzegovina fully to implement their obligations under Annex 3 of the Peace Agreement. Underlining the importance of international involvement in future elections in Bosnia and Herzegovina, the Council expects the authorities in Bosnia and Herzegovina to invite the OSCE to supervise elections in Bosnia and Herzegovina in 1998. It therefore requests the OSCE to extend the mandate of its Mission in Bosnia and Herzegovina accordingly.

The Council urges the authorities in Bosnia and Herzegovina to extend an invitation to the OSCE Office for Democratic Institutions and Human Rights to observe the 1998 elections.

4.  The Council considers multi-ethnicity a fundamental goal for the consolidation of a stable and democratic Bosnia and Herzegovina. It therefore recognises the need to support the establishment of new multi-ethnic parties and to strengthen the existing ones. It invites the High Representative, the OSCE and the Council of Europe to take due account of this need when reviewing the draft Election Law. It urges the authorities in Bosnia and

Herzegovina rapidly to conclude their deliberations on the Law and adopt it as soon as possible. As an integral part of the Law, the Permanent Election Commission, which will include international members, must be established. The Permanent Election Commission will have the responsibility to conduct future elections in Bosnia and Herzegovina and will closely co-operate with the OSCE as long as the mandate of the OSCE exists. Until the Law is adopted and in force and the Permanent Election Commission is established and fully functional, elections will be conducted under the supervision and authority of the Provisional Election Commission and its Rules and Regulations.

5. The Council requests the Provisional Election Commission to oversee the establishment of the Permanent Election Commission and the hand-over of archives and other relevant documentation.

## VII. Economic Reconstruction and Reform

1. Reconstruction
   a. The Council notes that generous international reconstruction aid has continued to fuel economic recovery throughout 1997. The Council reminds the authorities in Bosnia and Herzegovina that economic assistance by the international community remains strictly conditional upon compliance with the Peace Agreement and subsequent obligations.

   The Council reconfirms its determination to apply conditionality to international reconstruction assistance, both by excluding non-compliant municipalities from reconstruction as well as by applying positive measures. In this context, the Council invites the High Representative to continue to advise donors on the performance of municipalities in the framework of the ETF and the RRTF.

   b. The Council expresses concern that the authorities in Bosnia and Herzegovina are placing reconstruction and sustained economic growth at risk by: the common institutions' shortcomings in addressing economic management; allowing political differences to slow down the pace of economic transition; taking insufficient action against fraud; the lack of transparency in the use of public funds; and the failure to establish Public Corporations.

2. Economic Management
   a. The Council considers it unacceptable that the package of essential legislation establishing the common institutions of economic management has not been implemented in full, nor has the state-level legislation, specified in the Sintra Declaration, been adopted. The Council notes with concern that the consequent lack of a policy framework could freeze the economic reconstruction programme, notably by preventing an IMF Standby Arrangement and World Bank adjustment lending, rendering the country vulnerable to financial crisis. The Council calls upon the authorities in Bosnia and Herzegovina to agree on a common approach on an IMF Standby Arrangement and to open negotiations with the IMF on the conclusion of such an arrangement without delay.
   b. The Council demands that the competent authorities in Bosnia and Herzegovina and the Entities:
      i. submit to the printers, by 20 December 1997, agreed designs for the common currency coupons and publicly announce the time-table for their introduction;
      ii. adopt the Foreign Investment Law by 20 December 1997;
      iii. apply the interim common customs tariff schedule by 20 December 1997;
      iv. adopt mutually consistent 1998 State and Entity budgets by 31 January 1998;
      v. adopt and start implementing the permanent Customs Code and Customs Tariff with no more than four different rates by 31 January 1998;
      vi. implement automatic monthly transfers from the Entity budgets covering the State's administrative expenditures and debt service, by 1 March 1998.

3. Economic Transition
   a. The Council emphasises the need to increase the pace of the transition to a market

economy, in order to create the conditions for sustained growth based on private investment, exports and privatisation.

b. The Council calls upon
- Republika Srpska to halt immediately the distribution of shares in state enterprises;
- the Federation to adopt, by 31 March 1998, legislation on the reform of the pension system drafted in consultation with the World Bank;
- both Entities to adopt, by 30 June 1998, a package of basic commercial legislation drafted in consultation with the European Commission and USAID.

4. Corruption and Diversion of Funds

a. The Council is deeply concerned by the potential for corruption and diversion of funds for unauthorised purposes as outlined in the two reports submitted by the European Commission's Customs and Fiscal Assistance Office (EC CAFAO) in the area of customs. Corrective measures should be taken against corruption. Foreign aid must not be a substitute for diverted state resources. Donors have to protect their assistance funds from possible misuse, as well as from having to compensate for misappropriation. The Council recognises that the lack of transparency and accountability of public finances, as attested in the Public Expenditure Review of the World Bank, undermines democratic values and the prospects for foreign investment in both Entities. It commends the recommendations set out in the EC CAFAO and World Bank reports and supports the policy of the High Representative to hold the competent authorities responsible for following-up on the reports. The Council deplores that persons compromised in the EC CAFAO reports should be promoted to new public positions before that follow-up has been completed.

b. The Council endorses the anti-fraud strategy presented by the High Representative. The following points are highlighted:

i. The criminal prosecution of corruption and diversion of funds is hampered by inadequate criminal procedures and prosecution capacities. The Council:
- welcomes the intention of the High Representative to form an Anti-Fraud Unit to assist the authorities in Bosnia and Herzegovina to identify illegal activity and co-ordinate international technical assistance. The unit will identify the need for IPTF assistance;
- urges members of the Peace Implementation Council to second experienced prosecutors, judges and other personnel to the Anti-Fraud Unit.

ii. Reconstruction funds managed by aid institutions lacking adequate control structures, and remaining outside the aid co-ordination structure, are vulnerable to fraud. The Council urges members to ensure that aid institutions using public funds participate in the co-ordination structure and use the services of existing Project Implementation Units as necessary.

iii. Legislative and administrative shortcomings in public finance generate opportunities for fraud in public revenue collection, budgetary spending and the activities of extra-budgetary institutions.

