E-filed:   10/15/09

**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

ANTHONY SARKIS,

Plaintiff,

v.

MIROSLAV LAJCAK; OFFICE OF THE
HIGH REPRESENTATIVE,

Defendants.

No. C-08-01911 RMW

ORDER GRANTING MOTION TO DISMISS

**[Re Docket No. 21]**

Plaintiff Anthony Sarkis has filed suit against the Office of the High Representative for Bosnia and Herzogovina (the "OHR") and Ambassador Miroslav Lajcák, in his official capacity as the High Representative, for wrongful termination. The complaint asserts twenty claims arising out of the termination of Sarkis' employment. Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) on the basis of claimed sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §1330(a), for lack of personal jurisdiction under Rule 12(b)(2), and for insufficient service of process under Rule 12(b)(5). Sarkis opposes the motion. The court has reviewed the papers and considered the arguments of counsel. For the following reasons, the court grants the motion to dismiss for lack of personal jurisdiction and,

1  because this issue is dispositive, the court does not reach the remaining asserted grounds.

2  ## I.  BACKGROUND

3  ### A.      The Office of the High Representative

4        The Office of the High Representative for Bosnia and Herzogovina was created under the

5  1995 Dayton Peace Accords, formally referred to as the General Framework Agreement for Peace

6  ("GFAP") to oversee the implementation of the civilian aspects of the Peace Agreement on behalf of

7  the international community.  It is the chief civilian peace implementation agency in Bosnia and

8  Herzegovina.  It is a separate legal entity from the parties to the GFAP, and it consists of diplomats

9  seconded by the governments of the Peace Implementation Council countries, international experts

10 and national staff from Bosnia.  The High Representative is "the final authority in theater regarding

11 interpretation of [GFAP, Annex 10] on the civilian implementation of the peace settlement."

12 Cymrot Decl. Ex. D.  The OHR and its High Representative work "with the people and institutions

13 of Bosnia and Herzegovina and the international community to ensure that Bosnia and Herzegovina

14 evolves into a peaceful and viable democracy on course for integration into Euro-Atlantic

15 institutions."   Sarkis Decl. Ex. B.  *Id.*  The OHR is headquartered in Sarajevo, Bosnia and

16 Herzegovina.  Complaint ¶9.

17 ### B.      The OHR's Contacts with Sarkis and California

18       The OHR advertised an open position for a "Legal Counsel" in *The Economist*, a global

19 weekly news magazine.  Compl. ¶ 12.  Anthony Sarkis read the advertisement in California.  *Id.*  He

20 applied for the position from California, and conveyed this to the OHR by displaying California

21 contact information in his cover letter and on his resume.  *Id.* ¶ 14.

22       The OHR responded in February 2003 by emailing Sarkis and proposing to interview him

23 over the phone.  *Id.* ¶ 15.  The parties conducted the interview on February 25, 2003, with Ian

24 Campbell (then-Deputy High Representative and head of the OHR's Legal Department) speaking for

25 the OHR.  *Id.* ¶¶ 15-16.  Gilbert Bruns, the director's the OHR's Resources Department, and Sunita

26 Samarah, the OHR's principal Personnel Officer, also participated in the interview.  *Id.* ¶¶ 18-19.

27 After the interview, Sarkis provided contact information for a person in Los Angeles to serve as a

28

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                                    2

**United States District Court**
For the Northern District of California

job reference.  *Id.* ¶ 20.  The OHR also called the job reference and spoke for a long time.  *Id.*

Samarah offered the Legal Counsel position to Sarkis by email on March 4, 2003.  *Id.* ¶ 21.

Sarkis read the offer and responded to Samarah's email voicing concerns about the job's duration.

*Id.* ¶ 23.  Sarkis and Samarah again spoke over the phone on March 5, 2003, and Samarah allayed

Sarkis's worries.  *Id.* ¶¶ 23-25.  Sarkis promptly signed the OHR's employment contract in California

and faxed it to the OHR.  *Id.* ¶¶ 26-27.