The Council agrees that the work of EC CAFAO, the World Bank, US Treasury and USAID is crucial for reducing such opportunities. The Council urges the authorities in Bosnia and Herzegovina to agree to an extension of EC CAFAO's assistance to cover all indirect taxes levied by the Entities or Bosnia and Herzegovina. The Council requires the Entities and Bosnia and Herzegovina to give EC CAFAO access to all relevant customs and fiscal records and documentation.

The Council calls upon neighbouring countries to co-operate with EC CAFAO and make available relevant customs documentation and data.

The Council requests that Bosnia and Herzegovina and the Entities, by 30 June 1998:

      a.  enact revised Organic Budget laws drafted in consultation with the World Bank;

      b.  adopt legislation on the creation of independent Supreme Audit Institutions reporting to the respective parliaments;

      c.  form parliamentary commissions, supported by a representative of the High Representative, for the review of the reports of the Supreme Audit Institution; and with the powers to: investigate all areas of public revenue collection, public expenditures and public utility accounts; publish its findings; and summon witnesses.

      d.  The existence of non-constitutional bodies and extra-budgetary funds diverts funds for unauthorised purposes. In this context, the Council welcomes the announcement by the Federation authorities that the so-called State Directorate for Strategic Reserves Sarajevo will be dissolved immediately.

The Council demands that the authorities in Bosnia and Herzegovina make public all accounts related to all public companies and corporations, and transfer surpluses to the relevant budgets.

5.  Public Corporations

    a.  Despite the efforts of the Chair of the Commission on Public Corporations, obstruction by officials in both Entities has blocked establishment of new Public Corporations and implementation of the Transportation Corporation. Only one temporary agreement has been signed by local authorities on telecommunications.

    b.  Because of the lack of co-operation between the Entities, and within the Federation, economic resources and infrastructure reconstruction are not being maximised and the quality of service is limited. The failure to restore railway traffic between the Entities is of great concern. The Council expects the authorities in Bosnia and Herzegovina to comply fully with the recommendations of the High Representative and the Chairman of the Commission on Public Corporations in this respect; in particular it calls on the authorities in Bosnia and Herzegovina to implement the recommendation on railways by 31 March 1998. It encourages international donors actively to support reconstruction of the Bosnian railway system through the Transportation Corporation.

    c.  The Council recalls that the Entities have an obligation under Annex 9 of the Peace Agreement to agree to the operation of transportation facilities by the Transportation Corporation. It urges the Entities to establish other joint public corporations, such as for the operation of utility, energy, postal and communications facilities, in accordance with the recommendations of the Commission on Public Corporations and the legal opinion of the High Representative. In the event of non-compliance, the High Representative will ask international bodies, such as the UCPTE, UIC, ITU, UPU and others, not to recognise the credentials of the representatives of Bosnia and Herzegovina.

6.  Economic Task Force

The Council confirms the crucial role of the Economic Task Force (ETF) in advising the High Representative on the economic aspects of peace implementation, including the application of political conditionality in reconstruction and development assistance, in close co-ordination with the RRTF. The Council is satisfied that co-ordination between the programmes of the major donors represented in the ETF is functioning well. It welcomes the High Representative's intention to create an ETF Secretariat for the purpose of improving and strengthening the action of sectoral Task Forces.

## VIII. Brcko

1.  The Council commends the Brcko Supervisor for his work and endorses his Orders and the amended Municipal Statute concerning the establishment of a multi-ethnic administration, judiciary and police force in Brcko. The Council welcomes the constructive participation of all the political parties in the formation of these multi-ethnic bodies and the progress made to date. It reinforces the need for full compliance by both

the Federation and Republika Srpska with all the tasks and timelines specified in the Supervisory Orders, and in accordance with the municipal election results, and notes that the outcome of the Arbitration Award in March 1998 will be significantly affected by the degree of compliance shown by the parties.

In particular, the Council takes note of the issues set out in the Annex on Brcko.

2.  The Council recognises the start, after two years of delays, of a peaceful, phased and orderly return process in Brcko and insists on full compliance with the Procedures for the Return. The Council underlines that all returnees to the area of supervision must abide by the laws of Republika Srpska, and recalls Republika Srpska's obligations to all residents of the Brcko opstina.

3.  The Council is concerned that the international community's funding commitments, with a few notable exceptions, have fallen far short of requirements. The Council calls upon the donor community to make available the necessary resources for the revitalisation of the Brcko economy as discussed at the Brcko conference on 4 and 5 November 1997.

## IX. Security and Arms Control

1.  Regional and Sub-Regional Stabilisation

    a.  The Council notes considerable progress in implementation of the Article II and Article IV Agreements during the past year. The Council appreciates the leading role played by the OSCE in this context.

    The Council welcomes the continuing development of the confidence- and security-building measures under Article II and the successful completion of declared reduction liabilities under the Article IV Agreement. It congratulates the Parties on the reduction of almost 6,600 pieces of armaments.

    The Council reminds the Parties that they must continue to pursue the full implementation of both Agreements in order further to increase military stability and transparency. The Council calls upon the Parties to cooperate actively with the OSCE Personal Representative to this end, including the acceptance of joint SFOR/OSCE inspections of heavy equipment currently stored in cantonments.

    b.  To advance the goals of peace and stability in south-eastern Europe, the Council underlines the importance of starting the Article V process without delay to build on the achievements reached under Articles II and IV. The Council agrees that steps in this context should not prejudice the integrity of existing arms control and CSBM agreements. In particular, Article V should not alter obligations under the CFE Treaty or under Articles II or.

    The Council is convinced that a wide circle of States present at the negotiation table would greatly enhance prospects for success. States not party to the Peace Agreement should participate on a voluntary basis according to their specific security environment. The Council affirms that Bosnia and Herzegovina must be represented by a single delegation appointed by the common institutions at all Article V related negotiations. A broad security dialogue would represent a significant element in establishing regional stability. Article V negotiations could also consider the development of CSBMs and other appropriate measures adapted to specific regional security challenges, and information exchange and verification activities could be agreed in line with regimes already in place. Such activities could be agreed between States which do not at present have the opportunity to exchange information with each other or inspect each other under legally binding arms control agreements. Guiding principles should include military significance, practicality and cost-effectiveness.