Over the following month, Sarkis coordinated his travel plans with the OHR and the OHR

purchased Sarkis' airfare to Bosnia.  *Id.* ¶ 28. Sarkis also engaged in two email exchanges with the

OHR regarding various terms of the employment agreement related to the job's duration.  *See id.* ¶¶

29-37.  One such exchange was with Ian Doig, the head of the OHR's Personnel Department.  *Id.* ¶

33.  Doig declares that at the time of the emails, he was aware that Sarkis resided in California.

Decl. of Ian Doig, Docket No. 31-2 ¶ 3.  Indeed, one of Doig's reasons for wanting to hire Sarkis

was to get "one of those sophisticated West Coast lawyers," and he shared his desire with other

members of the OHR.  *Id.*  From 2003 through 2007, Sarkis and the OHR entered into written

annual employment contracts.  Compl. ¶¶ 39-45.  Plaintiff alleges that the employment arrangement

could only be terminated for cause.

### C.   Sarkis's Work for the OHR and Eventual Termination

Sarkis began working for the OHR as a legal counsel, but was promoted to the position of

"General Counsel" in mid-2005.  Compl. ¶ 56.  From 2003 through 2007, Sarkis and the OHR

entered into written annual employment contracts.  Compl. ¶¶ 39-45.  Sarkis handled a number of

sensitive tasks and led negotiations with multiple foreign governments on the OHR's behalf.  *See id.*

¶¶ 54, 57-58.  Sarkis never received a critical or negative annual performance evaluation.  *Id.* ¶ 60.

Nevertheless, on April 13, 2007, the OHR terminated Sarkis' employment.  *Id.* ¶ 53.  The

OHR did not state a reason for doing so.  *Id.*  It also expelled Sarkis from the OHR's premises and

banned him from returning.  *Id.*  Sarkis believes he was fired in retaliation for providing frank legal

advice.  *See id.*  His lawsuit claims that the OHR breached its agreements with him, committed

promissory fraud in its employment negotiations with him, inflicted emotional distress on him and

United States District Court

For the Northern District of California

1    libeled him in connection with his firing and expulsion.

2         **D.    Defendant Lajcák's Involvement**

3         Defendant Lajcák was not personally involved in any of the underlying events and has been

4    named solely in his official capacity as the High Representative.  He succeeded to the position of

5    High Representative after the events underlying plaintiff's termination.  He has no material contacts

6    with California.

7                                    **II.    ANALYSIS**

8         Defendants move to dismiss under Rule 12(b)(2) for lack of personal jurisdiction.  The

9    parties dispute whether the defendants have sufficient minimum contacts with California such that

10   the exercise of personal jurisdiction over the defendants would be reasonable.  According to Sarkis,

11   the OHR availed itself of California when it advertised the Legal Counsel position in *The Economist*

12   which Sarkis read in California, contacted him in California, interviewed him over the telephone

13   when he was in California, paid for his travel from California, and deposited some of his pay in a

14   California account.  Based on these acts, Sarkis argues that the OHR has sufficient contacts with

15   California to permit it to be sued in California.  Defendants disagree.

16        Where there is no applicable federal statute governing personal jurisdiction, the court

17   applies the long-arm statute of the forum state.  *Yahoo! Inc. v. La Ligue Contre Le Racisme et*

18   *L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc).  California's long arm statute is

19   coextensive with federal due process requirements so the jurisdictional analysis reduces to whether

20   the exercise of jurisdiction over the nonresident defendants is constitutional.  *Id.*  Under

21   *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), a court may exercise personal

22   jurisdiction over a nonresident defendant consistent with due process only if the defendant has

23   sufficient minimum contacts with the forum state that the exercise of jurisdiction does not offend

24   traditional notions of fair play and substantial justice.  The Ninth Circuit analyzes specific

25   jurisdiction according to a three-prong test:

26        (1) the non-resident defendant must purposefully direct his activities or consummate
          some transaction with the forum or resident thereof, or perform some act by which
27        he purposefully avails himself of the privilege of conducting activities in the forum
          thereby invoking the benefits and protections of its laws;

28

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                      4

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

(2) the claim arises out of or results from the defendant's forum-related activities, and

(3) the exercise of jurisdiction must be reasonable.