    The Council recommends:

- that the OSCE Chairman-in-Office undertake consultations with a view to appointing a Special Representative for Article V, if possible at the OSCE Ministerial Meeting in Copenhagen on 18 and 19 December 1997
- that at Copenhagen, Ministers give political impetus and direction to the Article V process. They should charge the Special Representative, when appointed, with starting Article V consultations on a precise mandate and initiating a process of negotiations as soon as possible with a view to achieving initial results by Summer 1998.

c. Standing Committee on Military Matters

The Council supports the principle that the Standing Committee on Military Matters (SCMM) as a common institution should be the focal point for all negotiations. All programmes will be based on equal participation of both Entities. The Council invites the High Representative to work closely with the SCMM Secretariat, and it welcomes the development of a long-term strategy for the SCMM. In particular, the Council supports the SCMM as a vehicle of mutual trust and openness between the military authorities of the Entities.

d. Military Expenditure

The Council expresses deep concern at the high level of military expenditure as a share of GDP by the Federation and by Republika Srpska. The Council demands that military expenditures in both Entities be reduced and made transparent.

e. Secure Environment for Civilian Implementation

The Council stresses that the presence of IFOR and SFOR has been the greatest single contributor to sub-regional security since the signing of the Peace Agreement and will continue to be in the short to medium term. It welcomes NATO's plans to consider options for a multinational follow-on force to SFOR which would provide a secure environment for civilian implementation in Bosnia and Herzegovina beyond June 1998.

f. Demining
   a. The Council finds it unacceptable that Bosnia and Herzegovina is a manufacturer of land mines, offering them for export. The authorities in Bosnia and Herzegovina must take steps to ensure that the facilities for their manufacture are dismantled, that all stocks are seized and destroyed and that mine information, especially that still held by the armed forces, is handed over to the Bosnia and Herzegovina Mine Action Centre. The Council invites the High Representative to report to the Steering Board on the measures taken by the authorities in Bosnia and Herzegovina after 31 March 1998.
   b. The Council welcomes Bosnia and Herzegovina's signing of the Ottawa Treaty. The authorities in Bosnia and Herzegovina are requested to adopt a detailed plan for the implementation of the Treaty obligations by 31 March 1998.
   c. The Council notes progress in demining policy and operations and welcomes the signature on 30 October 1997 by the Council of Ministers of the Memorandum of Understanding and Agreed Principles for Demining after 1 January 1998. The Council insists that the following measures are implemented in order to accelerate the demining process:
      i. Action to establish the Bosnia and Herzegovina Mine Action Centre (MAC) in accordance with the Agreed Principles, must be completed by 31 December 1997;
      ii. The Council supports the UN plan to hire, install, and train an ethnically-balanced staff of Bosnian managers to assure the timely and effective transfer of the UN-directed Mine Action Centre to Bosnian authorities, as mandated by the December 1996 London Peace

Implementation Conference. The Council urges that this process be completed as soon as possible.

   iii. The Entity Governments must establish their MACs by 31 March 1998, either by specific new legislation, or as part of an existing Ministry. Adequate resources must be made available to these bodies to appoint key staff and to operate according to the Agreed Principles;

   iv. The Entity Governments must use their armed forces, and provide the resources, to carry out effective demining operations as part of the overall demining programme.

  d. The Council welcomes SFOR's proposal for a nation-wide amnesty aimed at collecting weapons, including mines, held in private hands. The Council urges the Presidency of Bosnia and Herzegovina to declare this amnesty.

## X. Regional Aspects

1. Regional Co-operation

   The Council stresses the importance of a culture of regional co-operation in south-eastern Europe to foster peace, security, good neighbourliness and mutual understanding. The Council emphasises the need for a network of bilateral and regional contacts and co-operation.

   The Council takes note of reports by the Special Negotiator for Succession Issues and the Chairman of the Working Group for Ethnic and National Communities and Minorities.

2. Succession Issues
   a. Welcoming the continuing efforts of the Special Negotiator for Succession Issues, the Council recalls that the solution of outstanding problems of State succession as a result of the break-up of the former SFRY will contribute to economic and political stability in the region.
   b. The Council notes with concern that, six years after the break-up of the former SFRY, and despite many rounds of discussion on successive proposals for a settlement prepared by the High Representative's Special Negotiator, the five States have been unable by consensus to make any practical progress.
   c. The Council therefore calls upon the States to reach agreement on all outstanding succession issues within the framework of the Special Negotiator's draft of 13 November 1997.
   d. The Council calls upon the States as a first and immediate step, without waiting for an overall settlement, to reach agreement as soon as possible upon certain specific action, including effective access by the representatives of the five States to those records and data held by any of those States which could be relevant to the settlement of succession issues.
   e. The Council notes that after 31 March 1998 the High Representative will report to the Steering Board.

3. Ethnic and National Communities, Minorities
   a. The return of displaced persons and refugees is a prerequisite for establishing lasting peace in Bosnia and Herzegovina. The Republic of Croatia is crucially important in this context both as a country of origin for refugees abroad and as a host country for refugees from Bosnia and Herzegovina. The Council urges the Government of the Republic of Croatia to remove the administrative barriers for refugees wishing to return to, or to enter, the country. Particular attention should be given to resolving assets and personal documentation issues and to ensuring a climate of security and non-discrimination.