*Yahoo!*, 433 F.3d at 1205-06, *citing Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

The mere existence of a contract between Sarkis and the OHR does not determine this issue. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).  Instead, the court must take a "highly realistic" approach and evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether the OHR availed itself of California.  *Id.*  This "qualitative analysis" must determine whether the OHR could have reasonably anticipated being haled into court in California. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

Realistically, the court cannot conclude that the OHR could have anticipated in 2003 when it placed an ad in *The Economist* that it would be sued in California.  The OHR did not specifically target California to recruit an attorney, although it was pleased when it found a "sophisticated West Coast lawyer" to join its operations.  On the contrary, it advertized in *The Economist*, a magazine with a global circulation.  Placing an advertisement in an international publication seeking to hire an employee for a position out of state does not rise to the level of "purposeful availment."  *Katerndahl v. Brindenberg Securities A/S*, 1996 U.S. Dist. Lexis 22024 (N.D. Cal. 1996); *Johnston v. Frank E. Basil*, 803 F.2d 418, 420 (11th Cir. 1986).  Similarly, the fact that there were telephone calls and e-mail communications with plaintiff in California in the course of the negotiations leading to the formation of the initial employment contract is not sufficient.  *Katerndahl*, at *11; *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985); *Markey v. Kudelski S.A.*, 2007 WL 1110787, *5 (S.D. Cal. 2007).  Notably, after the initial contract was entered, it was performed outside of California, in Bosnia, as were the succeeding annual contracts over the next four years.

Sarkis contends that particular actions by the OHR constitute purposefully directing its activities toward California, sufficient to justify the exercise of jurisdiction over it.  For example, Sarkis argues that "[t]he situs of OHR's primary performance on all its contracts with Plaintiff was

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                                          5

**United States District Court**
For the Northern District of California

1    California" because "on a monthly basis, the OHR transmitted nearly 66% of Plaintiff's monthly

2    compensation package to his California Wells Fargo bank account." Opp. at 26.  Sarkis' argument is

3    not persuasive.  Sending payments to California when the material and essentially all of the

4    performance of the contract was in Bosnia is not sufficient to justify the exercise of personal

5    jurisdiction in California.  *See Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986)

6    (given that the material performance of the contract occurred outside of the forum, the fact that

7    payments were made to plaintiff in the forum did not "weigh heavily" in the jurisdictional

8    determination).  Without elaboration, Sarkis cites *Markey* in support of his argument, presumably

9    because the court there noted that the plaintiff had accepted payment from defendant-employer in

10   Tennessee.  It is not clear from the discussion in *Markey* whether the defendant was in Tennessee

11   when payment was made or whether plaintiff was in Tennessee when he accepted payment, but in

12   any event, *Markey* does not support plaintiff's position.  To the contrary, *Markey* found no personal

13   jurisdiction in a wrongful termination action on facts similar to those presented here – a foreign

14   employer, limited contacts with California, and work performance outside of California.

15       Sarkis also argues that the OHR hired him because he is admitted to the California bar, that

16   this was important to the OHR in its decision to hire him, and that this shows the OHR's availment

17   of the benefits of California.  Sarkis Decl. ¶ 30.  Sarkis also points out that the OHR stressed his

18   obligations as a member of the California bar in its rejection of his settlement demand.  *Id.*, Ex. AA.

19   The court is not persuaded that this Sarkis' membership in the California bar is sufficient to bear any

20   jurisdictional weight.  *Markey*, although cited by Sarkis, offers him no support.

21       Sarkis also argues that in tort cases, the court applies an "effects" test, such that the

22   "purposeful availment" prong may be met where a defendant's tortious acts have an effect in the

23   forum.  Opp. at 22.  A foreign act, aimed at the forum state and having an effect in the forum state,

24   may give rise to personal jurisdiction over the foreign actor.  *Calder v. Jones*, 465 U.S. 783 (1984);

25   *Bancroft & Masters Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087-88 (9th Cir. 2000).  The

26   gravamen of Sarkis' claim is that he was induced to enter into an employment arrangement based on

27   representations that the position could be terminated only for cause, and he was subsequently

28

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                    6

terminated without cause four years later in Bosnia.  Following his termination, Sarkis returned to