   The Council takes note of the Croatian Government's programme of 2

October 1997 designed to assist the establishment of trust, accelerated return and normalisation of living conditions in war affected regions of the Republic of Croatia. It invites the Croatian Government to continue on this track and to ensure compliance by local authorities.

b. The Council notes the statement by the UN Transitional Administrator for Eastern Slavonia, Baranja and Western Sirmium and welcomes the progress made in implementing the Erdut Agreement. The Council calls upon both the Government of the Republic of Croatia and the leadership of the local Serbs to co-operate fully with the OSCE Mission in Croatia. The Council attaches particular importance to the possible return of all refugees and displaced persons to their homes of origin, as well as to confidence-building measures in the region. In this context the Council welcomes the readiness of the Government of Croatia to accept a UN Civilian Police Support Group in the region.

c. The Council, welcoming the continuing efforts of the Chairman of the Working Group for Ethnic and National Communities and Minorities, takes note with increasing concern of escalating ethnic tensions elsewhere in the region, including in Kosovo and other areas. This has the potential further to de-stabilise the region. The Council calls upon those concerned to refrain from activities that might exacerbate existing difficulties and to strive for mutually acceptable solutions through responsible dialogue.

d. The Council calls upon UNHCR to develop, in co-operation with the authorities of Bosnia and Herzegovina, the Republic of Croatia, the Federal Republic of Yugoslavia and relevant international organisations, including the High Representative, a regional strategy for return of refugees for presentation to the Steering Board.

## XI. High Representative

1. The Council commends the efforts of the High Representative and his staff in pursuing the implementation of the Peace Agreement. It emphasises the important role of the High Representative in ensuring the creation of conditions for a self-sustaining peace in Bosnia and Herzegovina and his responsibility for co-ordination of the activities of the civilian organisations and agencies in Bosnia and Herzegovina.

The Council reiterates that the Steering Board of the PIC will provide the High Representative with political guidance on peace implementation. It will continue to meet monthly, inviting representatives of relevant international organisations to attend as appropriate.

The Council welcomes the High Representative's agreement to continue reporting in accordance with Article II. 1 (f) of Annex 10 to the Peace Agreement.

The Council encourages the High Representative to report regularly on compliance by individual municipalities with the provisions of the Peace Agreement.

2. The Council welcomes the High Representative's intention to use his final authority in theatre regarding interpretation of the Agreement on the Civilian Implementation of the Peace Settlement in order to facilitate the resolution of difficulties by making binding decisions, as he judges necessary, on the following issues:
   a. timing, location and chairmanship of meetings of the common institutions;
   b. interim measures to take effect when parties are unable to reach agreement, which will remain in force until the Presidency or Council of Ministers has adopted a decision consistent with the Peace Agreement on the issue concerned;
   c. other measures to ensure implementation of the Peace Agreement throughout Bosnia and Herzegovina and its Entities, as well as the smooth running of the

common institutions. Such measures may include actions against persons holding public office or officials who are absent from meetings without good cause or who are found by the High Representative to be in violation of legal commitments made under the Peace Agreement or the terms for its implementation.

## Office of the High Representative

Web Page Manager     Related Sites     Abbreviations     Sitemap

# EXHIBIT T



**U.S. DEPARTMENT of STATE**

Fact Sheet
Bureau of European and Eurasian Affairs
Washington, DC
November 18, 2005

## U.S. Assistance to Bosnia and Herzegovina - Fiscal Years 1995-2005

In support of implementation of the Dayton Accords, the U.S. Government has provided over $1.354 billion in bilateral assistance since 1995. From 1996 to 1998, U.S. contributions totaled nearly a quarter of a billion dollars annually in an effort to kick-start reconstruction and spur economic growth. Minority reintegration, infrastructure repair, and loans to restart businesses were also cornerstones activities in the early years.

More recently, from 2003 to 2005, bilateral assistance has exceeded $50 million annually. U.S. efforts in this period focus on deepening economic reform; strengthening Bosnia and Herzegovina's institutions for democracy and governance, including rule of law institutions; and building a viable state prepared to join Euro-Atlantic institutions.

| Cumulative U.S. Assistance 1995-2005 | $1,354.4 million |
|---|---|
| U.S. Assistance in FY 2005 (est.) | $51.0 million |
| EU Annual 2005 Assistance (Euros) | $121.4 million |

**Infrastructure Improvement and Business Development:** Beginning in 1995, infrastructure programs targeted structures that would help restart businesses and assist citizens to return to normal living. Over 1,600 infrastructure repair projects were completed, including the repair of rail and border bridges connecting Croatia to Bosnia and Herzegovina. A Business Development Program provided loans to help businesses restart operations. In its first seven years, 600 loans helped small and medium size enterprises. Reflows from this program have funded other activities such as deposit insurance, public sector accounting, agricultural production, and bank supervision.

**Minority Reintegration:** By 1998, the focus of international programs shifted from general infrastructure to efforts encouraging return of minority populations displaced during the war. The repair of water systems, schools, health clinics, roads and power infrastructure and the provision of small loans facilitated the return of over one million refugees and internally displaced persons, or about half of all persons displaced by the war, to their prewar homes. Many of these people returned to areas where they are the minority ethnic group. Additional U.S. funding has helped to identify nearly half of the war-time missing through DNA technology.

**Fiscal and Financial Sector Reform:** Since 1995, Bosnia and Herzegovina's GDP tripled and merchandise exports have increased tenfold; inflation rates have been held to below one percent over the past three years. U.S. assistance activities have helped Bosnia and Herzegovina create a Central Bank and introduce a single currency pegged to the Euro. The commercial banking system was privatized and has attracted substantial foreign investment. In January 2006, Bosnia and Herzegovina will introduce a state-level value added tax.

**Development of State Institutions:** U.S. assistance and expertise have enabled Bosnia and Herzegovina to establish a state-level Ministry of Defense, a national law enforcement agency, a single, unified intelligence service, a state border service, a customs service, a tax agency, a Central Bank, and a Deposit Insurance Agency, among many others institutions.

**Rule of Law:** U.S. assistance has contributed to the establishment of several key state-level judicial and prosecutorial bodies, including the State Prosecutor's Office and the State Court. The State Court contains special chambers for Organized Crime and War Crimes. Bosnia and Herzegovina has now been deemed ready by the International Criminal Tribunal for the Former Yugoslavia (ICTY) to hear war crimes cases in its domestic chamber and the first indictee has been turned over to the Bosnian court. Over 10,000 police officers at the state, entity, and local levels have been trained in modern policing methods and human rights.