California.  Even assuming, for the sake of analysis, that some effects of the allegedly tortious

misrepresentations were in California, Sarkis has not established that such effects were

"jurisdictionally sufficient."  *Yahoo!*, 433 F.3d at 1207.  Sarkis contends that the OHR made

misrepresentations to him in California (i.e., that termination would only be for cause), which

plaintiff relied on to his detriment by leaving California and relocating overseas foregoing "the

opportunity to locate less arbitrary employment in California."  Opp. at 23.  This same argument was

rejected by the Sixth Circuit in *Conti v. Pneumatic Products Corp.*, 977 F.2d 978 (6th Cir. 1992), a

wrongful termination case involving similar facts.

In *Conti*, an Ohio plaintiff responded to an ad in the Wall Street Journal and submitted his

resume to a recruiting firm in Florida.  Thereafter, a company in Florida enlisted the recruiting firm

to fill a position in Florida, the recruiter contacted plaintiff and negotiations commenced.

Ultimately, plaintiff accepted the resulting offer of employment, relocated to Florida where he

performed the job, and was thereafter terminated.  Plaintiff sued in Ohio, alleging that

representations made to him in the course of the negotiations were fraudulent and that he had relied

to his detriment in accepting the offer and relocating.  The district court found that there was no

personal jurisdiction over the Florida defendant, and the Sixth Circuit affirmed, both on the

purposeful availment prong and on the basis that exercising jurisdiction over the out-of-state

defendant in these facts would not be reasonable.  *Conti*, 977 F.2d at 983.  The present case is not

materially different.  Moreover, similar wrongful termination cases are in accord.  *See Houseman v.*

*DPI Food Prods. Inc.*, 2005 WL 2656123 (E.D. Ky.) (no personal jurisdiction over out-of-state

employer who recruited plaintiff to work out-of-state); *Condon v. Flying Puck, LLC*, 35 Fed. Appx.

173, 174 (6th Cir. 2002) (same).

Turning to the second prong of the analysis, most of Sarkis' claims do not arise out of or

result from the California contacts.  Sarkis' claims arise out of the termination of his employment,

outside of California, in 2007 some four years after his employment commenced.  The termination

does not "arise out of" or result from the defendants' forum-related activities, specifically the pre-

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    employment discussions and negotiations at the outset of the parties' relationship.

2           Finally, the court finds that the exercise of personal jurisdiction over the defendants in this

3    case would not be reasonable.  In considering whether the exercise of personal jurisdiction would be

4    reasonable, the court considers the following seven factors:

5           1) the extent of the defendant's purposeful interjection into the forum state's affairs;

6           2) the burden on the defendant in defending in the forum;

7           3) the extent of conflict with the sovereignty of the defendant's state;

8           4) the forum state's interest in adjudicating the dispute;

9           5) the most efficient judicial resolution of the controversy;

10          6) the importance of the forum to the plaintiff's interest in convenient and effective relief;

11          and

12          7) the existence of an alternate forum.

13   *Menken v. Emm*, 503 F.3d 1050, 1058 (9th Cir. 2007), *citing CE Distrib. LLC. v. New Sensor Corp.*,

14   380 F.3d 1107, 1112 (9th Cir. 2004).  These factors generally weigh in favor of the defendants.

15          First, there was little purposeful injection into the forum state's affairs and none by defendant

16   Lajcák.

17          Second, defendants would face some burden in defending a lawsuit in a foreign country.

18   *Asahi Metal Indus. Co. v. Superior* Court, 480 U.S. 102, 114 (1987); *Core-Vent Corp. v. Nobel*

19   *Indus. AB*, 11 F.3d 1482, 1488 (9th Cir. 1993).  Although modern technology has reduced the

20   burden of litigating in a distant forum to some degree, this factor weighs in defendants' favor.

21          The third factor regarding the extent of conflict with the sovereignty of the defendant's state

22   is difficult to assess.  Defendants contend that the exercise of jurisdiction would "conflict with

23   OHR's mission;" Sarkis contends that Bosnia and Herzogovina "has declared its disinterest in this

24   matter."  Opposition at 29 n.54.  The court weighs this factor in favor of defendants, but not

25   dispositively so.