**Democratic Elections, NGOs, and an Independent Media:** Bosnia and Herzegovina has held several successful, free and fair national and sub-state elections. In 2005, municipal elections were fully administered and funded by the government of Bosnia and Herzegovina; also in 2005, mayors were directly elected for the first time, substantially empowering municipalities and enhancing democracy. For the past five years, U.S. assistance supported Bosnia and Herzegovina's NGO community by helping improve their administration and sustainability. U.S. assistance has also strengthened local broadcasters and trained a majority of local journalists. The media in Bosnia and Herzegovina now expresses a wide range of political opinions, and a Communications Regulatory Agency, much like the FCC, is in place to monitor the media.

 BACK TO TOP

Published by the U.S. Department of State Website at http://www.state.gov maintained by the Bureau of Public Affairs.

# EXHIBIT U

Case 5:08-cv-01911-RMW    Document 22-3    Filed 08/29/2008    Page 98 of 72



# PRESS ROOM
U.S. DEPARTMENT OF THE TREASURY

## FROM THE OFFICE OF PUBLIC AFFAIRS

February 9, 2004
JS-1162

### Operation Balkan Vice III: TREASURY DESIGNATION OF Thirteen Individuals Obstructing the Dayton Peace Accords in Bosnia

Treasury Secretary John Snow announced today that Treasury's Office of Foreign Assets Control designated thirteen individuals under the Western Balkans Executive Order 13219, as amended by Executive Order 13304. Today's designation will allow the U.S. Treasury to block the assets in the U.S. of these individuals and to prohibit financial transactions with them by U.S. persons.

The 13 individuals were designated for obstructing, or the risk they pose for obstructing, or support for obstructing the Ohrid Framework Agreement of 2001 relating to Macedonia, and the Dayton Accords, including the decisions of the High Representative, relating to Bosnia and Herzegovina, or for assisting or supporting persons, or for having acted or purported to act on behalf of persons, designated pursuant to the order.

Those designated today were Dragan Basevic, Beljko Borovcanin, Samojko Djorda, Ljuban Ecim, Avdyl Jakupi, Radomir Kojic, Tomislav Kovac, Predrag Kujundzic, Milovan Marijanovic, Ivan Sarac, Mirko Saravic, Xhezair Shaqiri, and Menduh Thaci.

In a parallel action, at a news conference at 1 p.m. (7 a.m. EST) in Sarajevo, Bosnia and Herzegovina, Paddy Ashdown, the High Representative and EU Special Representative to Bosnia and Herzegovina, announced the blocking of the assets of 10 of the individuals in Bosnia and Herzegovina, the removal of three individuals from their positions as police officers and the removal of Mirko Sarovic from his position as vice president of the Serb Democratic Party.

Information available to the U.S. government indicates that, among other sanctioned activities, seven of these persons – Dragan Basevic, Beljko Borovcanin, Samojko Djorda, Ljuban Ecim, Tomislav Kovac, Ivan Sarac, and Mirko Sarovic – have used their positions in public office for the benefit of Milovan Bjelica, a person designated pursuant to E.O. 13219. Two of these persons – Radomir Kojic and Milovan Marijanovic – own or control commercial businesses suspected of providing support to persons indicted for war crimes (PIFWC's) by the International Criminal Tribunal for the former Yugoslavia or other persons designated pursuant to Executive Order 13219. Four of these persons – Avdyl Jakupi, Predrag Kujundzic, Xhezair Shaqiri, and Menduh Thaci – are leaders of armed militant groups opposed to the United Nations efforts to establish peace in Bosnia and Herzegovina.

Under Executive Order 13219, the President of the United States exercised his statutory authority to declare a national emergency in response to the unusual and extraordinary threat to national security and foreign policy of the U.S. by persons engaged in, or assisting, sponsoring, or supporting acts of obstructing implementation of the Dayton Peace Accords in Bosnia.

The United States has a vital interest in assuring peace and stability in Europe. In the Western Balkans, the U.S. is engaged, together with NATO Allies, the Organization for Security and Cooperation in Europe, UN missions, the EU, and other international organizations in an effort to achieve peace, stability, reconciliation, and democratic development and to facilitate the region's integration into the European mainstream. The U.S. views full implementation of the Dayton Peace Accords in Bosnia as critical to these efforts.

# EXHIBIT V



**Thursday,**
**May 29, 2003**

---

**Part VI**

# The President

**Executive Order 13304—Termination of Emergencies With Respect to Yugoslavia and Modification of Executive Order 13219 of June 26, 2001**

Federal Register

Vol. 68, No. 103

Thursday, May 29, 2003

# Presidential Documents

Title 3—

The President

Executive Order 13304 of May 28, 2003

## Termination of Emergencies With Respect to Yugoslavia and Modification of Executive Order 13219 of June 26, 2001

By the authority vested in me as President by the Constitution and the laws of the United States of America, including the International Emergency Economic Powers Act, as amended (50 U.S.C. 1701 *et seq.*) (IEEPA), the National Emergencies Act (50 U.S.C. 1601 *et seq.*) (NEA), section 5 of the United Nations Participation Act of 1945, as amended (22 U.S.C. 287c) (UNPA), and section 301 of title 3, United States Code,

I, GEORGE W. BUSH, President of the United States of America, have determined that the situations that gave rise to the declarations of national emergencies in Executive Order 12808 of May 30, 1992, and Executive Order 13088 of June 9, 1998, with respect to the former Socialist Federal Republic of Yugoslavia, have been significantly altered by the peaceful transition to democracy and other positive developments in Serbia and Montenegro (formerly the Federal Republic of Yugoslavia (Serbia and Montenegro)). Accordingly, I hereby terminate the national emergencies declared in those orders and revoke those and all related orders (Executive Orders 12810 of June 5, 1992, 12831 of January 15, 1993, 12846 of April 25, 1993, 12934 of October 25, 1994, 13121 of April 30, 1999, and 13192 of January 17, 2001). At the same time, and in order to take additional steps with respect to continuing, widespread, and illicit actions that obstruct implementation of the Ohrid Framework Agreement of 2001, relating to Macedonia, United Nations Security Council Resolution 1244 of June 10, 1999, relating to Kosovo, or the Dayton Accords or the Conclusions of the Peace Implementation Conference Council held in London on December 8–9, 1995, including the decisions or conclusions of the High Representative, the Peace Implementation Council or its Steering Board, relating to Bosnia and Herzegovina, including the harboring of individuals indicted by the International Criminal Tribunal for the former Yugoslavia, and the national emergency described and declared in Executive Order 13219 of June 26, 2001, I hereby order:

**Section 1.** Pursuant to section 202 of the NEA (50 U.S.C. 1622), termination of the national emergencies declared in Executive Order 12808 of May 30, 1992, and Executive Order 13088 of June 9, 1998, shall not affect any action taken or proceeding pending not finally concluded or determined as of the effective date of this order, or any action or proceeding based on any act committed prior to such date, or any rights or duties that matured or penalties that were incurred prior to such date. Pursuant to section 207 of IEEPA (50 U.S.C. 1706), I hereby determine that the continuation of prohibitions with regard to transactions involving any property blocked pursuant to Executive Orders 12808 or 13088 that continues to be blocked as of the effective date of this order is necessary on account of claims involving successor states to the former Socialist Federal Republic of Yugoslavia or other potential claimants.

**Sec. 2.** The Annex to Executive Order 13219 of June 26, 2001, is replaced and superseded in its entirety by the Annex to this order.

**Sec. 3.** (a) Section 1(a) and 1(b) of Executive Order 13219 are revised to read as follows:

"**Section 1.** (a) Except to the extent provided in section 203(b)(1), (3), and (4) of IEEPA (50 U.S.C. 1702(b)(1), (3), and (4)), and the Trade Sanctions Reform and Export Enhancement Act of 2000 (Title IX, Public Law 106–

387), and in regulations, orders, directives, or licenses that may hereafter be issued pursuant to this order, and notwithstanding any contract entered into or any license or permit granted prior to the effective date of this order, all property and interests in property of:

(i) the persons listed in the Annex to this order; and

(ii) persons designated by the Secretary of the Treasury, in consultation with the Secretary of State, because they are determined:

(A) to be under open indictment by the International Criminal Tribunal for the former Yugoslavia, unless circumstances warrant otherwise, or

(B) to have committed, or to pose a significant risk of committing, acts of violence that have the purpose or effect of threatening the peace in or diminishing the stability or security of any area or state in the Western Balkans region, undermining the authority, efforts, or objectives of international organizations or entities present in the region, or endangering the safety of persons participating in or providing support to the activities of those international organizations or entities, or

(C) to have actively obstructed, or pose a significant risk of actively obstructing, the Ohrid Framework Agreement of 2001 relating to Macedonia, United Nations Security Council Resolution 1244 relating to Kosovo, or the Dayton Accords or the Conclusions of the Peace Implementation Conference held in London on December 8–9, 1995, including the decisions or conclusions of the High Representative, the Peace Implementation Council or its Steering Board, relating to Bosnia and Herzegovina, or

(D) to have materially assisted in, sponsored, or provided financial, material, or technological support for, or goods or services in support of, such acts of violence or obstructionism or any person listed in or designated pursuant to this order, or

(E) to be owned or controlled by, or acting or purporting to act directly or indirectly for or on behalf of, any person listed in or designated pursuant to this order, that are or hereafter come within the United States, or that are or hereafter come within the possession or control of United States persons, are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in.

(b) I hereby determine that the making of donations of the type specified in section 203(b)(2) of IEEPA (50 U.S.C. 1702(b)(2)) by or to persons determined to be subject to the sanctions imposed under this order would seriously impair the ability to deal with the national emergency declared in this order, and hereby prohibit such donations as provided in paragraph (a) of this section.''

**Sec. 4.** New sections 7 and 8 are added to Executive Order 13219 to read as follows:

''**Sec. 7.** For those persons listed in the Annex to this order or determined to be subject to the sanctions imposed under this order who might have a constitutional presence in the United States, I have determined that, because of the ability to transfer funds or assets instantaneously, prior notice to such persons of measures to be taken pursuant to this order would render these measures ineffectual. I therefore determine that for these measures to be effective in addressing the national emergency declared in this order, there need be no prior notice of a listing or determination made pursuant to this order.

**Sec. 8.** The Secretary of the Treasury, in consultation with the Secretary of State, is authorized to determine, subsequent to the issuance of this order, that circumstances no longer warrant inclusion of a person in the Annex to this order and that such person is therefore no longer covered within the scope of the sanctions set forth herein. Such a determination shall become effective upon publication in the **Federal Register**.''

**Sec. 5.** The Secretary of the Treasury, in consultation with the Secretary of State, is hereby authorized to take such actions, including the promulgation

of rules and regulations, and to employ all powers granted to the President by IEEPA and UNPA, as may be necessary to carry out the purposes of this order. The Secretary of the Treasury may redelegate any of these functions to other officers and agencies of the United States Government. All agencies of the United States Government are hereby directed to take all appropriate measures within their authority to carry out the provisions of this order and, where appropriate, to advise the Secretary of the Treasury in a timely manner of the measures taken.

**Sec. 6.** Nothing contained in this order shall create any right or benefit or privilege, substantive or procedural, enforceable at law or in equity by any party against the United States, its agencies or instrumentalities, its officers or employees, or any other person.

**Sec. 7.** This order is effective at 12:01 a.m. eastern daylight time on May 29, 2003. This order shall be transmitted to the Congress and published in the **Federal Register**.

THE WHITE HOUSE,
*May 28, 2003.*

Billing code 3195–01–P

# EXHIBIT W



**Wednesday,
June 25, 2008**

**Part IV**

# The President

**Notice of June 24, 2008—Continuation of
the National Emergency With Respect to
the Western Balkans**

Federal Register

Vol. 73, No. 123

Wednesday, June 25, 2008

# Presidential Documents

Title 3—

The President

Notice of June 24, 2008

## Continuation of the National Emergency With Respect to the Western Balkans

On June 26, 2001, by Executive Order 13219, I declared a national emergency with respect to the Western Balkans pursuant to the International Emergency Economic Powers Act (50 U.S.C. 1701–1706) to deal with the unusual and extraordinary threat to the national security and foreign policy of the United States constituted by the actions of persons engaged in, or assisting, sponsoring, or supporting (i) extremist violence in the Republic of Macedonia and elsewhere in the Western Balkans region, or (ii) acts obstructing implementation of the Dayton Accords in Bosnia or United Nations Security Council Resolution 1244 of June 10, 1999, in Kosovo. I subsequently amended that order in Executive Order 13304 of May 28, 2003.