26          Fourth, California's interest in adjudicating the dispute is modest, but weighs slightly in

27   plaintiff's favor.  Although this action involves a California plaintiff and California generally has an

28

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                                          8

United States District Court

For the Northern District of California

1   interest in protecting the interests of its residents, that interest is lessened to some degree where

2   plaintiff resided outside of California at the time of the materially significant acts giving rise to the

3   action.  Sarkis contends that California has a substantial interest in the action because California law

4   and public policy have been violated, yet cites no authority that California's public policy relating to

5   employment relationships applies to employment contracts with non-California employers that are

6   performed (and allegedly breached) outside of the state.

7       Fifth, the efficient resolution of the controversy factor focuses on where the witnesses and

8   evidence are likely to be located.  *Menken*, 503 F.3d at 1060-61.  With the exception of Sarkis

9   himself, it appears that no witnesses or evidence are in California.  Plaintiff has identified four US

10  resident witnesses, three UK resident witnesses and one witness who is a resident of Moldova

11  (Sarkis Decl. ¶37); defendants contend that the relevant witnesses and evidence are in Bosnia.

12  Reply at 19.  This factor does not weigh in Sarkis' favor.

13      With regard to the sixth factor – the importance of the forum to plaintiff's interest in

14  convenient and effective relief – Sarkis focuses solely on his own convenience.  Opp. at 29 n.54.

15  This factor does not  focus on plaintiff's convenience, however, and plaintiff's convenience is given

16  little weight.  *Menken*, 503 F.3d at 1061; *Core-Vent*, 11 F.3d at 1490.

17      Seventh, with regard to the availability of an alternate forum, defendants suggest that an

18  alternate forum exists, specifically the internal dispute resolution procedures incorporated into the

19  employment contract.  Complaint Ex. D at ¶3.2 (contract), incorporating Policies and Procedures

20  (Ex. E) including §40 (internal grievance procedure).  Sarkis simply asserts that there is no

21  alternative forum.  Opp. at 29, n. 54.  Sarkis has not carried his burden of establishing that there is

22  no alternate forum available.  *Menken*, 503 F.3d at 1061.  Thus, this factor weighs in defendants'

23  favor.

24      Taking into account all seven reasonableness factors, the court finds that they predominantly

25  weigh in favor of defendants such that the exercise of jurisdiction over the defendants in this case

26  would not be reasonable.

27      Accordingly, the court finds that there is no personal jurisdiction over the defendants and

28

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                                          9

1   grants the defendants' motion to dismiss for lack of personal jurisdiction.

2          Defendants motion also seeks dismissal for lack of subject matter jurisdiction, contending

3   that they are entitled to sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C.

4   1330(a), and for insufficient service of process under the Act.  Whether the FSIA applies to an entity

5   such as the OHR, or to the High Representative, presents novel and thorny issues.  It is not necessary

6   for the court to reach these issues, however, because the lack of personal jurisdiction disposes of this

7   case.  The court thus exercises its discretion to not reach the alternate grounds asserted in

8   defendants' motion.

9                                              **III.  ORDER**

10          For the foregoing reasons, the court grants defendants' motion to dismiss under Rule 12(b)(2)

11   for lack of personal jurisdiction.

12

13   DATED:      10/14/09                                    _Ronald M Whyte_

14                                                            RONALD M. WHYTE
                                                             United States District Judge
15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                          10

**United States District Court**
For the Northern District of California

**Notice of this document has been electronically sent to:**

**Counsel for specially appearing Defendants:**

Bruce O. Baumgartner   bbaumgartner@bakerlaw.com
Lisa Inez Carteen       lcarteen@bakerlaw.com
Mark A. Cymrot          mcymrot@bakerlaw.com

**Counsel for Plaintiff:**

Jeffrey Mark Forster    jforstr@pacbell.net
Philip M. Musolino      pmusolino@musolinoanddessel.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program in each action.

**Dated:**_____10/15/09_____        _____TER_____
                                                **Chambers of Judge Whyte**

**United States District Court**
For the Northern District of California

ORDER GRANTING MOTION TO DISMISS
C-08-01911 RMW
TER                                  11