Because the actions of persons threatening the peace and international stabilization efforts in the Western Balkans continue to pose an unusual and extraordinary threat to the national security and foreign policy of the United States, the national emergency declared on June 26, 2001, and the measures adopted on that date and thereafter to deal with that emergency, must continue in effect beyond June 26, 2008. Therefore, in accordance with section 202(d) of the National Emergencies Act (50 U.S.C. 1622(d)), I am continuing for 1 year the national emergency with respect to the Western Balkans.

This notice shall be published in the **Federal Register** and transmitted to the Congress.

THE WHITE HOUSE,
*June 24, 2008.*

[FR Doc. 08–1392

Filed 6–24–08; 1:07 pm]

Billing code 3195–W8–P

# EXHIBIT X

L 43/22          EN          Official Journal of the European Union          19.2.2008

# COUNCIL JOINT ACTION 2008/130/CFSP

## of 18 February 2008

## extending the mandate of the European Union Special Representative in Bosnia and Herzegovina

THE COUNCIL OF THE EUROPEAN UNION,

Having regard to the Treaty on European Union, and in particular Articles 14, 18(5) and 23(2) thereof,

Whereas:

(1)   On 7 February 2007, the Council adopted Joint Action 2007/87/CFSP ([1]) amending and extending the mandate of the European Union Special Representative (EUSR) in Bosnia and Herzegovina.

(2)   On 18 June 2007, the Council adopted Decision 2007/427/CFSP ([2]) appointing Mr Miroslav Lajčák as the EUSR in Bosnia and Herzegovina.

(3)   On the basis of a review of Joint Action 2007/87/CFSP, the mandate of the EUSR should be extended for a 12-month period.

(4)   The EUSR's mandate should be implemented in coordination with the Commission in order to ensure consistency with other relevant activities falling within Community competence.

(5)   The EUSR will implement his mandate in the context of a situation which may deteriorate and could harm the Common Foreign and Security Policy objectives set out in Article 11 of the Treaty,

HAS ADOPTED THIS JOINT ACTION:

### Article 1

### European Union Special Representative

The mandate of Mr Miroslav Lajčák as the European Union Special Representative (EUSR) in Bosnia and Herzegovina (BiH) is hereby extended until 28 February 2009.

### Article 2

### Policy objectives

The mandate of the EUSR shall be based on the policy objectives of the EU in BiH. These centre around continued

([1])   OJ L 35, 8.2.2007, p. 35. Joint Action as amended by Joint Action 2007/748/CFSP of 19 November 2007 (OJ L 303, 21.11.2007, p. 38).
([2])   OJ L 159, 20.6.2007, p. 63.

progress in the implementation of the General Framework Agreement for Peace (GFAP) in BiH, in accordance with the Office of the High Representative's Mission Implementation Plan, and in the Stabilisation and Association Process, with the aim of a stable, viable, peaceful and multiethnic BiH, co-operating peacefully with its neighbours and irreversibly on track towards EU membership.

### Article 3

### Mandate

In order to achieve the policy objectives of the EU in BiH, the mandate of the EUSR shall be to:

(a)   offer the EU's advice and facilitation in the political process;

(b)   promote overall EU political coordination and contribute to reinforcement of internal EU coordination and coherence in BiH, including through briefings to EU Heads of Mission and through participation in, or representation at, their regular meetings, through chairing a coordination group composed of all EU actors present in the field with a view to coordinating the implementation aspects of the EU's action, and through providing them with guidance on relations with the BiH authorities;

(c)   promote overall EU coordination of, and give local political direction to, EU efforts in tackling organised crime, without prejudice to the European Union Police Mission (EUPM)'s leading role in the coordination of policing aspects of these efforts and to the ALTHEA (EUFOR) military chain of command;

(d)   without prejudice to the military chain of command, offer the EU Force Commander political guidance on military issues with a local political dimension, in particular concerning sensitive operations, relations with local authorities and relations with the local media;

(e)   consult with the EU Force Commander before taking political action that may have an impact on the security situation;

(f) ensure consistency and coherence of EU action towards the public. The EUSR spokesperson shall be the main EU point of contact for BiH media on Common Foreign and Security Policy/European Security and Defence Policy (CFSP/ESDP) issues;

(g) maintain an overview of the whole range of activities in the field of the rule of law and in this context provide the Secretary-General/High Representative (SG/HR) and the Commission with advice as necessary;

(h) provide the Head of Mission of the EUPM with local political guidance. The EUSR and the Civilian Operation Commander shall consult each other as required;

(i) as part of the international community's and the BiH authorities' broader approach to the rule of law, and drawing upon the EUPM's provision of technical policing expertise and assistance in this respect, support the preparation and implementation of police restructuring;

(j) provide support for a reinforced and more effective BiH criminal justice/police interface, in close liaison with the EUPM;

(k) consult with the Head of the EUPM before taking political action that may have an impact on the police and security situation;

(l) as far as activities under Title VI of the Treaty, including Europol, and related Community activities are concerned, provide the SG/HR and the Commission with advice as necessary, and take part in the required local coordination;

(m) with a view to coherence and possible synergies, continue to be consulted on priorities for Instrument of Pre-accession Assistance;

(n) support planning for a reinforced EUSR office in the context of the closure of the Office of the High Representative (OHR), including advice on public information aspects of the transition, in close coordination with the Commission;

(o) contribute to the development and consolidation of respect for human rights and fundamental freedoms in BiH, in accordance with EU human rights policy and EU Guidelines on Human Rights;

(p) engage with relevant BiH authorities on their full co-operation with the International Criminal Tribunal for the Former Yugoslavia (ICTY);

(q) provide political advice and facilitation in the process of constitutional reform;

(r) without prejudice to the applicable chains of command, help to ensure that all EU instruments in theatre act coherently to attain the EU's policy objectives.

## Article 4

### Implementation of the mandate

1. The EUSR shall be responsible for the implementation of the mandate acting under the authority and operational direction of the Secretary-General/High Representative (SG/HR).

2. The Political and Security Committee (PSC) shall maintain a privileged link with the EUSR and shall be the primary point of contact with the Council. The PSC shall provide the EUSR with strategic guidance and political direction within the framework of the mandate.

## Article 5

### High Representative

The role of the EUSR shall not in any way prejudice the mandate of the High Representative in BiH, including his coordinating role with regard to all activities of all civilian organisations and agencies as set out in GFAP and subsequent Peace Implementation Council (PIC) conclusions and declarations.

## Article 6

### Financing

1. The financial reference amount intended to cover the expenditure related to the mandate of the EUSR in the period from 1 March 2008 to 28 February 2009 shall be EUR 2 900 000.

2. The expenditure financed by the amount stipulated in paragraph 1 shall be eligible as from 1 March 2008. The expenditure shall be managed in accordance with the procedures and rules applicable to the general budget of the European Communities with the exception that any pre-financing shall not remain the property of the Community.

3. The management of the expenditure shall be subject to a contract between the EUSR and the Commission. The EUSR shall be accountable to the Commission for all expenditure.

### Article 7

#### Constitution and composition of the team

1. Within the limits of his mandate and the corresponding financial means made available, the EUSR shall be responsible for constituting his team in consultation with the Presidency, assisted by the SG/HR, and in full association with the Commission. The team shall include the expertise on specific policy issues as required by the mandate. The EUSR shall keep the SG/HR, the Presidency and the Commission informed of the composition of his team.

2. Member States and institutions of the European Union may propose the secondment of staff to work with the EUSR. The salary of personnel who are seconded by a Member State or an institution of the EU to the EUSR shall be covered by the Member State or the institution of the EU concerned respectively. Experts seconded by Member States to the General Secretariat of the Council may also be posted to the EUSR. International contracted staff shall have the nationality of an EU Member State.

3. All seconded personnel shall remain under the administrative authority of the sending Member State or EU institution and shall carry out their duties and act in the interest of the mandate of the EUSR.

### Article 8

#### Privileges and immunities of the EUSR and his staff

The privileges, immunities and further guarantees necessary for the completion and smooth functioning of the mission of the EUSR and the members of his staff shall be agreed with the host party/parties as appropriate. Member States and the Commission shall grant all necessary support to such effect.

### Article 9

#### Security of EU classified information

The EUSR and the members of his team shall respect security principles and minimum standards established by Council Decision 2001/264/EC of 19 March 2001 adopting the Council's security regulations (¹), in particular when managing EU classified information.

### Article 10

#### Access to information and logistical support

1. Member States, the Commission and the General Secretariat of the Council shall ensure that the EUSR is given access to any relevant information.

---

(¹) OJ L 101, 11.4.2001, p. 1. Decision as last amended by Decision 2007/438/EC (OJ L 164, 26.6.2007, p. 24).

2. The Presidency, the Commission and/or Member States, as appropriate, shall provide logistical support in the region.

### Article 11

#### Security

In accordance with the EU's policy on the security of personnel deployed outside the EU in an operational capacity under Title V of the Treaty, the EUSR shall take all reasonably practicable measures, in conformity with his mandate and the security situation in his geographical area of responsibility, for the security of all personnel under his direct authority, notably by:

(a) establishing a mission-specific security plan based on guidance from the General Secretariat of the Council, including mission-specific physical, organisational and procedural security measures, governing management of the secure movement of personnel to, and within, the mission area, as well as management of security incidents and including a mission contingency and evacuation plan;

(b) ensuring that all personnel deployed outside the EU are covered by high risk insurance as required by the conditions in the mission area;

(c) ensuring that all members of his team to be deployed outside the EU, including locally contracted personnel, have received appropriate security training before or upon arriving in the mission area, based on the risk ratings assigned to the mission area by the General Secretariat of the Council;

(d) ensuring that all agreed recommendations made following regular security assessments are implemented and providing the SG/HR, the Council and the Commission with written reports on their implementation and on other security issues within the framework of the mid-term and mandate implementation reports.

### Article 12

#### Reporting

The EUSR shall regularly provide the SG/HR and the PSC with oral and written reports. The EUSR shall also report as necessary to working groups. Regular written reports shall be circulated through the COREU network. Upon recommendation of the SG/HR or the PSC, the EUSR may provide the General Affairs and External Relations Council with reports.

19.2.2008    EN    Official Journal of the European Union    L 43/25

*Article 13*

**Coordination**

1.    The activities of the EUSR shall be coordinated with those of the Presidency and the Commission, as well as those of other EUSRs active in the region as appropriate. The EUSR shall provide Member States' missions and Commission's delegations with regular briefings. In the field, close liaison shall be maintained with the Presidency, Commission and Member States' Heads of Mission who shall make best efforts to assist the EUSR in the implementation of the mandate. The EUSR shall also liaise with other international and regional actors in the field.

2.    In support of EU crisis management operations, the EUSR, with other EU actors present in the field, shall improve the dissemination and sharing of information by EU actors in theatre with a view to achieving a high degree of common situation awareness and assessment.

*Article 14*

**Review**

The implementation of this Joint Action and its consistency with other contributions from the European Union to the region shall be kept under regular review. The EUSR shall present the SG/HR, the Council and the Commission with a progress report before the end of June 2008 and a compre-hensive mandate implementation report by mid-November 2008. These reports shall form a basis for evaluation of this Joint Action in the relevant working groups and by the PSC. In the context of overall priorities for deployment, the SG/HR shall make recommendations to the PSC concerning the Council's decision on renewal, amendment or termination of the mandate.

*Article 15*

**Entry into force**

This Joint Action shall enter into force on the date of its adoption.

*Article 16*

**Publication**

This Joint Action shall be published in the *Official Journal of the European Union*.

Done at Brussels, 18 February 2008.

*For the Council*
*The President*
D. RUPEL